**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

NORWICH PHARMACEUTICALS, INC.
6826 Highway 12
Norwich, NY 13815

      *Plaintiff*,

   v.

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services,
200 Independence Avenue, S.W.
Washington, D.C. 20201,

ROBERT M. CALIFF, M.D., in his official
capacity as Commissioner of Food and Drugs,
United States Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993,

and

UNITED STATES FOOD AND DRUG
ADMINISTRATION,
10903 New Hampshire Avenue
Silver Spring, MD 20993,
Defendants.,

      *Defendants*.

Civil Action No. 23-1611

---

## **COMPLAINT**

    Plaintiff Norwich Pharmaceuticals, Inc. ("Norwich"), by and through counsel,

respectfully submits this Complaint against Defendants Xavier Becerra, in his official capacity

as Secretary of Health and Human Services; Robert M. Califf, M.D., in his official capacity as

Commissioner of Food and Drugs, United States Food and Drug Administration; and the United States Food and Drug Administration (collectively "FDA").  Norwich alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief arising out of FDA's arbitrary, capricious, and unlawful refusal to grant Norwich's amended ANDA final approval despite a properly-filed statement under 21 C.F.R. § 314.94(a)(12)(viii)(A) that it is not seeking FDA approval for a patented method of use (a "section viii statement").

2.      In August 2022, the Delaware District Court held that the proposed labeling in Norwich's Original ANDA for the reduction of the risk of overt hepatic encephalopathy recurrence in adults (the "HE Indication") would induce the infringement of four claims from three asserted method of use patents ("the HE Patents"), and that Norwich's Original ANDA should not be approved until October 2, 2029, the date the HE Patents expired.

3.      Norwich amended its ANDA to carve out the HE Indication from its ANDA label and submit a section viii statement to each of the HE Patents in accordance with Section 314.94(a)(12)(viii)(A), hereafter "Norwich's Amended ANDA."

4.      Norwich currently seeks FDA approval for the 550 mg strength of rifaximin to treat irritable bowel syndrome with diarrhea ("IBS-D").

5.      Norwich's Amended ANDA does not seek approval of its generic rifaximin 550 mg tablets for the HE Indication.

6.      Nor does Norwich's Amended ANDA contain a Paragraph IV patent certification to any patent held to have been infringed under 35 U.S.C. § 271(e)(2).

7.      FDA based its decision to not grant final approval to Norwich's Amended ANDA on the order from the Delaware District Court.  But that decision is irrelevant because Norwich's

Amended ANDA does not seek approval for the HE Indication and contains only section viii statements to the HE Patents.  FDA therefore should have granted final approval to Norwich's Amended ANDA.

8.     Despite Norwich's section viii statements, FDA's decision to withhold final approval of Norwich's Amended ANDA for the treatment of IBS-D based on the Delaware District Court's order is arbitrary, capricious, and contrary to law and to FDA's own unambiguous regulations, as well as the stated policy objectives behind carve outs and the Hatch-Waxman Act.

9.     FDA's decision is causing Norwich to suffer irreparable harm by precluding it from realizing its first mover advantage and is adversely impacting the public by further prolonging any relief to patients and payors of a lower-cost generic rifaximin product for IBS-D.

10.     Norwich is therefore entitled to declaratory and injunctive relief, including but not limited to:

    a.     Issuance of a judgment declaring that FDA's decision to grant only tentative approval to Norwich's Amended ANDA was arbitrary, capricious, and contrary to law; and

    b.     Issuance of an injunction directing FDA to immediately grant Norwich's Amended ANDA final approval.

## **THE PARTIES**

11.     Plaintiff Norwich Pharmaceuticals, Inc. is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 6826 Highway 12, Norwich, New York 13815.

12. Defendant Xavier Becerra is a party in his official capacity as the Secretary of the United States Department of Health and Human Services, having offices at 200 Independence Avenue, S.W., Washington, D.C. 20201. Secretary Becerra has been delegated authority by the Congress of the United States to administer the Federal Food Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.* Secretary Becerra in turn has delegated his authority under the FDCA to the Commissioner of Food and Drugs.

13. Defendant Robert Califf, M.D. is a party in his official capacity as the Commissioner of Food and Drugs, the head of and highest ranking official within FDA, which has offices at 10903 New Hampshire Avenue, Silver Spring, MD 20993. As noted above, Secretary Becerra, as Secretary of Health and Human Services, has delegated to Commissioner Califf the authority to administer the drug approval provisions of the FDCA through FDA.

14. Defendant FDA is an agency within the Public Health Service, which is a part of Health and Human Services. FDA is charged with overseeing, *inter alia*, the human drug approval process, including the portions of that process relevant to this case. Its headquarters are located at 10903 New Hampshire Avenue, Silver Spring, MD 20993.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. This case arises under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, 702, 706; the FDCA, 21 U.S.C. §§ 301 *et seq.*, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (commonly referred to as the "Hatch-Waxman Act") (codified as amended in relevant part at 21 U.S.C. § 355 and 35 U.S.C. § 271) and the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, § 1102(b)(1), Pub. L. No. 108-173, 117 Stat. 2066 (2003) (codified as amended at 21

U.S.C. § 355 and 35 U.S.C. § 271) ("MMA"); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.

16.     The Court has personal jurisdiction over the federal Defendants because they are either located in, and/or conduct substantial business in, and/or have regular and systematic contact with this District.

17.     Venue is proper in the District pursuant to 28 U.S.C. § 1391(e).

18.     FDA's decision to withhold final approval of Norwich's Amended ANDA despite a section viii carve out is a final agency action, which constitutes an actual controversy for which Norwich is entitled to review and relief under 5 U.S.C. §§ 702, 704–706.  Norwich has standing to maintain this action pursuant to the APA as a legal entity that has suffered a legal wrong and has been adversely affected by final agency action.

19.     There exists an actual, substantial, and continuing controversy between the parties regarding FDA's application of FDA's own regulations and the FDCA.  This Court may declare the rights and legal relations of the parties under 28 U.S.C. §§ 2201, 2202.

## FACTUAL BACKGROUND

New Drugs and Patent Listing Requirements

20.     The FDCA establishes the requirements for marketing drugs in the United States. Under the FDCA, a manufacturer must submit a New Drug Application ("NDA") to FDA, and FDA must approve it, before marketing a new drug in the United States.  Once approved, new drugs generally are referred to as brand name drugs because they are marketed under a trade name or trademark for the drug product rather than the chemical name for the active ingredient in the drug product.

21.     The NDA applicant must identify each patent that claims the drug or a method of using the drug that is the subject of the NDA and that could reasonably be asserted in a patent infringement action.  *See* 21 U.S.C. § 355(b)(1)(A)(viii); 21 C.F.R. § 314.53.

22.     The NDA applicant must also submit, under penalty of perjury, information for each method of use patent claiming the approved drug – known as a "use code," which "assist[s] . . . ANDA applicants in determining whether a listed method-of-use patent claims a use for which the . . . ANDA applicant is not seeking approval[.]"  21 C.F.R. § 314.53(C)(2)(i)(O), (c)(2)(ii)(P)(3).

23.     Once FDA approves an NDA, FDA publishes the patent information submitted by the brand name drug company – including any use codes for method-of-use patents – in the Approved Drug Products with Therapeutic Equivalence Evaluations (known as the "Orange Book").  *See* 21 U.S.C. § 355(b)(1)(A)(viii); 21 C.F.R. § 314.53(e).

24.     For approved NDAs, the NDA applicant's use code "must describe only the approved method(s) of use claimed by the patent for which a claim of patent infringement could reasonably be asserted if a person not licensed by the owner of the patent engaged in the manufacture, use, or sale of the drug product."  21 C.F.R. § 314.53(b).

<u>The Statutory Framework for Generic Drug Entry</u>

25.     In 1984, Congress amended the FDCA to provide a streamlined process for manufacturers to obtain approval for a generic drug – a drug which contains the same active ingredient as, and is bioequivalent to, a brand name drug.

26.     The 1984 FDCA amendments, which are codified at 21 U.S.C. § 355 and 35 U.S.C. §§ 156, 271(e) and 282, are commonly referred to as the "Hatch-Waxman Amendments" or the "Hatch-Waxman Act."

27.     "A central purpose of the Hatch-Waxman Act . . . is 'to enable competitors to bring cheaper, generic . . . drugs to market as quickly as possible.'"  *Teva Pharms. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1334 (Fed. Cir. 2007) (citing 149 Cong. Rec. S15885 (Nov. 25, 2003)).

28.     Drug companies cannot market generic drugs in the United States until they submit an ANDA to FDA that FDA approves.  *See* 21 U.S.C. § 355(a), (j).  The ANDA approval process allows an applicant to rely on the data in an NDA for a brand name drug to show safety and effectiveness, so long as the ANDA drug product is bioequivalent to the branded drug in question, referred to as the Reference Listed Drug ("RLD").  FDA defines bioequivalence as "the absence of a significant difference in the rate and extent to which the active ingredient or active moiety in pharmaceutical equivalents or pharmaceutical alternatives becomes available at the site of drug action when administered at the same molar dose under similar conditions[.]"  21 C.F.R. § 314.3(b).

29.     A generic drug company seeking FDA approval for a generic version of an RLD product must file, in addition to technical data, one of four patent certifications with FDA, the relevant certification here being (IV) that any patents covering the RLD are invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted.  *See* 21 U.S.C. § 355(j)(2)(A)(vii); 21 C.F.R. § 314.94(a)(12)(i)(A)(4)(i).  This certification is commonly referred to as a "Paragraph IV certification."  *See* 21 C.F.R. § 314.94(a)(12)(i)(A)(4)(i).

30.     If an ANDA applicant makes a Paragraph IV certification, which constitutes an artificial act of infringement,[1] it must provide notice of such certification – or a "Notice Letter" – to the patent owner and the NDA holder.  *See* 21 U.S.C. § 355(j)(2)(B)(iii).

31.     If the patent holder sues the ANDA applicant for infringing any of the patents for which a Paragraph IV certification has been made within 45 days after receipt of the Notice Letter, then final approval of the ANDA is automatically stayed for 30 months from the date of receipt, or until a final judgment is entered by the District Court.  *See* 21 U.S.C. § 355(j)(5)(B)(iii).

<u>Section viii Statements</u>

32.     An alternative to filing a Paragraph IV or other patent certification is a statement filed under 21 U.S.C. § 355(j)(2)(A)(viii) that the applicant is not seeking FDA approval for a patented method of use (a "section viii statement").

33.     Paragraph IV certifications and section viii statements are "mutually exclusive alternatives," and the "factor that determines which is proper is whether the use patent at issue actually claims a use for which the generic applicant is seeking approval.  If it does, a paragraph IV certification is required; if not, the ANDA should include a section viii statement." *TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69, 74 (D.D.C. 2003), *aff'd sub nom. Purepac Pharm. Co. v. Thompson*, 354 F.3d 877 (D.C. Cir. 2004).

34.     According to FDA, "if a patent claims a method of using the listed drug, and labeling for the ANDA applicant's proposed drug product does not contain any indications covered by the method of use patent, the ANDA applicant 'should not submit a certification under § 314.94(a)(12)(i)(A) for such a patent'" but should instead submit a section viii statement.

---

[1] *See Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1349 (Fed. Cir. 2004) (citing *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990)).

ANDA Regulations, Patent and Exclusivity Provisions, 59 Fed. Reg. 50338, 50347 (Oct. 3, 1994).

35.     Following a final court decision of infringement from which no appeal is or can be taken, an ANDA applicant for a method of use may, pursuant to FDA regulation: (1) forego approval for the patented method of use until the relevant patent expires by changing its Paragraph IV certification to a Paragraph III certification[2]; or (2) "amend[] its ANDA such that the applicant is no longer seeking approval for a method of use claimed by the patent" (i.e., convert the Paragraph IV certification to a section viii statement).  21 C.F.R. § 314.94(a)(12)(viii)(A).

36.     If a Paragraph IV certification is converted to a section viii statement "explaining that [the] method-of-use patent does not claim an indication or other condition of use for which the applicant is seeking approval and submits proposed labeling that appropriately carves out information related to the patented method of use," then FDA may approve the amended ANDA "immediately."  81 Fed. Reg. 69580, 69624 (Oct. 6, 2016); 21 C.F.R. § 314.107(b)(1)(ii).

37.     Once the Paragraph IV certification has been converted to a section viii statement, the approval is governed by 21 U.S.C. § 355(j)(5)(A), wherein FDA shall approve the application "[w]ithin one hundred and eighty days" of the initial receipt of an application, rather than 21 U.S.C. § 355(j)(5)(B), which regulates approval when there is a patent certification.

Tentative Approval

38.     When an ANDA is deemed safe and effective by FDA and otherwise would be eligible for final approval but for unexpired patents or exclusivities, FDA will instead grant the

---

[2] A Paragraph III certification states that the patent will expire on a particular date, until such time the generic company is not seeking approval to market its generic product.  21 U.S.C. § 355(j)(2)(A)(vii).

application tentative approval. *See* ANDA Submissions – Amendments and Requests for Final Approval to Tentatively Approved ANDAs, at 4 (Sept. 2020).[3] But "[a] drug product that is granted tentative approval is not an approved drug and will not be approved until FDA issues an approval letter." 21 C.F.R. § 314.3(b). As such, "tentative approval does not allow the applicant to market [its] generic drug product." Drugs@FDA Glossary of Terms, U.S. Food and Drug Admin. (Nov. 14, 2017).[4]

Salix's Xifaxan and Orange Book Patents

39.    Salix Pharmaceuticals, Inc. ("Salix") is the holder of NDA No. 021361 ("Salix's NDA") for 550 mg rifaximin tablets under the brand name Xifaxan, which is indicated for the treatment of IBS-D in adults and the reduction in risk of overt hepatic encephalopathy recurrence in adults, which are two very different indications with different dosing regimens. *See* Orange Book, 43rd Edition, at 3-397 (Jan. 2023);[5] *see also* Label for XIFAXAN® (rifaximin) tablets, for oral use, Bridgewater, NJ: Valeant Pharmaceuticals North America LLC, Initial U.S. Approval: 2004 at 1.2, 1.3, 2.2, and 2.3.[6]

40.    Xifaxan is currently the only rifaximin product available on the market for the treatment of IBS-D. Orange Book, 43rd Edition, at 3-397 (Jan. 2023).[7]

---

[3] *Available at* https://www.fda.gov/media/119718/download (last visited Jun. 4, 2023).

[4] *Available at* https://www.fda.gov/drugs/drug-approvals-and-databases/drugsfda-glossary-terms (last visited Jun. 4, 2023).

[5] *Available at* https://www.fda.gov/media/71474/download (last visited Jun. 4, 2023).

[6] *Available at* https://www.accessdata.fda.gov/drugsatfda_docs/label/2017/021361s023lbl.pdf (last visited Jun. 4, 2023).

[7] *Available at* https://www.fda.gov/media/71474/download (last visited Jun. 4, 2023).

41.     The cost of Xifaxan is astounding – the reported domestic annual sales of all Xifaxan's uses, including its substantial use for treating IBS-D, totaled over $1.69 billion in 2022.  *See* Bausch Health Companies Inc. 2022 Annual Report at 83.[8]  According to GoodRx, a 14-day course of treatment (totaling 42 Xifaxan 550 mg tablets) for IBS-D would retail for close to $2,300.[9]

42.     By 2019, Salix listed 23 patents[10] in the Orange Book with various Use-Codes, including:[11]

- U-2643: Treatment Of Irritable Bowel Syndrome With Diarrhea (IBS-D) In Adults 65 Years Of Age Or Older And Symptoms Thereof

- U-2644: Treatment Of Irritable Bowel Syndrome With Diarrhea (IBS-D) In Adults 65 Years Of Age Or Older

- U-1707:  Treatment Of Irritable Bowel Syndrome With Diarrhea (IBS-D) In Adults And Symptoms Thereof

- U-1708:  Treatment Of Irritable Bowel Syndrome With Diarrhea (IBS-D) In Adults

[8] *Available at* https://ir.bauschhealth.com/~/media/Files/V/Valeant-IR/reports-and-presentations/ny20007033x3-ars-bausch-health-edgar-asfiled.pdf (last visited Jun. 4, 2023). Salix reported $2.09 billion in sales and 81% of those were due to Xifaxan, which results in $1.69 billion for Xifaxan.

[9] GOODRX: XIFAXAN, https://www.goodrx.com/xifaxan?form=tablet&dosage=550mg&quantity=42&label_override=xifaxan (last visited Jun. 4, 2023).

[10] U.S. Patent Nos. 10,314,828; 10,335,397; 10,456,384; 7,045,620; 7,612,199; 7,902,206; 7,906,542; 7,915,275; 8,158,644; 8,158,781; 8,193,196; 8,309,569; 8,518,949; 8,642,573; 8,741,904; 8,829,017; 8,835,452; 8,853,231; 8,946,252; 8,969,398; 9,271,968; 9,421,195; and 9,629,828.  https://thefdalawblog.com/wp-content/uploads/2020/06/OB-Annual-2020-40th-Ed.pdf at ADA 231 (last visited Jun. 4, 2023).

[11] *See id.* at ADA 231, ADB 101, 103-04, 108, 118, 142, 144.

- U-1526:  The Treatment Of Patients With Travelers' Diarrhea (TD) Or The Reduction In Risk Of Overt Hepatic Encephalopathy (HE) Recurrence

- U-1481:  Reduction In Risk Of Overt Hepatic Encephalopathy (HE) Recurrence

- U-2579:  Reduction In A Subject's Risk Of Experiencing A Breakthrough Overt Hepatic Encephalopathy (HE) Episode

- U-1562:  Treatment Of Patients With Hepatic Encephalopathy (HE)

- U-1994:  Reduction In Risk Of Overt Hepatic Encephalopathy (HE) In Adults.

Other ANDA Filers for Rifaximin

43.    On information and belief, Teva Pharmaceutical Industries Ltd. (hereafter, "Teva")[12] and at least two other rifaximin ANDA applicants (Sandoz, Inc. ("Sandoz") and Sun Pharmaceutical Industries, Inc. ("Sun")) engaged in and settled their patent litigation with Salix, Bausch Health Ireland Ltd., and Alfasigma S.p.A. whereby they agreed to refrain from marketing their products until January 1, 2028.  *See* Press Release, Bausch Health, Bausch Health Announces Resolution of XIFAXAN® Intellectual Property Litigation (Sept. 12, 2018) (hereafter, "Bausch-Teva Press Release"); Press Release, Bausch Health, Bausch Health And Alfasigma Announce Resolution Of XIFAXAN® Intellectual Property Litigation (May 06, 2020); Press Release, Bausch Health, Bausch Health And Alfasigma Announce Resolution Of

---

[12] Actavis Laboratories FL, Inc. (hereafter, "Actavis") was the filer of ANDA No. 208959, but Teva announced that it acquired Actavis on August 2, 2016, and is therefore the holder of ANDA No. 208959.  *See* Press Release, Teva, Teva Completes Acquisition of Actavis Generics (Aug. 2, 2016), *available at* https://www.tevapharm.com/news-and-media/latest-news/teva-completes-acquisition-of-actavis-generics/#:~:text=Teva%20Pharmaceutical%20Industries%20Ltd.,(%E2%80%9CActavis%20Generics%E2%80%9D) (last visited Jun. 4, 2023).  Any documents discussing "Actavis" therefore apply to Teva.

XIFAXAN® Intellectual Property Litigation (Sept. 22, 2020).[13] The terms of that settlement also allow Teva the option to launch an "authorized generic" of rifaximin – an unbranded version of Xifaxan marketed under Salix's NDA[14] – instead of selling its own generic ANDA product. Bausch-Teva Press Release.[15] The settlement allows all three manufacturers to market their generic rifaximin products before 2028 should a competitor enter the market. *Id.*

Norwich's ANDA and FDA's Grant of Tentative Approval

44.    In December 2019, Norwich submitted its Abbreviated New Drug Application No. 214369 to FDA ("Norwich's Original ANDA"), seeking authorization to market generic rifaximin 550 mg tablets ("Norwich's ANDA Product"). *Salix Pharms., Ltd. v. Norwich Pharms. Inc.*, No. 1-20-cv-00430-RGA (D. Del.) (hereafter "*Salix v. Norwich*"), ECF No. 158 at 16. Norwich's Original ANDA contained Paragraph IV certifications for all 23 patents listed in the Orange Book for rifaximin tablets at the time of filing. *See* 2020 Orange Book at 231.[16]

---

[13] *Available at* https://ir.bauschhealth.com/tools/viewpdf.aspx?page={3862BA6E-F366-4B8B-80DA-7507A2665FC1} (last visited Jun. 4, 2023); https://www.prnewswire.com/news-releases/bausch-health-and-alfasigma-announce-resolution-of-xifaxan-intellectual-property-litigation-301053561.html (last visited Jun. 4, 2023); https://ir.bauschhealth.com/news-releases/2020/09-22-2020-120037282 (last visited Jun. 4, 2023).

[14] Food and Drug Administration *FDA List of Authorized Generics Drugs*, WWW.FDA.GOV, https://www.fda.gov/drugs/abbreviated-new-drug-application-anda/fda-list-authorized-generic-drugs (explaining that an "'authorized generic' drug is most commonly used to describe an approved brand name drug that is marketed without the brand name on its label.") (last visited Jun. 4, 2023).

[15] https://ir.bauschhealth.com/tools/viewpdf.aspx?page={3862BA6E-F366-4B8B-80DA-7507A2665FC1} (last visited Jun. 4, 2023).

[16] *Available at* https://ir.bauschhealth.com/tools/viewpdf.aspx?page={3862BA6E-F366-4B8B-80DA-7507A2665FC1} (last visited Jun. 4, 2023).

45.     After receiving Norwich's Notice Letter, Salix filed a patent suit against Norwich in the U.S. District Court for the District of Delaware under 35 U.S.C. § 271(e)(2) based on the Paragraph IV certifications.[17]  Compl., *Salix v. Norwich*, ECF No. 59.

46.     A four-day bench trial was held in March 2022, and the court issued its opinion and judgment on August 10, 2022 that (1) the patents covering polymorphic forms of the rifaximin drug substance and patents directed to the use of rifaximin to treat IBS-D were invalid as obvious and (2) Norwich's Original ANDA label seeking approval for the HE Indication would induce a third party to infringe the Asserted HE Patents.[18]  *Salix v. Norwich*, ECF No. 191 at 46; *id.*, ECF No. 193.  The district court further held that the asserted patent claims of the HE Patents relating to the HE Indication had not been proven invalid.  *Id.*, ECF No. 191 at 46.

47.     Norwich has not, and does not intend to, appeal the district court's holdings that Norwich's Original ANDA infringes the Asserted HE Patents or that the HE Patents had not been shown invalid.

48.     Based on these mixed holdings and over Norwich's objection to the scope of the Final Judgment, the district court ordered "that the effective date of any final approval by [FDA] of [Norwich's Original ANDA] is to be a date not earlier than the date of expiration of the last to expire" of the Asserted HE Patents, i.e., October 2029.  *Salix v. Norwich*, ECF No. 193 at ¶ 5; *see also id.*, ECF No. 192.

---

[17] Salix eventually asserted all 23 patents plus three additional patents that were not listed in the Orange Book when Norwich submitted its ANDA.  *See Salix v. Norwich*, ECF No. 59.

[18] The "Asserted HE Patents" refers to claim 8 of U.S. Patent No. 8,642,573 (the "'573 Patent"), claim 6 of U.S. Patent No. 9,421,195 (the "'195 Patent"), and claims 11-12 of U.S. Patent No. 10,335,397 (the "'397 Patent").

49.    In a separate Memorandum regarding a dispute over the Final Judgment, the court also recognized that "Norwich may seek to carve out the HE indication as permitted by 21 U.S.C. § 355(j)(2)(A)(viii)."  *Salix v. Norwich*, ECF No. 192 at 2.  However, the court deemed this section viii carve out "immaterial" to the analysis as to the parameters of the judgment because such a carved out label was not before the court.  *Id.*

50.    Following entry of the court's Final Judgment, Norwich amended its proposed ANDA label to seek approval for only the IBS-D Indication.

51.    Norwich filed an amendment to its ANDA carving out the HE Indication, withdrawing its Paragraph IV certifications to the HE patents, and submitting section viii statements to the HE Patents under 21 C.F.R. §§ 314.94(a)(12)(viii)(A).  J. Ibrahim Ltr. to J. Sachdeva re: ANDA Tentative Approval (Ex. 1, hereafter the "TA Letter").

52.    Norwich's label no longer overlaps with any patent use code listed by Salix in the Orange Book for the Asserted HE Patents:  U-1481: "reduction in the risk of overt [HE] recurrence"; and U-2579: "reduction in a subject's risk of experiencing a breakthrough overt [HE] episode."[19]

53.    Norwich's Amended ANDA label for only the IBS-D Indication also does not contain any of the Xifaxan labeling information identified and submitted by Salix for the HE Indication.  *See* 21 C.F.R. 314.53(d).

54.    Norwich moved the court to modify the order relating to the "effective date" of final approval of Norwich's Original ANDA because Norwich's Amended ANDA does not seek approval for the HE Indication, maintains section viii statements to the Asserted HE Patents, and

---

[19] *See* n. 10, 11 *supra*.

does not contain a Paragraph IV certification to the Asserted HE Patents.  *Salix v. Norwich*, ECF No. 205 at 1.

55.     The district court denied Norwich's motion.  *Salix v. Norwich,* ECF No. 222 at 5.

56.     Norwich's Amended ANDA seeks approval for the IBS-D Indication.  It does not seek approval for the HE Indication and does not contain a Paragraph IV certification to any of the Asserted HE Patents, and therefore a consideration of infringement of the Asserted HE Patents – which have patent use codes directed exclusively to the HE Indication – under Section 271(e)(2) is irrelevant to FDA's grant of final approval of Norwich's Amended ANDA.

57.     Even Salix has stated that Norwich's Amended ANDA with the section viii statements would not induce infringement of the patents found invalid.  *See* Press Release, Bausch Health, Bausch Health to Appeal XIFAXAN® Patent Decision to U.S. Court of Appeals for the Federal Circuit (Aug. 10, 2022) ("Unless and until FDA approves a revised ANDA by Norwich that omits the XIFAXAN HE indication . . . Norwich is not permitted to launch a generic equivalent of rifaximin.").[20]

58.     The Delaware District Court has not rendered any judgment concerning any infringement of the Asserted HE Patents by Norwich's Amended ANDA.  *Salix v. Norwich*, ECF No. 222 at 2.  Further, because Norwich converted to section viii statements instead of the Paragraph IV certifications for each of the Asserted HE Patents, the district court's order pursuant to 35 U.S.C. §271(e)(4)(A)(1) regarding Norwich's Original ANDA is not relevant to the date of final approval of Norwich's Amended ANDA.

---

[20] *Available at* https://www.bauschhealth.com/news-room/news-releases/news-details/202208101800PR_NEWS_USPR_____NY35904 (last visited Jun. 4, 2023).

59.     Instead of granting final approval of Norwich's Amended ANDA, on June 2, 2023, FDA granted Norwich only tentative approval.  (TA Letter, Ex. 1.)

60.     FDA's June 2, 2023 TA Letter stated that "final approval cannot be granted until October 2, 2029 as specified in the [district of Delaware] court order."[21]  (Ex. 1 at 3.)  In the very next paragraph, FDA acknowledged that Norwich's Amended ANDA contained section viii statements regarding the Asserted HE Patents and that "these are method-of-use patents that do not claim any indication for which you are seeking approval under your ANDA."  (Ex 1. at 3-4.)

61.     By granting tentative approval, FDA also apparently agreed that Norwich's Amended ANDA label sufficiently carved out the HE Indication.  (*Id.* (acknowledging that Norwich appropriately filed section viii statements – and thus the corresponding label carve outs – to HE-related use codes.)

FDA Should Have Approved Norwich's Amended ANDA
"Immediately" upon Submitting Section viii Statements under FDA's Regulations

62.     FDA's regulations are unambiguous that not only is Norwich's Amended ANDA approvable upon submission of a section viii statement, but it is approvable "[i]mmediately." *See* 21 C.F.R. §§ 314.94(a)(12)(viii)(A), 314.107(b)(1)(ii).

63.     FDA withheld approval of Norwich's Amended ANDA and stated that "final approval cannot be granted until October 2, 2029 as specified in the [district] court order" and by the district court's refusal to amend its order. (Ex. 1 at 3.)

64.     But FDA also acknowledged that Norwich had filed proper section viii statements and that "these are method-of-use patents that do not claim any indication for which you are seeking approval under your ANDA."  (Ex. 1 at 3-4)

---

[21] FDA's Tentative Approval Letter also states that "[t]his letter does not include information related to the 180-day exclusivity provisions under section 505(j)(5)(B)(iv) of the FD&C Act." (Ex. 1 at 1.)

65.     FDA's decision to not approve Norwich's Amended ANDA contravenes FDA's own regulations, FDA's statements when it issued the proposed and final regulations, and numerous cases discussing the importance of quickly approving generic drug products with section viii statements and carved-out labels.

66.     FDA's regulations are clear on their face – after a final court decision finding infringement, the ANDA applicant has two choices: (1) change its Paragraph IV certification to a Paragraph III certification and forego approval until the relevant patent expires, or (2) if the relevant patent covers a method of use, "amend[] its ANDA such that the applicant is no longer seeking approval for a method of use claimed by the patent."  21 C.F.R. § 314.94(a)(12)(viii)(A). If the applicant chooses this second option, then "[o]nce an amendment for the change has been submitted, the ANDA will no longer be considered to contain a paragraph IV certification to the patent."  *Id.*

67.     Once an applicant amends its ANDA and converts the Paragraph IV certification to a section viii statement, 21 C.F.R. § 314.107(b)(1)(ii) then controls.  21 C.F.R. § 314.107(b)(1)(ii) states that, "if the applicant submits an appropriate [section viii statement] explaining that a method-of-use patent does not claim an indication or other condition of use for which the applicant is seeking approval," FDA may approve this amended ANDA "immediately."  21 C.F.R. § 314.107(b)(1)(ii).

68.     By filing the section viii statement, Norwich's Amended ANDA no longer contains a Paragraph IV certification and thus the section viii statements and the corresponding patents – here, the HE Patents – cannot be the basis for FDA delaying final approval of the ANDA.

69.     The regulation is unambiguous, and it was thus improper for FDA to refuse to grant final approval to Norwich's Amended ANDA based on the district court's order relating to the HE Patents.

70.     FDA reaffirmed the clear directives set forth in 21 C.F.R. § 314.107 during its notice and comment rulemaking in 2016:

> We also proposed to clarify that if a[n] . . . ANDA applicant submits a statement . . . explaining that a method-of-use patent does not claim an indication or other condition of use for which the applicant is seeking approval and submits proposed labeling that appropriately carves out information related to the patented method of use, then the . . . ANDA may be eligible for *immediate approval* (see proposed § 314.107(b)(1)(ii)).

81 Fed. Reg. 69580, 69624 (Oct. 6, 2016) (emphasis added).

71.     Prior iterations of 21 C.F.R. § 314.94 did not provide that an applicant could file a section viii statement after a finding of infringement.  *See* 59 Fed. Reg. 50338, 50364-65.

72.     In 2015, FDA proposed amending the 1994 regulations in light of the MMA "in a manner intended to reduce unnecessary litigation [and] reduce delays in the approval of . . . ANDAs that are otherwise ready to be approved[.]"  80 Fed. Reg. 6802, 6803 (Feb. 6, 2015.)  FDA proposed adding language to clarify that following final judgment, "an applicant may change its paragraph IV certification for a method-of-use patent to a statement under section 505(b)(2)(B) or 505(j)(2)(A)(viii) of the FD&C Act only if the applicant amends its 505(b)(2) application or ANDA, respectively, such that the applicant is no longer seeking approval for a method of use claimed by the patent[.]"  *Id.* at 6844.  Thus, despite a final judgment of infringement, FDA proposed that an applicant may remove the infringing method of use from its ANDA, obtain approval, and lawfully market any remaining non-infringing methods of use.

73.     In 2016, FDA implemented the final version of the relevant regulations by providing for the filing of a section viii carve out after a finding of infringement.  *See* 81 Fed. Reg. 69580, 69649-51 (Oct. 6, 2016).

74.     Norwich's Original ANDA contained the HE Indications and was held to infringe the Asserted HE Patents, and Norwich is not contesting that finding, thus making this decision a "final decision from which no appeal has been or can be taken[.]"[22]

75.     Norwich then amended its ANDA with a section viii statement in accordance with 21 C.F.R. § 314.94(a)(12)(viii)(A) that carved out the HE Indication from Norwich's product labeling, and in doing so withdrew its Paragraph IV certifications to the Asserted HE Patents.

76.     Norwich thus seeks approval of its carved out label for only the IBS-D indication, which is not blocked by any valid patents.

77.     Thus, not only was Norwich's Amended ANDA approvable, but FDA should have approved Norwich's Amended ANDA "immediately" pursuant to 21 C.F.R. § 314.107(b)(1)(ii).

78.     FDA's failure to follow its own regulation should be reversed by this Court, and FDA should be ordered to grant final approval to Norwich's Amended ANDA.

FDA's Guidance and Applicable Law Provide that Norwich's Amended ANDA with a
Carved Out Indication is Proper and Satisfies Congress's Purpose of the Hatch-Waxman Act

79.     FDA's regulatory framework permits an ANDA applicant to seek approval of one indication when another indication is protected by patents, even after a decision on the merits.

---

[22] Norwich's appeal of the district court's order to the extent that it prohibits the final approval of Norwich's Amended ANDA does *not* disturb the finality of the finding of infringement of the Asserted HE Patents or validity of the Asserted HE Patents.  *See Salix v. Norwich*, ECF No. 223 (Notice of Appeal).

*See* 21 C.F.R. § 314.94(a)(12)(viii)(A) (requiring an applicant to amend its Paragraph IV statement "*[a]fter finding of infringement*") (emphasis in original).

80.     FDA Guidance further contemplates amending an ANDA to carve out a method of use following a final judgment of infringement by stating that an applicant that does not appeal that final judgment "can amend its ANDA to no longer seek approval for a method of use claimed by the patent and submit a statement under section 505(j)(2)(A)(viii) of the FD&C Act." *See* FDA Good ANDA Submission Practices Guidance for Industry, FDA-2017-D-6854 at 6 (Jan. 2022) (citing 21 C.F.R.v 314.94(a)(12)(viii)(A)).[23]

81.     Norwich's Amended ANDA expressly follows the congressional intent behind section viii statements that ANDA applicants may obtain approval for less than all of the approved indications for the NDA product.

82.     FDA's post-infringement carve-out regulations and guidance comport with the overall purpose of the Hatch-Waxman Act – to facilitate the pursuit, development, and swift approval of affordable generic drugs.

83.     FDA's refusal to grant Norwich final approval subverts its own regulations and directly contradicts the stated policy objectives of 21 C.F.R. § 314.94 and the Hatch-Waxman Act.

84.     Consistent with 21 C.F.R. § 314.94(a)(12)(viii), after a finding of infringement of the Asserted HE Patents, Norwich amended its ANDA label to carve out the infringing method of use for the HE Indication, thereby allowing Norwich's 550 mg rifaximin tablets to come to market upon final approval for the treatment of IBS-D.

---

[23] *Available at* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/good-anda-submission-practices-guidance-industry (last visited Jun. 4, 2023).

85.     Norwich's Amended ANDA Product should now be made available to the public for the treatment of IBS-D consistent with FDA's clear regulations and Congress' intent.

FDA's Decision Is Not Entitled to Deference

86.     FDA's decision to withhold final approval of Norwich's Amended ANDA is irreconcilable with the plain language and intent of 21 C.F.R. § 314.94(a)(12)(viii)(A) and is therefore not entitled to deference by this Court.

87.     There is no genuine ambiguity here that compels this Court to defer to FDA's refusal to grant final approval to Norwich's Amended ANDA because FDA's regulations are clear on their face – following a finding of infringement, the ANDA applicant may "provide a statement under paragraph (a)(12)(iii) of this section if the applicant amends its ANDA such that the applicant is no longer seeking approval for a method of use claimed by the patent [i.e., a section viii statement]." 21 C.F.R. § 314.94(a)(12)(viii)(A).

88.     By converting to a section viii statement, the ANDA is "no longer . . . considered to contain a paragraph IV certification to the patent." *Id.*

89.     Norwich provided a section viii statement pursuant to Section 314.94(a)(12)(viii)(A).

90.     Because Norwich's Amended ANDA is "no longer [] considered to contain a paragraph IV certification," to any patent claiming a method for treating HE, FDA should have approved Norwich's Amended ANDA "immediately." 21 C.F.R. § 314.107(b)(1)(ii).

Norwich Is Irreparably Harmed by FDA's
Refusal to Grant Final Approval to Norwich's Amended ANDA

91.     Norwich will suffer irrecoverable and substantial economic losses and other intangible harms unless this Court enters an injunction requiring FDA to follow its own unambiguous regulations and grant final approval to Norwich's Amended ANDA.

92.     Norwich has no adequate remedy at law to recover monetary damages arising from FDA's erroneous decision.

93.     Each passing day prevents Norwich from capitalizing on its first-mover opportunity in the generic drug market for rifaximin 550 mg tablets for the treatment IBS-D.

94.     Thus, Norwich will lose goodwill and key access to customers attributable to being first-to-market with an important generic IBS-D treatment.

## COUNT I
### (Violation of the FDCA and APA)

95.     Norwich repeats and realleges Paragraphs 1 to 94 of the Complaint.

96.     As set forth above, FDA improperly decided that it could not grant final approval to Norwich's Amended ANDA based on the decision by the Delaware District Court.

97.     In so doing, FDA has taken this final agency action without providing any reasoned basis for its decision.

98.     FDA's final decision to grant Norwich's Amended ANDA only tentative approval constitutes final agency action for which Norwich is entitled to judicial review and relief under the APA.

99.     FDA's decision is arbitrary, capricious, and contrary to law.

100.    Norwich is suffering, and will continue to suffer, significant and irreparable harm from FDA's unlawful refusal to grant Norwich's Amended ANDA final approval.

101.    The loss of the first-mover advantage for rifaximin for IBS-D will seriously injure Norwich.

102.    FDA is depriving the public of the benefit of a generic drug product for IBS-D in contravention of the plain statutory language and Congress' intent behind the Hatch-Waxman Act.

103.    Norwich has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff  Norwich Pharmaceuticals, Inc. requests this Court to enter

judgment in its favor and against Defendants Xavier Becerra, in his official capacity as

Secretary of Health and Human Services; Robert Califf, M.D., in his official capacity as

Commissioner of Food and Drugs, United States Food and Drug Administration; and the United

States Food and Drug Administration as follows:

A.    Entry of judgment declaring that the FDA grant of tentative rather than final approval of Norwich's Amended ANDA is arbitrary, capricious, and contrary to law;

B.    Entry of an injunction directing FDA to grant final approval to Norwich's Amended ANDA immediately, per FDA regulation;

C.    Entry of an order awarding Norwich its reasonable attorney's fees and costs of prosecuting this action; and

D.    Such other and further relief as this Court deems just and proper.

Dated: June 5, 2023

Respectfully submitted,

AXINN, VELTROP & HARKRIDER LLP

/s/ *Chad A. Landmon*

Chad A. Landmon (DC Bar No. 990347)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
clandmon@axinn.com

*Attorney for Plaintiff Norwich*
*Pharmaceuticals, Inc.*

OF COUNSEL:
Matthew S. Murphy (*pro hac vice*
forthcoming)
Aaron Z. Savit (*pro hac vice* forthcoming)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
mmurphy@axinn.com
asavit@axinn.com

Ross E. Blau (*pro hac vice* forthcoming)
AXINN, VELTROP & HARKRIDER LLP
114 W. 47th Street
New York, NY 10036
T: (212) 728-2200
rblau@axinn.com

Gabriella McIntyre (*pro hac vice* forthcoming)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
T: (202) 912-4700
gmcintyre@axinn.com