**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

NORWICH PHARMACEUTICALS, INC.,

       *Plaintiff*,

   v.

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services,

ROBERT M. CALIFF, M.D., in his official
capacity as Commissioner of Food and Drugs,

and

UNITED STATES FOOD AND DRUG
ADMINISTRATION,

       *Defendants*.

Civil Action No.  23-1611

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I.   NEW AND ABBREVIATED DRUG APPLICATION REQUIREMENTS.......................... 4

II.   TENTATIVE APPROVAL ................................................................................. 6

I.   SALIX'S XIFAXAN AND ORANGE BOOK PATENTS....................................... 7

II.   OTHER ANDA FILERS FOR RIFAXIMIN ...................................................... 9

III.   NORWICH'S ANDA AND FDA'S REFUSAL TO GRANT IT FINAL APPROVAL... 10

I.   NORWICH IS LIKELY TO SUCCEED ON THE MERITS . ............................................. 15

   A.   FDA REFUSED APPROVAL OF NORWICH'S CARVED OUT LABEL IN CONTRAVENTION OF ITS REGULATIONS, PRIOR POSITION STATEMENTS, AND CASE LAW DISCUSSING THE POLICY INTERESTS OF GRANTING APPROVAL FOR CARVED OUT LABELS................................................ 15

      1.   *FDA Should Have Approved Norwich's Amended ANDA "Immediately" upon Submitting a Section viii Statement under FDA's Regulations.* ........................................... 15

      2.   *FDA's Guidance and Case Law Both Provide that Norwich's Amended ANDA with a Carved Out Indication is Proper and Satisfies Congress's Purpose of the Hatch-Waxman Act.* 19

   B.   FDA'S DECISION IS NOT ENTITLED TO DEFERENCE. ........................................................ 22

II.   NORWICH WILL SUFFER IRREPARABLE HARM ABSENT IMMEDIATE RELIEF FROM THIS COURT......................................................................................................... 24

   A.   NORWICH WILL INCUR SUBSTANTIAL AND IRRECOVERABLE ECONOMIC LOSS............... 24

   B.   NORWICH WILL BE IRREPARABLY HARMED BY THE IMPAIRMENT OF ITS *DE FACTO* FIRST-MOVER ADVANTAGE. ..................................................................................................... 25

III.   GRANTING THE PRELIMINARY INJUNCTION WILL NOT SUBSTANTIALLY INJURE ANY INTERESTED PARTY........................................................................................ 29

IV.   PRELIMINARY RELIEF WILL FURTHER THE PUBLIC INTEREST........................ 31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
  500 F. Supp. 2d 846 (N.D. Ill. 2007) ..............................................................26, 30

*Abbott Labs. v. Sandoz, Inc.*,
  544 F.3d 1341 (Fed. Cir. 2008)......................................................................27

*Albany Molecular Research, Inc. v. Dr. Reddy's Labs., Ltd.*,
  No. 09-cv-4638, 2010 WL 2516465 (D.N.J. June 14, 2010)................................27

*Am. Hosp. Ass'n v. Becerra*,
  142 S. Ct. 1896 (2022)...................................................................................23

*AstraZeneca v. Apotex*,
  669 F.3d 1370 (Fed. Cir. 2012)........................................................................20

*Auer v. Robbins*,
  519 U.S. 452 (1997).................................................................................22, 23

*In re Barr Labs., Inc.*,
  930 F.2d 72 (D.C. Cir. 1991).......................................................................21, 32

*Biovail Corp. v. U.S. Food & Drug Admin*,
  519 F. Supp. 2d 39 (D.D.C. 2007).....................................................................30

*Bowles v. Seminole Rock & Sand Co.*,
  325 U.S. 410 (1945).........................................................................................22

*Bracco Diagnostics, Inc. v. Shalala*,
  963 F. Supp. 20 (D.D.C. 1997)..........................................................25, 26, 29, 32

*Bristol-Myers Squibb Co. v. Shalala*,
  91 F.3d 1493 (D.C. Cir. 1996).............................................................................20

*Bristol-Myers Squibb Co. v. Shalala*,
  923 F. Supp. 212 (D.D.C. 1996).........................................................................30

*Butamax Advanced Biofuels LLC v. Gevo, Inc.*,
  868 F. Supp. 2d 359 (D. Del. 2012)........................................................26, 30, 31

*Capitol Hill Baptist Church v. Bowser*,
  496 F. Supp. 3d 284 (D.D.C. 2020) ................................................................14, 15

*Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.*,
  527 F.3d 1278 (Fed. Cir. 2008)............................................................................21

*Feinerman v. Bernardi*,
  558 F. Supp. 2d 36 (D.D.C. 2008) ........................................................................25

*Georgia v. Brooks-La Sure*,
  No. 2:22-cv-6, 2022 WL 3581859 (S.D. Ga. Aug. 19, 2022)................................21

*Glaxo Grp. Ltd. v. Apotex, Inc.*,
  376 F.3d 1339 (Fed. Cir. 2004)..............................................................................5

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
  45 F.4th 306 (D.C. Cir. 2022) ..............................................................................23

*Illinois Tool Works, Inc. v. Grip-Pak, Inc.*,
  906 F.2d 679 (Fed. Cir. 1990)..............................................................................31

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019) ....................................................................................22, 23

*Loper Bright Enterprises v. Raimondo*,
  No. 22-451, 2023 WL 3158352 (May 1, 2023) ....................................................23

*Mova Pharm. Corp. v. Shalala*,
  140 F.3d 1060 (D.C. Cir. 1998)............................................................................25

*Mova Pharm. Corp. v. Shalala*,
  955 F. Supp. 128 (D.D.C. 1997)......................................................................24, 25

*Mylan Pharm., Inc. v. Shalala*,
  81 F. Supp. 2d 30 (D.D.C. 2000) ..........................................................................1

*Mylan Pharms., Inc. v. Sebelius*,
  856 F. Supp. 2d 196 (D.D.C. 2012) ......................................................................30

*Mylan Pharms., Inc. v. Thompson*,
  268 F.3d 1323 (Fed. Cir. 2001) *superseded by statute on other grounds,*
  *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399 (2012) .................24

*Pantoja v. Martinez*,
  No. 21-7118, 2022 WL 893017 (D.C. Cir. Mar. 25, 2022) ....................................15

*Pearson v. Shalala*,
  130 F. Supp. 2d 105 (D.D.C. 2001) ......................................................................14

*Pharmacia & Upjohn Co. v. Ranbaxy Pharms., Inc.*,
    274 F. Supp. 2d 597 (D.N.J. 2003), *aff'd in relevant part*, 85 F. App'x 205
    (Fed. Cir. 2003)................................................................................................27, 32

*Purepac Pharm. Co. v. Thompson*,
    238 F. Supp. 2d 191 (D.D.C. 2002), *aff'd*, 354 F.3d 877 (D.C. Cir. 2004) ...........................21

*Teva Pharms., USA, Inc. v. FDA*,
    182 F.3d 1003 (D.C. Cir. 1999)............................................................................26

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
    482 F.3d 1330 (Fed. Cir. 2007)...........................................................................3, 21

*TorPharm, Inc. v. Shalala*,
    No. Civ. A. 97–1925(JR), 1997 WL 33472411 (D.D.C. Sep. 15, 1997).....................26, 28, 32

*TorPharm, Inc. v. Thompson*,
    260 F. Supp. 2d 69 (D.D.C. 2003), *aff'd sub nom. Purepac Pharm. Co. v.*
    *Thompson*, 354 F.3d 877 (D.C. Cir. 2004) .....................................................................5

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
    748 F.3d 1159 (Fed. Cir. 2014).............................................................................27

*Warner–Lambert Co. v. Apotex Corp.*,
    316 F.3d 1348 (Fed. Cir. 2003)....................................................................5, 13, 20

*Whitaker v. Thompson*,
    248 F. Supp. 2d 1 (D.D.C. 2002) ....................................................................29, 32

**Statutes**

21 U.S.C. § 355.................................................................................................... *passim*

21 U.S.C. § 393....................................................................................................29

35 U.S.C. § 271.................................................................................................... *passim*

FD&C Act section 505(j)(2)(A)(viii)...........................................................................20

FD&C Act section 505(j)(5)(B)(iv) ............................................................................14

**Other Authorities**

21 C.F.R. § 314.3(b) ..............................................................................................7

21 C.F.R. § 314.53 ..............................................................................................4, 12

*21 C.F.R. § 314.94 ............................................................................................. *passim*

*21 C.F.R. § 314.107 ................................................................................................ *passim*

59 Fed. Reg. 50338, 50347 (Oct. 3, 1994)...................................................................5, 16

59 Fed. Reg. 50338, 50364-65 ............................................................................................18

65 Fed. Reg. 67012, 67013 ................................................................................................29

80 Fed. Reg. 6802, 6803 (Feb. 6, 2015) ............................................................................18

81 Fed. Reg. 69580, 69624 (Oct. 6, 2016)......................................................................6, 17

81 Fed. Reg. 69580, 69649-51 (Oct. 6, 2016) ..................................................................18

**INTRODUCTION**

When an Abbreviated New Drug Application ("ANDA") applicant converts its

Paragraph IV certification to a section viii statement, the unambiguous regulations of the Food

and Drug Administration ("FDA") contemplate *immediate* approval of the amended application.

21 C.F.R. § 314.94(a)(12)(viii)(A); 21 C.F.R. § 314.107(b)(1)(ii).  Yet, on June 2, 2023, FDA

refused to grant Norwich Pharmaceuticals, Inc.'s ("Norwich") ANDA final approval until the

expiration of three method of use patents, and only granted tentative approval despite

acknowledging Norwich's properly-filed section viii statements to those same patents.  Norwich

now seeks mandatory preliminary injunctive relief, finding that FDA's decision to grant tentative

approval rather than final approval is arbitrary, capricious, and contrary to law and altering the

*status quo* by requiring FDA to approve Norwich's ANDA immediately.  *See, e.g.*, *Mylan*

*Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 36 (D.D.C. 2000).

In August 2022, the Delaware District Court held that the proposed labeling in Norwich's

Original ANDA for the reduction of the risk of overt hepatic encephalopathy recurrence in adults

(the "HE Indication") would induce the infringement of four claims from three asserted method

of use patents ("the Asserted HE Patents"), and that Norwich's ANDA should not be approved

until October 2, 2029, the date the Asserted HE Patents expired.  Thereafter, Norwich amended

its ANDA to carve out the HE Indication from its ANDA label and submit a section viii

statement to each of the Asserted HE Patents in accordance with Section 314.94(a)(12)(viii)(A).

Norwich's ANDA, as amended ("Norwich's Amended ANDA"), does not seek approval of its

generic rifaximin 550 mg tablets for the HE Indication.  Nor does it contain a Paragraph IV

patent certification to any patent held to have been infringed under 35 U.S.C. § 271(e)(2).

FDA's decision to nevertheless withhold final approval of Norwich's Amended ANDA for the

treatment of irritable bowel syndrome with diarrhea ("IBS-D") based on the Delaware District Court's order is contrary to FDA's own unambiguous regulations, as well as the stated policy objectives behind carve outs and the Hatch-Waxman Act.  It appears that FDA's decision to not grant final approval is because of the Delaware District Court's decision that Norwich's ANDA could not be granted final approval due to the Asserted HE Patents.  But that decision is irrelevant because Norwich's Amended ANDA does not seek approval for the HE Indication, and therefore FDA should have granted final approval.  FDA's decision is arbitrary, capricious, and contrary to law, and should thus be set aside by this Court.

Further, FDA's decision is causing Norwich to suffer irreparable harm.  Norwich has an immediately-approvable generic product, has succeeded in its patent invalidity challenges regarding patents directed to the drug compound and the IBS-D indication, and has a path to market the first generic 550 mg rifaximin tablet for IBS-D.  Each day that Norwich is delayed from obtaining FDA clearance is a day closer to another ANDA filer exploiting the pathway that Norwich has blazed and eliminating any first-mover advantages.

FDA's refusal to grant final approval also goes against the public interest by blocking consumer access to less-expensive generic alternatives.  Despite the millions of IBS-D patients in the U.S. in need of generic 550 mg rifaximin tablets for treatment, only the brand version is currently available on the market, even though the patents covering the drug product and the IBS-D indication have been invalidated by the Delaware District Court.  FDA's continued insistence that Norwich should not be approved prevents consumers from accessing a cheaper generic alternative that, once approved, Norwich is ready and able to launch its ANDA Product in a short amount of time.  Zaku Decl. at ¶ 7.  In a time of great uncertainty with an overburdened healthcare system and patient budgets stretched thin by inflation, it is now more

important than ever to get generic products into the market as quickly as possible.  FDA's arbitrary, capricious, and unlawful refusal to grant final approval will wrongfully delay the launch of Norwich's ANDA product.  Each passing day diminishes Norwich's opportunity to exploit its anticipated first-mover advantage.  Norwich is entitled to a preliminary injunction, setting aside FDA's decision to grant only tentative approval as arbitrary, capricious, and contrary to law, and ordering FDA to grant final approval to Norwich's Amended ANDA.

## THE STATUTORY FRAMEWORK FOR GENERIC DRUG ENTRY

The Federal Food Drug & Cosmetic Act ("FDCA") establishes the requirements for marketing drugs in the United States.  In 1984, Congress amended the FDCA to provide an abbreviated pathway for manufacturers to obtain approval for generic drugs by relying on FDA's finding that the previously approved brand drug (i.e., reference listed drug, or "RLD") is safe and effective.  The central purpose of the 1984 FDCA amendments (commonly referred to as the "Hatch-Waxman Amendments" or the "Hatch-Waxman Act"), codified at 21 U.S.C. § 355 and 35 U.S.C. §§ 156, 271(e) and 282, is "'to enable competitors to bring cheaper, generic . . . drugs to market as quickly as possible.'"  *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) (citing 149 Cong. Rec. S15885 (Nov. 25, 2003)).

## I.   NEW AND ABBREVIATED DRUG APPLICATION REQUIREMENTS

Before marketing a new drug in the United States, the FDCA requires a drug company to submit a New Drug Application ("NDA") to FDA, and FDA must approve it.  *See* 21 U.S.C. § 355(a), (b).[1]

The NDA applicant must identify each patent that claims the drug or a method of using the drug that is the subject of the NDA and that could reasonably be asserted in a patent infringement action.  *See* 21 U.S.C. § 355(b)(1)(A)(viii); 21 C.F.R. § 314.53.  The NDA applicant must also submit, under penalty of perjury, information on each approved method of use covered by patent – known as a "use code."  Use codes "assist . . . ANDA applicants in determining whether a listed method-of-use patent claims a use for which the . . . ANDA applicant is not seeking approval[.]"  21 C.F.R. § 314.53(c)(2)(i)(O), (c)(2)(ii)(P)(3).  Once FDA approves an NDA, FDA publishes the patent information submitted by the brand name drug company – including any use codes for method-of-use patents – in the Approved Drug Products with Therapeutic Equivalence Evaluations (known as the "Orange Book").  *See* 21 U.S.C. § 355(b)(1)(A)(viii); 21 C.F.R. § 314.53(e).  For approved NDAs, the NDA applicant's use code "must describe only the approved method(s) of use claimed by the patent for which a claim of patent infringement could reasonably be asserted[.]"  21 C.F.R. § 314.53(b).

A company seeking FDA approval for a generic version of an RLD must file, in addition to technical data, one of four patent certifications with FDA; the relevant patent certification here being (IV) the patent is invalid, unenforceable, or will not be infringed by the manufacture, use, or sale of the generic drug for which the ANDA is submitted.  *See* 21 U.S.C.

---

[1] New drugs generally are referred to as "brand name" drugs because they are marketed under a trademark for the drug product rather than the chemical name for the active ingredient in the drug product.

§ 355(j)(2)(A)(vii); 21 C.F.R. § 314.94(a)(12)(i)(A)(4)(i).  This is known as a "Paragraph IV

certification."  *See* 21 C.F.R. § 314.94(a)(12)(i)(A)(4)(i).

      If an ANDA applicant submits a Paragraph IV certification to FDA, it must provide

notice of such certification – or a "Notice Letter" – to the patent owner and the NDA holder,

which then triggers when a patent infringement suit must be filed, and creates a 30-month stay.

*See* 21 U.S.C. § 355(j)(2)(B)(iii), 355(j)(5)(B)(iii).[2]  The effective date of approval of an ANDA

with any patent certification is governed by 21 U.S.C. § 355(j)(5)(B).

      An alternative to filing a Paragraph IV or other patent certification is a statement filed

under 21 U.S.C. § 355(j)(2)(A)(viii) that the applicant is not seeking FDA approval for a

patented method of use (a "section viii statement").  *See Warner–Lambert Co. v. Apotex Corp.*,

316 F.3d 1348, 1360–61 (Fed. Cir. 2003).  Paragraph IV certifications and section viii

statements are "mutually exclusive alternatives," and the "factor that determines which is

proper is whether the use patent at issue actually claims a use for which the generic applicant is

seeking approval.  If it does, a paragraph IV certification is required; if not, the ANDA should

include a section viii statement."  *TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69, 74 (D.D.C.

2003), *aff'd sub nom. Purepac Pharm. Co. v. Thompson*, 354 F.3d 877 (D.C. Cir. 2004).

According to FDA, "if a patent claims a method of using the listed drug, and labeling for the

ANDA applicant's proposed drug product does not contain any indications covered by the

method of use patent, the ANDA applicant" should submit a section viii statement, not a

Paragraph IV certification.  ANDA Regulations, Patent and Exclusivity Provisions, 59 Fed.

Reg. 50338, 50347 (Oct. 3, 1994).

---

[2] Filing an ANDA with a Paragraph IV certification constitutes an artificial act of infringement.
*See Glaxo Grp. Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1349 (Fed. Cir. 2004) (citing *Eli Lilly & Co.
v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990)).

Following a final court decision of infringement from which no appeal is or can be taken, an ANDA applicant for a method of use may, pursuant to FDA regulation: (1) forego approval for the patented method of use until the relevant patent expires by changing its Paragraph IV certification to a Paragraph III certification[3]; or (2) "amend[] its ANDA such that the applicant is no longer seeking approval for a method of use claimed by the patent" (i.e., convert the Paragraph IV certification to a section viii statement).  21 C.F.R. § 314.94(a)(12)(viii)(A).  If a Paragraph IV certification is converted to a section viii statement "explaining that [the] method-of-use patent does not claim an indication or other condition of use for which the applicant is seeking approval and submits proposed labeling that appropriately carves out information related to the patented method of use," then FDA may approve the amended ANDA "immediately."  81 Fed. Reg. 69580, 69624 (Oct. 6, 2016); 21 C.F.R. § 314.107(b)(1)(ii).  Thus, once the Paragraph IV certification has been converted to a section viii statement, the approval is governed by 21 U.S.C. § 355(j)(5)(A), wherein FDA shall approve the application "[w]ithin one hundred and eighty days" of the initial receipt of an application, rather than 21 U.S.C. § 355(j)(5)(B), which regulates approval when there is a patent certification.

## II.   TENTATIVE APPROVAL

When an ANDA is deemed safe and effective by FDA and otherwise would be eligible for final approval but for unexpired patents or exclusivities, FDA will instead grant the application tentative approval.  *See* ANDA Submissions – Amendments and Requests for Final

---

[3] A Paragraph III certification states that the patent will expire on a particular date, until such time the generic company is not seeking approval to market its generic product.  21 U.S.C. § 355(j)(2)(A)(vii)

Approval to Tentatively Approved ANDAs, at 4 (Sept. 2020).[4]  But, "[a] drug product that is granted tentative approval is not an approved drug and will not be approved until FDA issues an approval letter[.]"  21 C.F.R. § 314.3(b).  As such, "tentative approval does not allow the applicant to market [its] generic drug product."  Drugs@FDA Glossary of Terms, U.S. Food and Drug Admin. (Nov. 14, 2017).[5]  Tentative approval therefore "delays final approval of the generic drug product until all patent or exclusivity issues have been resolved."  *Id.*

## STATEMENT OF FACTS

**I.      SALIX'S XIFAXAN AND ORANGE BOOK PATENTS**

Salix Pharmaceuticals, Inc. ("Salix") is the holder of NDA No. 021361 ("Salix's NDA") for rifaximin tablets under the brand name Xifaxan, which is currently the only rifaximin product available on the market.  *See* Orange Book, 43rd Edition, at 3-397 (Jan. 2023).[6]  Xifaxan 550 mg rifaximin tablets are indicated for the treatment of IBS-D in adults and for the reduction of the risk of overt hepatic encephalopathy ("HE") recurrence in adults.  Each of these indications for Xifaxan has a different dosing regimen.  *See* Label for XIFAXAN® (rifaximin) tablets, for oral use, Bridgewater, NJ: Valeant Pharmaceuticals North America LLC, Initial U.S. Approval: 2004

---

[4] *Available at* https://www.fda.gov/media/119718/download (last visited June 4, 2023).

[5] *Available at* https://www.fda.gov/drugs/drug-approvals-and-databases/drugsfda-glossary-terms. (last visited June 4, 2023).

[6] *Available at* https://www.fda.gov/media/71474/download (last visited June 4, 2023).

at 1.2, 1.3, 2.2, and 2.3.[7]  Norwich currently seeks FDA approval to market generic rifaximin 550 mg tablets only for the treatment of IBS-D.[8]

The cost of Xifaxan is astounding.  Salix's parent company reported domestic annual sales for all of Xifaxan's uses, including its substantial use for the treatment of IBS-D, of over $1.69 billion in 2022.  *See* Bausch Health Companies Inc. 2022 Annual Report at 83.[9] According to GoodRx, a 14-day course of treatment (totaling 42 Xifaxan 550 mg tablets) for IBS-D retails for around $2,300.[10]

By 2019, Salix listed 23 patents[11] in the Orange Book with various Use Codes.  These Use Codes include:[12]

- U-2643: Treatment Of Irritable Bowel Syndrome With Diarrhea (IBS-D) In Adults 65 Years Of Age Or Older And Symptoms Thereof

---

[7] *Available at* https://www.accessdata.fda.gov/drugsatfda_docs/label/2017/021361s023lbl.pdf (last visited June 4, 2023).

[8] A 200 mg strength of rifaximin is indicated for the treatment of travelers' diarrhea.  The issues involved in this litigation, however, relate solely to the 550 mg strength of rifaximin.

[9] https://ir.bauschhealth.com/~/media/Files/V/Valeant-IR/reports-and-presentations/ny20007033x3-ars-bausch-health-edgar-asfiled.pdf (last visited June 4, 2023). Salix reported $2.09 billion in sales and 81% of those were due to Xifaxan, which results in $1.69 billion for Xifaxan.

[10] GoodRx: Xifaxan, https://www.goodrx.com/xifaxan?form=tablet&dosage=550mg&quantity=42&label_override=xifaxan (last visited June 4, 2023)

[11] U.S. Patent Nos. 10,314,828; 10,335,397; 10,456,384; 7,045,620; 7,612,199; 7,902,206; 7,906,542; 7,915,275; 8,158,644; 8,158,781; 8,193,196; 8,309,569; 8,518,949; 8,642,573; 8,741,904; 8,829,017; 8,835,452; 8,853,231; 8,946,252; 8,969,398; 9,271,968; 9,421,195; and 9,629,828.  https://thefdalawblog.com/wp-content/uploads/2020/06/OB-Annual-2020-40th-Ed.pdf at ADA 231 (last visited June 4, 2023).

[12] *See id.* at ADA 231, ADB 101, 103-04, 108, 118, 142, 144.

- U-2644: Treatment Of Irritable Bowel Syndrome With Diarrhea (IBS-D) In Adults 65 Years Of Age Or Older

- U-1707:  Treatment Of Irritable Bowel Syndrome With Diarrhea (IBS-D) In Adults And Symptoms Thereof

- U-1708:  Treatment Of Irritable Bowel Syndrome With Diarrhea (IBS-D) In Adults

- U-1526:  The Treatment Of Patients With Travelers' Diarrhea (TD) Or The Reduction In Risk Of Overt Hepatic Encephalopathy (HE) Recurrence

- U-1481:  Reduction In Risk Of Overt Hepatic Encephalopathy (HE) Recurrence

- U-2579:  Reduction In A Subject's Risk Of Experiencing A Breakthrough Overt Hepatic Encephalopathy (HE) Episode

- U-1562:  Treatment Of Patients With Hepatic Encephalopathy (HE)

- U-1994:  Reduction In Risk Of Overt Hepatic Encephalopathy (HE) In Adults.

## II.   OTHER ANDA FILERS FOR RIFAXIMIN

On information and belief, Teva Pharmaceutical Industries Ltd. (hereinafter, "Teva")[13] and at least two other rifaximin ANDA applicants, Sandoz, Inc. ("Sandoz") and Sun Pharmaceutical Industries, Inc. ("Sun"), engaged in and settled their patent litigation with Salix, Bausch Health Ireland Ltd., and Alfasigma S.p.A., whereby they agreed to refrain from marketing their generic products until January 1, 2028.  *See* Press Release, Bausch Health, Bausch Health Announces Resolution of XIFAXAN® Intellectual Property Litigation (Sep. 12,

---

[13] Actavis Laboratories FL, Inc. (hereinafter, "Actavis") was the filer of ANDA No. 208959, but Teva announced that it acquired Actavis on August 2, 2016, and is therefore the holder of ANDA No. 208959.  *See* Press Release, Teva,  Teva Completes Acquisition of Actavis Generics (August 2, 2016), *available at* https://www.tevapharm.com/news-and-media/latest-news/teva-completes-acquisition-of-actavis-generics/#:~:text=Teva%20Pharmaceutical%20Industries%20Ltd.,(%E2%80%9CActavis%20Generics%E2%80%9D) (last visited June 4, 2023).  Any documents discussing "Actavis" therefore apply to Teva.

2018) (hereinafter, "Bausch-Teva Press Release"); Press Release, Bausch Health, Bausch

Health And Alfasigma Announce Resolution Of XIFAXAN® Intellectual Property Litigation

(May 06, 2020); Press Release, Bausch Health, Bausch Health And Alfasigma Announce

Resolution Of XIFAXAN® Intellectual Property Litigation (Sep. 22, 2020) (collectively,

"Bausch Press Releases").[14]  The terms of that settlement also allow Teva the option to launch

an "authorized generic" of rifaximin – an unbranded version of Xifaxan marketed under Salix's

NDA[15] – instead of selling its own generic ANDA product.  Bausch-Teva Press Release.[16]

Finally, the settlement allows all three manufacturers to market their generic rifaximin products

before 2028 should a competitor enter the market.  *Id.*

## III.    NORWICH'S ANDA AND FDA'S REFUSAL TO GRANT IT FINAL APPROVAL

In December 2019, Norwich submitted ANDA No. 214369 ("Norwich's Original

ANDA") to FDA, seeking authorization to market generic rifaximin 550 mg tablets

("Norwich's ANDA Product").  *Salix Pharms., Ltd., Salix Pharms., Inc., Bausch Health Ireland

Ltd., and Alfasigma S.p.A. v. Norwich Pharms. Inc.*, No. 1-20-cv-00430-RGA (D. Del.)

(hereinafter "*Salix v. Norwich*"), ECF No. 158 at ¶ 16, Landmon Decl., Ex. 1.  Norwich's

---

[14] https://ir.bauschhealth.com/tools/viewpdf.aspx?page={3862BA6E-F366-4B8B-80DA-7507A2665FC1} (last visited June 4, 2023); https://www.prnewswire.com/news-releases/bausch-health-and-alfasigma-announce-resolution-of-xifaxan-intellectual-property-litigation-301053561.html (last visited June 4, 2023); https://ir.bauschhealth.com/news-releases/2020/09-22-2020-120037282 (last visited June 4, 2023).

[15] Food and Drug Administration *FDA List of Authorized Generics Drugs*, WWW.FDA.GOV, https://www.fda.gov/drugs/abbreviated-new-drug-application-anda/fda-list-authorized-generic-drugs (explaining that an "'authorized generic' drug is most commonly used to describe an approved brand name drug that is marketed without the brand name on its label.") (last visited June 4, 2023).

[16] https://ir.bauschhealth.com/tools/viewpdf.aspx?page={3862BA6E-F366-4B8B-80DA-7507A2665FC1} (last visited June 4, 2023).

Original ANDA contained Paragraph IV certifications for all 23 patents listed in the Orange Book for rifaximin tablets at the time of filing. *See* 2020 Orange Book at 231.[17]

After receiving Norwich's Notice Letter, Salix filed a patent suit against Norwich in the U.S. District Court for the District of Delaware under 35 U.S.C. § 271(e)(2) based on the Paragraph IV certifications.[18] *Salix v. Norwich*, Exhibit 1 to ECF No. 158 at ¶ 119, Landmon Decl., Ex. 2. A four-day bench trial was held in March 2022, and the court issued its opinion and judgment on August 10, 2022. *Salix v. Norwich*, ECF No. 191, Landmon Decl., Ex. 23; *id.*, ECF No. 193 (hereinafter, the "Final Judgment"), Landmon Decl., Ex. 3. The court held that the patents covering polymorphic forms of the rifaximin drug substance and patents directed to the use of rifaximin to treat IBS-D were invalid as obvious. *Salix v. Norwich*, ECF No. 191 at 46, Landmon Decl., Ex. 2. The court also held that Norwich's original ANDA label seeking approval for the HE Indication would induce a third party to infringe the asserted claims of the HE Patents. It further held that the asserted claims of the HE Patents relating to the HE Indication had not been proven invalid. *Id.* Norwich has not, and does not intend to, appeal the district court's holdings that Norwich's Original ANDA infringes the Asserted HE Patents or that the HE Patents had not been shown invalid.

Based on these mixed holdings and over Norwich's objection to the scope of the Final Judgment, the court ordered "that the effective date of any final approval by [FDA] of [Norwich's Original ANDA] is to be a date not earlier than the date of expiration of the last to

---

[17] *See* n. 11, 12 *supra*.

[18] Salix eventually asserted all 23 patents plus three additional patents that were not listed in the Orange Book when Norwich submitted its ANDA. *See Salix v. Norwich*, Exhibit 1 to ECF No. 158 at 1, Landmon Decl., Ex. 1.

expire" of the Asserted HE Patents,[19] i.e., October 2029.  *Salix v. Norwich*, ECF No. 193 at ¶ 5,

Landmon Decl., Ex. 3; *see also id*., ECF No. 192, Landmon Decl., Ex. 4.  In a separate

Memorandum regarding a dispute over the Final Judgment, the court recognized that "Norwich

may seek to carve out the HE [I]ndication as permitted by 21 U.S.C. § 355(j)(2)(A)(viii)."

*Salix v. Norwich*, ECF No. 192 at 2, Landmon Decl., Ex. 4.  However, it deemed a section viii

carve out "immaterial" to the analysis as to the parameters of the judgment because such a

carved out label had not been before the court.  *Id.*

Following the entry of the court's Final Judgment, Norwich amended its proposed

ANDA label to seek approval for only the IBS-D Indication.  Accordingly, Norwich filed an

amendment to its ANDA carving out the HE Indication, withdrawing its Paragraph IV

certifications to the HE patents ("Norwich's Amended ANDA"), and submitting section viii

statements to the HE Patents.  J. Ibrahim Ltr. to J. Sachdeva re: ANDA Tenative Approval

(hereafter, the "TA Letter"), Compl., Ex. 1.  Because Norwich's amended ANDA label carves

out the HE Indication, it does not overlap with any patent use code listed by Salix in the Orange

Book for the Asserted HE Patents:  U-1481: "reduction in the risk of overt [HE] recurrence";

and U-2579: "reduction in a subject's risk of experiencing a breakthrough overt [HE]

episode."[20]  Norwich's Amended ANDA label for only the IBS-D Indication also does not

contain any of the Xifaxan labeling information identified and submitted by Salix for the HE

Indication.  *See, e.g.,* Salix Pharmaceuticals, Inc. Form FDA 3542 for U.S. Patent No.

10,335,397, Landmon Decl., Ex. 5; *see also* 21 C.F.R. 314.53(d).

---

[19] The "Asserted HE Patents" refers to claim 8 of U.S. Patent No. 8,642,573 (the "'573 Patent"), claim 6 of U.S. Patent No. 9,421,195 (the "'195 Patent"), and claims 11-12 of U.S. Patent No. 10,335,397 (the "'397 Patent").

[20] *See* n. 11, 12 *supra*.

Norwich thereafter moved the court to modify the order relating to the "effective date" of final approval of Norwich's Original ANDA because Norwich's Amended ANDA does not seek approval for the HE Indication, maintains a section viii statement to the Asserted HE Patents, and does not contain a Paragraph IV certification to the Asserted HE Patents. *Salix v. Norwich*, ECF No. 205 at 1, Landmon Decl., Ex. 6. The district court denied Norwich's motion. *Salix v. Norwich,* ECF No. 222 at 5, Landmon Decl., Ex. 7.

Norwich's Amended ANDA seeks approval for the IBS-D Indication. It does not seek approval for the HE Indication and does not contain a Paragraph IV certification to any of the Asserted HE Patents, and therefore a consideration of infringement of the Asserted HE Patents – which have patent use codes directed exclusively to the HE Indication – under Section 271(e)(2) is irrelevant to FDA's grant of final approval of Norwich's Amended ANDA.[21] The Delaware District Court has not rendered any judgment concerning any infringement of the Asserted HE Patents by Norwich's Amended ANDA. *Salix v. Norwich*, ECF No. 222 at 2, Landmon Decl., Ex. 7. Further, because Norwich converted to section viii statements instead of the Paragraph IV certifications for each of the Asserted HE Patents, the district court's order pursuant to 35 U.S.C. §271(e)(4)(A)(1) regarding Norwich's Original ANDA is not relevant to the date of final approval of Norwich's Amended ANDA.

---

[21] Even Salix has recognized this. *See* Press Release, Bausch Health, Bausch Health to Appeal XIFAXAN® Patent Decision to U.S. Court of Appeals for the Federal Circuit (Aug. 10, 2022), *available at* https://www.bauschhealth.com/news-room/news-releases/news-details/202208101800PR_NEWS_USPR_____NY35904 ("Unless and until FDA approves a revised ANDA by Norwich that omits the XIFAXAN HE indication . . . Norwich is not permitted to launch a generic equivalent of rifaximin."). *See also Warner-Lambert*, 316 F.3d at 1365-65 ("[A] request to make and sell a drug labeled with a permissible (non-infringing) use cannot reasonably be interpreted as an act of infringement (induced or otherwise) with respect to a patent on an unapproved use, as the ANDA does not induce anyone to perform the unapproved acts required to infringe.").

On June 2, 2023, FDA granted only tentative approval to Norwich's ANDA. (TA Letter.) FDA's June 2 Tentative Approval Letter stated that "final approval cannot be granted until October 2, 2029 as specified in the [District of Delaware] court order."[22] (TA Letter at 3.) But in the very next paragraph, FDA acknowledged that Norwich's Amended ANDA contained section viii statements regarding the Asserted HE Patents and that "these are method-of-use patents that do not claim any indication for which you are seeking approval under your ANDA." (TA Letter at 3-4.) By granting tentative approval, FDA also apparently agreed that the label sufficiently carved out the HE Indication. (*Id.* (acknowledging that Norwich appropriately filed section viii statements – and thus the corresponding label carve outs – to HE-related use codes, but that it could not provide final approval due to the "court order.").) FDA's arbitrary and capricious determination is denying Norwich its hard-earned market access, degrading Norwich's first-mover advantage, and waylaying any relief to patients and payors from a lower-cost generic rifaximin product.

## ARGUMENT

Courts must weigh four factors in deciding whether to grant a preliminary injunction: (1) whether there is a substantial likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not granted; (3) whether the injunction will substantially injure other interested parties; and (4) whether the public interest would be furthered by the injunction. *See Pearson v. Shalala*, 130 F. Supp. 2d 105, 112 (D.D.C. 2001) (citing *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998)).[23]

_____

[22] FDA's Tentative Approval Letter also states that "[t]his letter does not include information related to the 180-day exclusivity provisions under section 505(j)(5)(B)(iv) of the FD&C Act." (TA Letter at 1.)

[23] Norwich is seeking mandatory preliminary injunctive relief because its request for final approval seeks to alter, rather than preserve, the *status quo*. *See, e.g., Capitol Hill Baptist*

Here, all four factors weigh strongly in favor of granting immediate relief to Norwich by ordering that FDA's decision to grant only tentative approval based on the Delaware District Court's order was arbitrary, capricious, and contrary to law, and that Norwich's Amended ANDA should thus be granted final approval.

**I.    NORWICH IS LIKELY TO SUCCEED ON THE MERITS .**

    **A.  FDA Refused Approval of Norwich's Carved Out Label in Contravention of its Regulations, Prior Position Statements, and Case Law Discussing the Policy Interests of Granting Approval for Carved Out Labels.**

        **1.  FDA Should Have Approved Norwich's Amended ANDA "Immediately" upon Submitting a Section viii Statement under FDA's Regulations.**

FDA's regulations are unambiguous that not only is Norwich's Amended ANDA approvable upon submission of a section viii statement, but it is approvable "[i]mmediately." *See* 21 C.F.R. §§ 314.94(a)(12)(viii)(A), 314.107(b)(1)(ii).  FDA withheld final approval of Norwich's Amended ANDA and stated that "final approval cannot be granted until October 2, 2029 as specified in the [district of Delaware] court order" and by the district court's refusal to amend its order.  (TA Letter at 3.)  Yet FDA also acknowledged that Norwich had filed proper section viii statements and that "these are method-of-use patents that do not claim any indication for which you are seeking approval under your ANDA."  (TA Letter at 3-4.)  Although FDA apparently believes that it is hamstrung by the district court's order, FDA's decision to not

---

*Church v. Bowser*, 496 F. Supp. 3d 284, 292 (D.D.C. 2020).  Although *Capitol Hill* and other cases have suggested that Norwich is subject to a "higher burden" or a "higher standard" for such mandatory preliminary injunctive relief, *see e.g.*, *Pantoja v. Martinez*, No. 21-7118, 2022 WL 893017, at *1 (D.C. Cir. Mar. 25, 2022), the D.C. Circuit has not elaborated on this "higher standard," but has focused on if a party has shown a "substantial likelihood of success on the merits," and that this is often dispositive.  *See id.*  For the reasons stated below, Norwich has shown a substantial likelihood of success on the merits, the balance of equities is well in Norwich's favor, and given the unambiguous regulations and the policy goals of the Hatch-Waxman Act, Norwich has met this "higher burden" or "higher standard."

approve Norwich's Amended ANDA contravenes FDA's own regulations, FDA's statements when it issued the proposed and final regulations, and numerous cases discussing the importance of quickly approving generic drug products with section viii statements and carved-out labels.

The regulations are clear on their face – "*after finding of infringement,*" i.e., a final court decision finding infringement, the ANDA applicant has two choices: (1) change its Paragraph IV certification to a Paragraph III certification and forego approval until the relevant patent expires; or (2) if the relevant patent covers a method of use, "amend[] its ANDA such that the applicant is no longer seeking approval for a method of use claimed by the patent."  21 C.F.R. § 314.94(a)(12)(viii)(A) (emphasis added).  If the applicant chooses this second option, then "[o]nce an amendment for the change has been submitted, the ANDA will no longer be considered to contain a paragraph IV certification to the patent."  *Id.*

Once an applicant amends its ANDA and converts the Paragraph IV certification to a section viii statement, 21 C.F.R. § 314.107(b)(1)(ii) then controls.  That regulation states that, "if the applicant submits an appropriate [section viii statement] explaining that a method-of-use patent does not claim an indication or other condition of use for which the applicant is seeking approval," FDA may approve this amended ANDA "immediately."  21 C.F.R. § 314.107(b)(1)(ii).[24]  In other words, by filing the section viii statement, Norwich's Amended ANDA no longer contains a Paragraph IV certification and thus the section viii statement and the corresponding patents – here, the HE Patents – cannot be the basis for FDA delaying final

---

[24] 21 C.F.R. § 314.107(b)(1)(ii) provides an exception to this "immediate[]" approval only where the applicant also "submits a paragraph IV certification to the patent" at issue.  This is irrelevant here, however, because the Asserted HE Patents do not have both method claims and drug product claims.  *See* 59 Fed. Reg. 50338, 50347 (Oct. 3, 1994).  Thus, Norwich "does not have the option of making a certification under [Paragraph IV] in lieu of, or in addition to, a [Section viii] statement."  *Id.*

approval of the ANDA.  The regulation is unambiguous, and it was thus improper for FDA to

refuse to grant final approval to Norwich's Amended ANDA based on the district court's order

relating to the HE Patents.

FDA reaffirmed the clear directives set forth in 21 C.F.R. § 314.107 during its notice and

comment rulemaking in 2016:

> We also proposed to clarify that if a[n] . . . ANDA applicant
> submits a statement . . . explaining that a method-of-use patent
> does not claim an indication or other condition of use for which the
> applicant is seeking approval [i.e., a section viii statement,] and
> submits proposed labeling that appropriately carves out
> information related to the patented method of use, then the . . .
> ANDA may be eligible for *immediate approval* (see proposed
> § 314.107(b)(1)(ii)).

81 Fed. Reg. 69580, 69624 (Oct. 6, 2016) (emphasis added).

There is a separate regulation, 21 C.F.R. § 314.107(b)(3)(iv), which states that if there is

a finding of infringement, the ANDA "may be approved no earlier than the date specified by the

district court in an order under 35 U.S.C. 271(e)(4)(A)."  *See also* 21 U.S.C.

§ 355(j)(5)(B)(iii)(II)(bb) ("if the judgment of the district court is not appealed or is affirmed, the

approval shall be made effective on the date specified by the district court in a court order under

section 271(e)(4)(A) of Title 35").  When the act of infringement under 35 U.S.C. § 271(e)(2)

giving rise to an order under 35 U.S.C. 271(e)(4)(A) is based only on a method of use patent, this

regulation and the associated statute do not apply unless the ANDA applicant has not converted

its Paragraph IV certification to a section viii statement and continues to seek approval for an

indication covered by the method of use patent held to be infringed.  In fact, the corresponding

statute, Section 355(j)(5)(B), only addresses situations where an ANDA maintains a patent

certification.  *See* 21 U.S.C. § 355(j)(5)(B)(i)-(iii).  But here, Norwich's Amended ANDA

contains no such patent certification to the Asserted HE Patents, but was instead amended to

maintain section viii statements to those patents pursuant to 21 C.F.R. § 314.94(a)(12)(viii)(A).

FDA's approval of Norwich's Amended ANDA is thus governed by 21 U.S.C. § 355(j)(5)(A),

which contains no directive to delay the approval to a date specified by a district court order

under Section 271(e)(4)(A).  And, as explained above, FDA's regulations make it clear that an

ANDA that is amended to include a section viii statement can be approved "immediately."  *See*

21 C.F.R. § 314.107(b)(1)(ii).

Notably, prior iterations of 21 C.F.R. § 314.94 did not provide that an applicant could file

a section viii statement *after a finding of infringement*.  *See* 59 Fed. Reg. 50338, 50364-65.  But

in 2015, FDA proposed amending the 1994 regulations in light of the MMA "in a manner

intended to reduce unnecessary litigation [and] reduce delays in the approval of . . . ANDAs that

are otherwise ready to be approved[.]"  80 Fed. Reg. 6802, 6803 (Feb. 6, 2015).  FDA proposed

doing so by adding language to clarify that, following final judgment, "an applicant may change

its paragraph IV certification for a method-of-use patent to a statement under [ ]

505(j)(2)(A)(viii) of the FD&C Act only if the applicant amends its [ ] ANDA [ ] such that the

applicant is no longer seeking approval for a method of use claimed by the patent[.]"  *Id.* at 6844.

Thus, after a final judgment of infringement, FDA proposed that an applicant may remove the

infringing method of use from its ANDA, obtain approval, and lawfully market its product for

any non-infringing indication not covered by the method of use patent.  In 2016, FDA

implemented the final version of the relevant regulations by providing for the filing of a section

viii carve out after a finding of infringement.  *See* 81 Fed. Reg. 69580, 69649-51 (Oct. 6, 2016).

By amending the ANDA label to remove an indication and converting a Paragraph IV patent

certification to a section viii statement after a final judgment of infringement, applicants have a

pathway for seeking and obtaining final approval of indications not covered by the infringed

method of use patents.  This also prevents the undue or anticompetitive expansion of the narrow right to exclude conveyed by one method of use patent to block approval of a second, non-patented indication.

Norwich's Original ANDA contained the HE Indication and was held to infringe the Asserted HE Patents, and Norwich is not contesting that finding, nor the finding on validity of the HE Patents, thus making this decision a "final decision from which no appeal has been or can be taken[.]"[25]  Norwich then amended its ANDA with a section viii statement in accordance with 21 C.F.R. § 314.94(a)(12)(viii)(A) that carved out the HE Indication from Norwich's product labeling, and in doing so withdrew its Paragraph IV certifications to the Asserted HE Patents. Norwich thus seeks approval of its carved out label for only the IBS-D indication, which is not blocked by any valid patents.  Thus, not only was Norwich's Amended ANDA approvable, but FDA should have approved Norwich's Amended ANDA "immediately" pursuant to 21 C.F.R. § 314.107(b)(1)(ii).  FDA's failure to follow its own regulation should be reversed by this Court, and FDA should be ordered to grant final approval to Norwich's ANDA.

### 2.  FDA's Guidance and Case Law Both Provide that Norwich's Amended ANDA with a Carved Out Indication is Proper and Satisfies Congress's Purpose of the Hatch-Waxman Act.

FDA's regulatory framework permits an ANDA applicant to seek approval of one indication when another indication is protected by patents, even after a decision on the merits. *See* 21 C.F.R. § 314.94(a)(12)(viii)(A) (requiring an applicant to amend its Paragraph IV statement "*[a]fter finding of infringement*") (emphasis in original).  Moreover, FDA Guidance further contemplates amending an ANDA to carve out a method of use following a final

---

[25] Norwich's appeal of the district court's order to the extent that it prohibits the final approval of Norwich's Amended ANDA does *not* disturb the finality of the finding of infringement of the Asserted HE Patents or validity of the Asserted HE Patents.  *See Salix v. Norwich*, ECF No. 223 (Notice of Appeal), Landmon Decl., Ex. 8.

judgment of infringement by stating that an applicant that does not appeal that final judgment "can amend its ANDA to no longer seek approval for a method of use claimed by the patent and submit a statement under section 505(j)(2)(A)(viii) of the FD&C Act." *See* FDA Good ANDA Submission Practices Guidance for Industry, FDA-2017-D-6854 at 6 (Jan. 2022) (citing 21 C.F.R. § 314.94(a)(12)(viii)(A)).[26]

Indeed, Norwich's Amended ANDA expressly follows the congressional intent behind section viii statements:

> Congress recognized that a single drug could have more than one indication and yet that the ANDA applicant could seek approval for less than all of those indications . . . .  Moreover, and perhaps more importantly, Congress made it clear that the ANDA applicant need not certify with respect to every 'use' patent that claims an indication for the drug.  Rather, the applicant needs only to certify with respect to use patents that claim an indication for which the applicant is seeking approval to market the drug.

*Warner-Lambert*, 316 F.3d at 1360 (citing H.R. Rep. No. 98-857(I), at 22 (1984)); *see also Bristol-Myers Squibb Co. v. Shalala*, 91 F.3d 1493, 1500 (D.C. Cir. 1996) (discussing that generic companies do not need to match every indication as the brand drug).  When a "method of use patent [] does not claim a use for which the applicant is seeking approval, an applicant may [] submit a statement under 21 U.S.C. § 355(j)(2)(A)(viii) averring that the ANDA excludes all uses claimed in the patent ('Section viii statement')" which "limit[s] the scope of regulatory approval . . . and a § 271(e)(2) infringement suit— by excluding patented indications from their ANDAs."  *AstraZeneca v. Apotex*, 669 F.3d 1370, 1374, 1379 (Fed. Cir. 2012).  And the regulation is clear that a party can choose to file this section viii statement "[*a]fter* finding of infringement."  21 C.F.R. § 314.94(a)(12)(viii)(A) (emphasis added).

---

[26] https://www.fda.gov/regulatory-information/search-fda-guidance-documents/good-anda-submission-practices-guidance-industry (last visited June 4, 2023).

Moreover, FDA's post-infringement carve-out regulations and guidance comport with the overall purpose of the Hatch-Waxman Act – to facilitate the pursuit, development, and swift approval of affordable generic drugs.  *See In re Barr Labs., Inc.,* 930 F.2d 72, 76 (D.C. Cir. 1991) ("Congress sought to get generic drugs into the hands of patients at reasonable prices – fast."); *Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.*, 527 F.3d 1278, 1282 (Fed. Cir. 2008) ("[A] goal of the Act is to . . . enabl[e] competitors to bring low-cost, generic copies of those drugs to market.'"); *Teva Pharms.*, 482 F.3d at 1344 ("A central purpose of the Hatch-Waxman Act . . . is 'to enable competitors to bring cheaper, generic . . . drugs to market as quickly as possible.'") (quoting Sen. Kennedy Remarks, 149 Cong. Rec. S15885 (Nov. 25, 2003)).

Further, the Hatch-Waxman Act was "designed to simplify and expedite the process by which generic drugs are brought to market."  *Purepac Pharm. Co. v. Thompson*, 238 F. Supp. 2d 191, 193 (D.D.C. 2002), *aff'd*, 354 F.3d 877 (D.C. Cir. 2004), and *aff'd*, 354 F.3d 877 (D.C. Cir. 2004).  To benefit consumers, the Act "creat[es] a streamlined procedure for the approval of generic drugs" allowing applicants to "avoid the costly and time-consuming process associated with NDAs, thus facilitating the approval and dissemination of low-costs generic drugs."  *Id.* (citing H.R. Rep. No. 98-857 (Part I) at 14 (Jun. 21, 1984)).

FDA's refusal to grant Norwich final approval subverts its own regulations and directly contradicts the stated policy objectives of 21 C.F.R. § 314.94 and the Hatch-Waxman Act.  *Cf. Georgia v. Brooks-La Sure*, No. 2:22-cv-6, 2022 WL 3581859, at *11-*13 (S.D. Ga. Aug. 19, 2022) (finding that the Centers for Medicare & Medicaid Services' ("CMS") decision to withdraw a demonstration project pursuant to its regulation wherein it "may" withdraw such a program was deemed arbitrary and capricious because CMS's decision actually took away from the goal of the statute, namely to decrease medical costs for patients).  Consistent with 21 C.F.R.

§ 314.94(a)(12)(viii), after a finding of infringement of the Asserted HE Patents, Norwich

amended its ANDA to carve out the infringing method of use, thereby allowing the adjudged

noninfringing methods of use for IBS-D to come to market upon final approval.  FDA's denial of

final approval now blocks these noninfringing uses from reaching the public until the expiry of

the HE Patents, which were held not invalid and infringed *only as to the method that has been*

*carved out*.  Norwich's Amended ANDA product should now be made available to the public

consistent with FDA's clear regulations and Congress' intent.

### B.  FDA's Decision is Not Entitled to Deference.

FDA's decision not to grant Norwich's Amended ANDA final approval is irreconcilable

with the plain language and intent of 21 C.F.R. § 314.94(a)(12)(viii)(A) and is therefore not

entitled to deference by this Court.  The regulation is clear that an ANDA applicant can file a

section viii statement "[*a]fter* finding of infringement," thus FDA is able to find that such a court

order on infringement occurred, and nevertheless approve the ANDA.  21 C.F.R.

§ 314.94(a)(12)(viii)(A).  A court may only grant deference to an agency's interpretation of its

own regulation (referred to as *Auer* deference[27]) if that regulation is "genuinely ambiguous . . .

even after a court has resorted to all the standard tools of interpretation."  *Kisor v. Wilkie*, 139 S.

Ct. 2400, 2414 (2019).  Before concluding that a rule is genuinely ambiguous, "a court must

exhaust all the 'traditional tools' of construction.  *Id.* at 2415 (citing *Chevron*, 467 U.S. at 843, n.

---

[27] Also called *Seminole Rock* deference, the doctrine is named for the principles set forth in two
Supreme Court cases:   *Auer v. Robbins*, 519 U.S. 452, 461 (1997) and *Bowles v. Seminole Rock
& Sand Co.*, 325 U.S. 410, 414 (1945).

9, as "adopting the same approach for ambiguous statutes").[28]   And, "not all reasonable agency constructions of those truly ambiguous rules are entitled to deference." *Id.* at 2414.

There is no genuine ambiguity here that compels this Court to defer to FDA's refusal to grant final approval to Norwich's ANDA because FDA's regulations are clear on their face – following a finding of infringement, the ANDA applicant may amend its ANDA if "the applicant is no longer seeking approval for a method of use claimed by the patent," i.e., a section viii statement.  21 C.F.R. § 314.94(a)(12)(viii)(A).  By converting to a section viii statement, the ANDA is "no longer . . .  considered to contain a paragraph IV certification to the patent." *Id.* Norwich provided a section viii statement pursuant to Section 314.94(a)(12)(viii)(A).  Because Norwich's ANDA is "no longer [] considered to contain a paragraph IV certification" to any patent claiming a method for treating HE, FDA should have approved Norwich's ANDA "immediately."   21 C.F.R. § 314.107(b)(1)(ii).  This Court should thus issue an order finding that FDA's decision to grant only tentative approval to Norwich's Amended ANDA was arbitrary, capricious, and contrary to law, and order FDA to grant final approval to Norwich's Amended ANDA.

---

[28] The Supreme Court has dispensed with the notion that an agency's construction of rules receives a greater deference than an agency's construction of a statute.  *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019).  Further, the Court has described *Auer* as requiring an analogous though not identical inquiry as *Chevron*.  It is notable, however, that recent court cases have questioned the precedential value of *Chevron*, which, by these principles, may affect *Auer* deference by extension.  *See Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896, 1902 (2022) ("This Court has long recognized a 'strong presumption' in favor of judicial review of final agency action."); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 45 F.4th 306, 313, (D.C. Cir. 2022) (dispensing with the *Chevron* framework in favor of traditional tools of statutory interpretation); *see also Loper Bright Enterprises v. Raimondo*, No. 22-451, 2023 WL 3158352 (Mem) (May 1, 2023) (granting the petition for *certiorari* regarding Question 2: "Whether the Court should overrule Chevron[]").

## II.    NORWICH WILL SUFFER IRREPARABLE HARM ABSENT IMMEDIATE RELIEF FROM THIS COURT.

Norwich will suffer irrecoverable and substantial economic losses and other intangible harms unless this Court enters an injunction requiring FDA to follow its own unambiguous regulations and grant final approval to Norwich's Amended ANDA.  Norwich has no adequate remedy at law to recover monetary damages arising from FDA's erroneous decision.  Further, each passing day prevents Norwich from capitalizing on its first-mover opportunity in the generic drug market for rifaximin 550 mg tablets for the treatment IBS-D.  Thus, Norwich will lose goodwill and key access to customers attributable to being first-to-market with an important generic IBS-D treatment.  In addition and given the strong likelihood of success on the merits, "a much smaller quantum of injury will sustain an application for preliminary injunction."  *Mova Pharm. Corp. v. Shalala*, 955 F. Supp. 128, 131 (D.D.C. 1997) (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (*per curiam*).).

### A.  Norwich Will Incur Substantial and Irrecoverable Economic Loss.

Absent final FDA approval, Norwich cannot market its generic rifaximin 550 mg tablets in the U.S. for the treatment of IBS-D.  Norwich's ANDA product is a critical asset in Norwich's product pipeline.  *See* T. Zaku Decl. at ¶ 8.  Each day that FDA improperly withholds final approval of Norwich's ANDA product is another day that Norwich is foreclosed from opening the generic market and monetizing its strategically important asset.  If FDA is enjoined from delaying final approval of Norwich's Amended ANDA, however, Norwich will be in a position to promptly launch its product, and obtain a significant share of the generic market for rifaximin to treat IBS-D.  *See* T. Zaku Decl. at ¶¶ 7 and 9.

Without a preliminary injunction, Norwich will have no legal recourse either against FDA, or against any generic competitor, to recover any monetary damages.  *See Mylan Pharms.,*

*Inc. v. Thompson*, 268 F.3d 1323, 1332 (Fed. Cir. 2001) (holding that FDCA does not create a private right of action) *superseded by statute on other grounds*, *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399 (2012).  This Court has held that economic loss may be irreparable when it cannot be recovered and when the effect of that loss on the plaintiff is serious.  *Mova*, 955 F. Supp. at 131; *see also Bracco Diagnostics, Inc. v. Shalala*, 963 F. Supp. 20, 29 (D.D.C. 1997); *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) ("where, as here, the plaintiff in question cannot recover damages from the defendant due to the defendant's sovereign immunity . . . any loss of income suffered by a plaintiff is irreparable *per se*") (internal citations omitted).  Even if this Court later orders FDA to grant final approval to Norwich's ANDA, it would be impossible for Norwich to "make up" for lost opportunities to fill generic prescriptions for treating IBS-D.  T. Zaku Decl. at ¶ 13.  Norwich's economic losses, therefore, are unmistakably irreparable.

> ### B.  Norwich Will Be Irreparably Harmed by the Impairment of Its *De Facto* First-Mover Advantage.

Norwich is positioned to enjoy a significant first-mover advantage in the generic rifaximin market for treating IBS-D.  It is one of just four applicants to have submitted an ANDA seeking approval to market rifaximin 550 mg tablets for the IBS-D indication.  *See supra* at 9-10. Norwich, however, is the only applicant that will be in a position to freely launch its generic product before January 1, 2028.  Based on settlement agreements struck with Salix, none of the other three ANDA applicants – Teva, Sun, or Sandoz – may enter the market before January 1, 2028.  Although these settlement agreements might permit Teva, Sun, or Sandoz to enter the

market earlier if Norwich first launches its product, Norwich is necessarily positioned to be the first mover in the generic rifaximin market for the treatment of IBS-D.

"[T]he earliest generic drug manufacturer in a specific market has a distinct advantage over later entrants." *Mova*, 140 F.3d at 1066. This advantage is significant because it "can never be fully recouped through money damages or by 'playing catch-up.'" *Bracco Diagnostics*, 963 F. Supp. at 29. In fact, courts consistently recognize the unique value of the first-mover advantage, acknowledge the irreparable harm that a party suffers when improperly denied that advantage, and grant preliminary injunctions to remedy the harm. *See, e.g.*, *id*. at 29 (issuing a preliminary injunction where "'an officially sanctioned head start in the market' for a discrete pharmaceutical product will cause irreparable injury to the company that is left behind") (citing *Mova Pharm.*, 955 F. Supp. at 130-31); *TorPharm, Inc. v. Shalala*, No. Civ. A. 97–1925(JR), 1997 WL 33472411, at *4 (D.D.C. Sep. 15, 1997) (issuing a preliminary injunction where the plaintiff would "be permanently disadvantaged in the market" because "timely entry into the market is critical for success").

Here, the loss of the *de facto* first-mover advantage for rifaximin will seriously injure Norwich. *See* T. Zaku Decl. at ¶¶ 9-12. Norwich's time as the sole generic marketer of rifaximin for IBS-D is ephemeral, with three other ANDA filers whose settlements may allow them to accelerate their launch date under certain conditions. Bausch Press Releases; *see, e.g., Abbott Labs. v. Sandoz, Inc.*, 500 F. Supp. 2d 846, 855 (N.D. Ill. 2007) ("[T]he subsequent unlawful presence of generic competitors nonetheless inflicts harm . . . because at the very minimum, there is greater supply of competitive product on the market than there otherwise would be."). Each passing day is one day less of *de facto* marketing exclusivity for IBS-D. *See* T. Zaku Decl. at ¶ 10. That period of exclusivity for Norwich provides critical access to

important rifaximin customers that otherwise would not be available.  *See Teva Pharms., USA, Inc. v. FDA*, 182 F.3d 1003, 1011 n.8 (D.C. Cir. 1999) (later-entering generic manufacturers "face continued harm because of their denied access to the market . . . ."); *see* T. Zaku Decl. at ¶¶ 9-12.  As the first-mover, Norwich "would have advantages that include working with the best facilities and potential customers[.]"  *See Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 868 F. Supp. 2d 359, 375 (D. Del. 2012) (finding irreparable harm due to loss of first-mover advantage).  Because these opportunities differ vastly from customer to customer, their loss is extremely difficult to quantify.  *See Pharmacia & Upjohn Co. v. Ranbaxy Pharms., Inc.*, 274 F. Supp. 2d 597, 614 (D.N.J. 2003) (finding irreparable harm in part due to the "speculative nature of damage assessments"), *aff'd in relevant part*, 85 F. App'x 205 (Fed. Cir. 2003); *see* T. Zaku Decl. at ¶ 11.  These opportunities are, however, extremely significant to Norwich, and their loss would cause substantial and irreparable harm.  *see* T. Zaku Decl. at ¶¶ 15-17; *see also Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008) (holding that, although "loss of market opportunities cannot be quantified or adequately compensated," they nevertheless constitute "evidence of irreparable harm") (internal citations omitted); *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014) (collecting cases).

In addition, wrongfully delaying Norwich's approval – and thereby denying Norwich its first-mover advantage – will deprive Norwich of its best opportunity to earn and maintain generic market share for the use of rifaximin for the treatment of IBS-D.  S*ee Albany Molecular Research, Inc. v. Dr. Reddy's Labs., Ltd.*, No. 09-cv-4638 (GEB–MCA), 2010 WL 2516465, at *10–11 (D.N.J. June 14, 2010) (concluding that harms such as lost market share and price erosion are difficult to quantify and irreparable); *see* T. Zaku Decl. at ¶¶ 11-12.  As a first generic entrant marketing an ANDA product, Norwich will be able to gain a significant share of

the generic rifaximin market for IBS-D.  *See* T. Zaku Decl. at ¶¶ 11-12.  As of today, Teva and

Sun have not even obtained tentative approval to market generic rifaximin 550 mg tablets.

Sandoz would still need to (i) receive final approval for its ANDA product, (ii) make launch

preparations, and (iii) abide by the terms of its settlement agreement, before it could enter the

market.  Even after other generic competitors enter the market, Norwich expects that it would

be able to maintain a significantly larger market share than its competitors due to its head start.

*See* T. Zaku Decl. at ¶¶ 11-12.  This enduring market share results from a combination of access

to better customers and the long-term nature of many purchasing arrangements.  *See TorPharm*,

1997 WL 33472411, at *4 (noting that "timely entry into the market is critical for success").

There will be no way to replicate this market dynamic if other generics obtain final approval at

the same time as Norwich and are able to launch their generic rifaximin products together with

Norwich by the time this Court reaches the merits of this case.  *See* T. Zaku Decl. at ¶¶ 13-14.

Being one of the first companies to offer a generic rifaximin product for IBS-D will also

allow Norwich to generate substantial goodwill with existing and prospective customers.  The

generic drug business is highly competitive, and a small number of wholesalers account for the

majority of generic drug purchases in the United States.  Yu Yu, and Sachin Gupta, *Pioneering

advantage in generic drug competition*, INT'L J. PHARM. AND HEALTHCARE MKTG. 126-150,

130 (2014).[29]  These large purchasers prize the ability to offer newly-available generic drugs to

their own customers.  *See* T. Zaku Decl. at ¶¶ 10, 11, 12 and 15..  As a result, they often

aggressively pursue relationships with generic first-movers.  *See* T. Zaku Decl. at ¶ 15.

Norwich's ability to enter the market as the first generic alternative provides it with a unique

---

[29] *Available at* https://www.researchgate.net/profile/Sachin-Gupta-37/publication/228170826_
Pioneering_Advantage_in_Generic_Drug_Competition/links/5c85c001458515831f9aa792/Pione
ering-Advantage-in-Generic-Drug-Competition.pdf (last visited June 4, 2023).

opportunity to establish and strengthen its relationships with these key customers through their interest in stocking generic rifaximin for the IBS-D indication as soon as it is available. *See* T. Zaku Decl. at ¶¶ 10, 11, 12 and 15. Moreover, generic companies like Norwich rely on bringing their products to market as soon as possible as a way to maintain their reputation as top-tier generic manufacturers. *See* T. Zaku Decl. at ¶¶ 10 and 15. Launching one of the first generic rifaximin products for IBS-D will therefore enhance Norwich's reputation in this area. *Id.*

Absent an injunction, Norwich will be irreparably harmed.

## III. GRANTING THE PRELIMINARY INJUNCTION WILL NOT SUBSTANTIALLY INJURE ANY INTERESTED PARTY.

In contrast to the significant and irreparable harm that Norwich will suffer absent preliminary relief, ordering FDA to grant final approval to Norwich's ANDA would not cause substantial injury to FDA or any interested party. First, FDA has no financial stake in the outcome of this case. Rather, FDA has an interest in the correct implementation of the FDCA and in the establishment of clear rules to guide the generic pharmaceutical industry. *See* 21 U.S.C. § 393 (describing one of the objectives of FDA's agency plan as "maximizing the availability and clarity about the process for review of applications and submissions . . . made under [the FDCA]"); *see also* 65 Fed. Reg. 67012, 67013 ("To strengthen its performance, FDA developed partnerships with stakeholders and stimulated cooperation and partnership by making its activities more understandable and accessible to stakeholders"); *Bracco Diagnostics*, 963 F. Supp. at 30 ("[r]equiring [FDA] to act lawfully is also very much in the public interest."); *Whitaker v. Thompson*, 248 F. Supp. 2d 1, 16 (D.D.C. 2002) ("[I]t is clearly in the

public interest to ensure that governmental agencies, such as the FDA, fully comply with the law[.]").  The prompt resolution of this suit in Norwich's favor promotes those interests.

There is likewise little risk of substantial harm to other rifaximin ANDA filers.  Teva and the other ANDA filers will benefit from being able to bring products to market prior to 2028, because the settlements they entered with Salix only allow them to launch before January 2028 if another ANDA filer obtains FDA approval and comes to market.  *See* Bausch Press Releases, *supra* n. 14.

This Court has denied injunctive relief on the basis of harm to other interested parties in situations where the interested parties had already obtained FDA approval and were otherwise ready to enter the market, if they were not already marketing and selling their products.  *See, e.g.*, *Biovail Corp. v. U.S. Food & Drug Admin*, 519 F. Supp. 2d 39, 50 (D.D.C. 2007) (giving greater weight to intervenor-defendants' approved ANDA products and ongoing sales and contracts); *Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212, 221 (D.D.C. 1996) (describing intervenor-defendant's efforts over the years to obtain final FDA approval).

Salix cannot claim to be harmed by the potential loss of sales for Xifaxan for the treatment of IBS-D.  The Delaware district court held that the patents directed to a method of use concerning the treatment of IBS-D were invalid.   Moreover, Salix has already delayed the introduction of competitive generics by virtue of its patents and settlement agreements.  *See Mylan Pharms., Inc. v. Sebelius*, 856 F. Supp. 2d 196, 217 (D.D.C. 2012) (noting that the brand drug manufacturer could not "claim to be harmed by the potential loss of sales" because it had "already delayed the introduction of competitive generics for almost seven years by virtue of its settlement agreements with the filers of paragraph IV certifications referencing" its patent, earning over a billion dollars in sales of its brand name drug in one year alone).  Salix cannot

argue that it will suffer irreparable harm because it may lose profits if FDA approves Norwich's Amended ANDA for the IBS-D Indication, as this argument "is insufficient to establish irreparable harm." *Id.* at 218; *cf Abbott Labs. v. Sandoz, Inc.*, 500 F. Supp. 2d at 855 ("The public interest is not served by . . . the extension of monopoly pricing by means of invalid patents over the distribution of low cost pharmaceuticals."); *Butamax* , 868 F. Supp. 2d at 375 (stating that the public interest is best served when the patent owner has failed to establish that the patent is likely valid and infringed, and therefore weighing this factor in favor of the non-infringing party).

Indeed, when balancing the equities between Salix and Norwich, the balance tips well in Norwich's favor.  Norwich has cleared a path to market by showing multiple Salix patents to be invalid, and by carving out the sole infringing indication to create a non-infringing ANDA product that is immediately approvable.  *See, e.g.*, *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, 868 F. Supp. 2d 359, 375 (D. Del. 2012) (finding that when a party does not infringe the relevant patents, the balance of equities "weighs in favor" of the non-infringing party).

## IV.     PRELIMINARY RELIEF WILL FURTHER THE PUBLIC INTEREST.

Granting Norwich's motion for a preliminary injunction will further the public interest by permitting Norwich to open a generic market for rifaximin 550 mg tablets for the treatment of IBS-D that, as discussed above, might not otherwise commence until January 2028.  In other words, the prior settlement agreements between other ANDA applicants and Salix practically foreclose generic competition until 2028 unless Norwich's ANDA product for the treatment of IBS-D obtains final approval and forms the generic market.

Generic competition to the brand product for the IBS-D Indication will significantly lower prices for IBS-D patients and payors.  *See Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 684 (Fed. Cir. 1990) (recognizing "a public interest in the protection of patent rights,"

but deeming that interest counterbalanced by a competitor's "continuing right to compete"). Thus, the availability of generic rifaximin for treating IBS-D furthers serves the public interest by providing consumers increased access to cheaper, safe generic drugs. The FDCA is structured to give incentives to companies to file ANDAs so that lower-cost generic drugs are brought to market as soon as possible. "[T]he public has an interest in receiving the benefit of ANDA-approved generic drugs as soon as those products can lawfully come to market." *Pharmacia & Upjohn Co.,* 274 F. Supp. 2d at 614, *aff'd in relevant part*, 85 F. App'x 205 (Fed. Cir. 2003); *see also TorPharm*, 1997 WL 33472411, at *5 ("The public interest in competition and in the correct application of the [FDCA] favors issuance of the injunction."). The Hatch-Waxman Act was implemented "'to speed the introduction of low-cost generic drugs to market,' thus increasing competition and, theoretically, lowering prices." *Ranbaxy Labs.*, 82 F. Supp. 3d at 164 (quoting *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S* , 566 U.S. 399, 405 (2012)) (internal citations omitted).

Having Norwich's generic product for IBS-D on the market sooner – rather than being erroneously delayed by FDA – will lead to lower prices for IBS-D patients and payors, which will benefit the public and satisfy the intent of the FDCA. Data from FDA generally show that prices for a drug can drop by as much as 75% within a year of the first generic approval, and that the median price reduction for a single generic on the market is between 31% and 39%.[30]

In fact, in passing the Hatch-Waxman Act, "Congress sought to get generic drugs into the hands of patients at reasonable prices – fast." *In re Barr Labs., Inc.*, 930 F.2d 72, 76 (D.C. Cir.

---

[30] Ryan Conrad, et al., *Estimating Cost Savings from New Generic Drug Approvals in 2018, 2019, and 2020*, at 4 (Aug. 2022) https://www.fda.gov/media/161540/download (last visited June 4, 2023); Ryan Conrad, et al., *Generic Competition and Drug Prices: New Evidence Linking Greater Generic Competition and Lower Drug Prices*, at 9 (December 2019) https://www.fda.gov/media/133509/download (last visited June 4, 2023).

1991).  Moreover, ensuring that FDA treats all ANDA applicants the same and interprets the FDCA properly in this case is similarly beneficial to the public.  *See Bracco Diagnostics*, 963 F. Supp. at 30 ("[r]equiring [FDA] to act lawfully is also very much in the public interest."); *Whitaker*, 248 F. Supp. 2d at 16 ("[I]t is clearly in the public interest to ensure that governmental agencies, such as the FDA, fully comply with the law.").  It is therefore necessary and appropriate for this Court to order FDA to grant final approval to Norwich's ANDA.

## CONCLUSION

For the foregoing reasons, Norwich respectfully requests that this Court (i) hold that FDA's June 2, 2023 grant of tentative approval rather than final approval to Norwich's ANDA is arbitrary, capricious, and contrary to law, and (ii) enter a preliminary injunction directing Secretary Becerra, Commissioner Califf, and the United States Food and Drug Administration to grant final approval to Norwich's Amended ANDA, as set forth in the Proposed Order submitted herewith.

Dated: June 5, 2023

Respectfully submitted,

/s/*Chad A. Landmon*
Chad A. Landmon (DC Bar No. 990347)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
clandmon@axinn.com

*Attorney for Plaintiff Norwich Pharmaceuticals, Inc.*

OF COUNSEL:
Matthew S. Murphy (*pro hac vice* forthcoming)
Aaron Z. Savit (*pro hac vice* forthcoming)

AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
mmurphy@axinn.com
asavit@axinn.com

Ross E. Blau (*pro hac vice* forthcoming)
AXINN, VELTROP & HARKRIDER LLP
114 W. 47th Street
New York, NY 10036
T: (212) 728-2200
rblau@axinn.com

Gabriella McIntyre (*pro hac vice* forthcoming)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 912-4700
gmcintyre@axinn.com