# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORWICH PHARMACEUTICALS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, <br><br> ROBERT M. CALIFF, M.D., in his official capacity as Commissioner of Food and Drugs, <br><br> and <br><br> UNITED STATES FOOD AND DRUG ADMINISTRATION, <br><br> *Defendants*. | Civil Action No. _____ |

## DECLARATION OF TUNIE ZAKU IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

I, Tunie Zaku, declare as follows:

1. I submit this declaration in support of Norwich Pharmaceutical Inc.'s Motion for a Preliminary Injunction.

2. I have personal knowledge of the truth of the facts set forth in this Declaration, or believe such facts to be true based on personal knowledge, information provided by knowledgeable persons who work with me, and review of records kept in the ordinary course of business.

3. I am the U.S. Chief Financial Officer ("CFO") for Alvogen, U.S. Business. I have held this position since 2018. Prior to joining Alvogen in 2018, I also held various business roles within companies in generic pharmaceutical drug industry.

4.	In my role as CFO, I am responsible for the preparation and accuracy of financial statements of the Alvogen U.S. business as well as preparing financial forecasts and planning for the same. These responsibilities require me to have knowledge of the portfolio of products currently marketed by the Alvogen family of companies along with future products in the development pipeline.

5.	Norwich Pharmaceuticals, Inc. ("Norwich") is an entity within the Alvogen U.S. business, and I therefore have knowledge of Norwich's business planning along with Norwich's current and anticipated contributions to the financial statements of the Alvogen U.S. business.

6.	As discussed above, I have over sixteen years of experience in the generic drug industry. During that time, I have gained extensive knowledge of the generic pharmaceutical drug business, including the financial planning and performance of new generic drugs.

7.	I understand that on June 2, 2023 the U.S. Food and Drug Administration ("FDA") issued tentative approval to Abbreviated New Drug Application ("ANDA") No. 214369 for rifaximin 550 mg tablets ("Norwich's ANDA Product") for the indication of treating irritable bowel syndrome with diarrhea (IBS-D) in adults. However, Norwich cannot market a generic drug in the U.S. absent a grant of final approval from FDA. Once approved, Norwich is ready and able to launch its ANDA Product for the treatment of IBS-D in a short amount of time.

8.	Norwich's ANDA Product is a critical asset in Norwich's pipeline. It is my understanding that no generic rifaximin 550 mg tablets are currently available for the treatment of IBS-D. I have been informed that three other generic drug manufacturers have submitted ANDAs for rifaximin 550 mg tablets, but each has agreed to keep its product off the market until January 2028. Any opportunity for Norwich to bring the first generic rifaximin 550 mg tablet to market for the treatment of IBS-D would be transformative.

9. As the company that would open the generic rifaximin market for the treatment of IBS-D, Norwich would enjoy a significant first-mover advantage. The "first-mover" advantage generally allows a generic company to gain, among other things, a foothold with wholesalers and a greater share of the generic market in the long term.

10. However, Norwich cannot currently reap the promise of any first-mover advantage because Norwich cannot market its rifaximin 550 mg tablets for the treatment of IBS-D without FDA's final approval of Norwich's ANDA No. 214369. Accordingly, each day that Norwich is prevented from selling its ANDA Product for the treatment of IBS-D deprives Norwich of the opportunity to create unique and lasting customer relationships, to enhance its reputation, and to gain significant and enduring generic market share in the IBS-D market.

11. The loss of any first-mover advantage for Norwich's ANDA Product for the treatment of IBS-D will seriously injure Norwich in ways that are not easily measurable. Norwich's expected position as the first generic manufacturer to launch its rifaximin tablets of the treatment of IBS-D would provide it with the opportunity to gain significant customers that may not otherwise be available to it. The magnitude of Norwich's loss will vary widely depending on the particular customer, and would be difficult to accurately quantify.

12. Norwich anticipates that, were it to enter the market, it would be better positioned to be able to maintain a large portion of its generic market share in the IBS-D market even after the entry of other generic competitors, due to the long-term nature of pharmaceutical purchasing agreements and early access to better customers.

13. I have been informed that the settlement agreements entered into by the three other ANDA applicants may contain certain acceleration provisions providing for a launch before January 2028. If Norwich incurs unnecessary delay in opening the generic rifaximin

market for the treatment of IBS-D until another competing generic product is also available, Norwich's generic 550 mg rifaximin tablets will face a substantially diminished generic market share than it would were it immediately granted final approval. Further, it will be impossible for Norwich to make up for this loss of potential exclusivity because each rifaximin prescription for IBS-D is filled only once and Norwich cannot "make up" for a lost sale by filling a later prescription.

14. Generally, the price of a generic drug typically drops dramatically and permanently with each entry of a second, third, and fourth generic competitor. Thus, Norwich would realize a lower margin on each sale of its generic rifaximin 550 mg tablets for the treatment of IBS-D when other generic rifaximin products become available. If FDA delays granting final approval to Norwich until multiple generics are prepared to launch, Norwich will lose much of the profit it would have made had Norwich been rightfully granted final approval.

15. By being the first manufacturer to launch a generic rifaximin product for the treatment of IBS-D, Norwich would reinforce and grow its reputation as a top-tier generic manufacturer with existing and potential customers, and would generate substantial goodwill. The generic pharmaceutical business is highly competitive in the United States, since relatively few wholesalers make most of the generic drug purchases from manufacturers. These customers aggressively pursue relationships with generic first-movers because they prize the ability to offer newly-available generics to their own customers. Being the first generic manufacturer to market a generic rifaximin product for the treatment of IBS-D will give Norwich a unique and critical opportunity to strengthen relationships with these key customers.

16. Norwich has also made significant investments in Norwich's 550 mg rifaximin tablets for the treatment of IBS-D. Norwich not only conducted the research and development

and undertook the regulatory burden of seeking approval for its generic rifaximin tablets for IBS-D, it also took on the substantial risks and costs of patent litigation. Norwich did all of this with the expectation that FDA would award Norwich's ANDA Product final approval. Without immediate action by this Court, Norwich will be unable to recoup the investments it has made in its rifaximin product for the treatment of IBS-D.

17. For at least the foregoing reasons, Norwich will sustain serious and irrecoverable losses if FDA does not grant immediate final approval to Norwich's generic 550 mg tablets for the treatment of IBS-D.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 5th day of June, 2023.

_____
Tunie Zaku