IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORWICH PHARMACEUTICALS, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services,<br><br>ROBERT M. CALIFF, M.D., in his official capacity as Commissioner of Food and Drugs,<br><br>and<br><br>UNITED STATES FOOD AND DRUG ADMINISTRATION,<br><br>*Defendants*. | Civil Action No. 23-1611 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PUTATIVE INTERVENOR SALIX PHARMACEUTICALS, INC.'S MOTION TO INTERVENE**

I.      INTRODUCTION

Salix Pharmaceuticals, Inc. ("Salix") is the holder of a new drug application ("NDA") for 550 mg rifaximin tables, which it markets and sells under the brand name Xifaxan®. Salix seeks to intervene as a defendant in this action and, if the motion is granted, will comply with the Court's scheduling orders.

Plaintiff Norwich Pharmaceuticals Inc. ("Norwich") asks the Court to (i) overturn defendant U.S. Food and Drug Administration's ("FDA") tentative approval of a generic copy of Salix's Xifaxan® product and (ii) order FDA to grant final approval.[1] Ex. A, D.I. 1; *see* D.I. 4-1. FDA granted tentative rather than final approval based on a final judgment—and a subsequent decision affirming that judgment—by the U.S. District Court for the District of Delaware ("Delaware District Court") in the Hatch-Waxman litigation between Norwich and Salix. The Delaware District Court's judgment is currently on appeal to the Federal Circuit.

If Norwich prevails in this action against the Federal Defendants, it will immediately launch and sell its generic Xifaxan® six years before the date ordered by the Delaware District Court—causing Salix irreparable harm, including significant loss of market share.

Given this significant interest and its satisfaction of the other elements required under Federal Rule of Civil Procedure 24(a), Salix has a right to intervene. Alternatively, Salix meets the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b).[2]

---

[1] Norwich has sued the U.S. Food and Drug Administration, the Secretary of Health and Human Services in his official capacity, and the Commissioner of Food and Drugs in his official capacity. For simplicity, Salix will refer to these defendants collectively as the "Federal Defendants."

[2] Pursuant to Local Civil Rule 7(m), Salix has contacted counsel for Norwich and the Federal Defendants regarding this motion. The Federal Defendants state that they consent to Salix's motion, and Norwich has not confirmed whether it opposes this motion.

## II.  FACTUAL BACKGROUND

In March 2020, Salix, Salix Pharmaceuticals, Ltd., Bausch Health Ireland Ltd., and Alfasigma S.p.A. filed a Hatch-Waxman case after receiving notice of Norwich's paragraph IV certifications submitted in ANDA No. 214369.  *Salix v. Norwich*, No. 20-cv-430, D.I. 1, 59 (D. Del.).  Salix initially asserted that this ANDA infringed 26 patents (the "Asserted Patents").

Norwich's Abbreviated New Drug Application ("ANDA") sought FDA approval to make a generic copy of Salix's Xifaxan® (rifaximin) 550 mg tablet (the "ANDA Product").  Norwich's initial prescribing label stated that the ANDA Product should be used for (1) the treatment of irritable bowel syndrome with diarrhea ("IBS-D") in adults and (2) the reduction in risk of overt hepatic encephalopathy ("HE") recurrence in adults.  As this case proceeded over the next-two-and-a-half years, the parties relied on Norwich's label to conduct discovery, prepare pre- and post-trial stipulations, and present their trial evidence.

In compliance with the Delaware District Court's scheduling order, Salix eventually limited the number of asserted claims (the "Asserted Claims") (*Salix*, D.I. 23 ¶ 3(g)(iv)), a decision largely based on the label proposed in Norwich's ANDA.  And during trial, Salix presented evidence of infringement only for the Asserted Claims.  The parties spent nearly half of the trial litigating infringement and validity of the HE patent claims, with five experts testifying on these issues.

After trial, the parties jointly asked the Court to enter a final judgment of non-infringement regarding the patent claims that were not tried (the "Stipulation").  *Salix*, D.I. 179.  The Stipulation defined "Norwich's current ANDA No. 214369" and "current ANDA Product" to include "any amendments or supplements to the ANDA that **do not change the indications of use**, the polymorph forms, or the formulation."  *Salix*, D.I. 179 at 2 n.1 (emphasis added).  The Delaware District Court entered the Stipulation in May 2022.  *Salix*, D.I. 180.

On July 28, 2022, the Delaware District Court directed the parties to file a jointly proposed final judgment based on the court's conclusion that all claims asserted at trial were infringed and the Asserted HE Patent claims were valid. *Salix*, D.I. 189. Instead, each party filed a separate judgment alongside a joint letter (the "Joint Letter") that outlined each party's position.

In the Joint Letter, Salix explained that Norwich's proposed judgment presented a dispute whether "the [Delaware District Court] should determine now if Norwich's ANDA would induce infringement in the future based on hypothetical changes Norwich may make to its ANDA." D.I. 196 at 1. Norwich asked the Delaware District Court to include in its final judgment "the FDA approval date for . . . 'Norwich's ANDA with proposed labeling" (i.e., the Amended ANDA), which would account for Norwich's anticipated carve-out of the HE indication. D.I. 196 at 3 ("This proposal would leave Norwich the option of seeking to amend its ANDA, which has not been tentatively approved, to carve out the HE indication pursuant to 21 U.S.C. § 355(j)(2)(A)(viii)."). However, Salix explained that Norwich's proposed judgment would improperly "allow the FDA to approve its ANDA if Norwich were to amend it to carve out the HE indication (i.e., a label that is different from the one litigated by the parties) without any further action by this Court." D.I. 196 at 1.

On August 10, 2022, the Delaware District Court agreed with Salix, entering a judgment that ordered "the effective date of any final approval by the [FDA] of Norwich's ANDA No. 214369 is to be a date not earlier than the date of the expiration of the last to expire" Asserted HE Patents, i.e., October 2, 2029. *Salix*, D.I. 193 ¶ 5.

Weeks later, on September 7, 2022, Norwich filed a motion to amend the judgment under Fed. R. Civ. P. 60(b), again asking the Delaware District Court to limit its judgment to a label containing the HE indication. *Salix*, D.I. 205, 206. Norwich explained that it had submitted a

3

proposed amended label ("New Label") for its ANDA Product ("Amended ANDA") to FDA just the day before.

In an opinion dated May 17, 2023, the Delaware District Court reaffirmed its final judgment and denied Norwich's Rule 60(b) motion. *Salix*, D.I. 222. The court explained that there were no "changed circumstances" warranting modification of the judgment: "The only changed circumstance is that [Norwich] decided to amend its ANDA, which it filed on September 6, 2022 (D.I. 206 at 2), nearly one month after the final judgment. The changed circumstance is simply a voluntary decision of the trial loser to change course, which is neither unanticipated nor unforeseeable." *Id.* at 2–3. According to the court, Norwich "fully litigated the merits of its non-infringement and invalidity case, lost, and now seeks a way around the final judgment through Rule 60(b)." *Id.* at 4. The court explained that it "seems wrong" for Norwich to "litigate a case through trial and final judgment based on a particular ANDA, and then, after final judgment, change the ANDA to what it wishes it had started with, and win in a summary proceeding." *Id.* at 5. Two days later, Norwich filed a notice of appeal to the Court of Appeals for the Federal Circuit. *Salix*, D.I. 223.

On June 2, 2023, FDA granted only a tentative approval of Norwich's Amended ANDA, stating that "final approval cannot be granted until October 2, 2029 as specified in the [Delaware District Court] order." D.I. 1 ¶ 60.

Unhappy with the Delaware District Court's final judgment and the resulting FDA tentative approval, Norwich filed this action and moved for a preliminary injunction. *See* D.I. 1, 4. Specifically, Norwich asserts that it was somehow "arbitrary, capricious and contrary to law" for FDA to comply with the Delaware District Court's judgment and order regarding the appropriate time for final approval of Norwich's pending ANDA. D.I. 1 at 1. Norwich's novel APA claims

4

are an inappropriate collateral attack on the Delaware District Court's judgment and an end-run around the traditional process for appellate review of that judgment, which remains open to Norwich.  If successful in this action, Norwich's entry into the market would negate the Delaware District Court's final judgment, flout the Hatch Waxman Act's remedial provisions, and irreparably harm Salix.  Accordingly, Salix moves to intervene.

## III.   ARGUMENT

### A.   Salix Is Entitled to Intervene as of Right.

Federal Rule of Civil Procedure 24 describes the requirements for intervention as of right and permissive intervention:

> On timely motion, the court must permit anyone to intervene who: . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

A party is entitled to intervene as of right when: (1) the motion is timely; (2) the applicant claims an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest is not adequately represented by existing parties. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003); *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing factors as "timeliness, interest, impairment of interest, and adequacy of representation").  In addition, the movant must have standing. *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015).

Salix readily satisfies these requirements for intervention as of right—an issue on which "the D.C. Circuit has taken a liberal approach." *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d

10, 18 (D.D.C. 2000).

        **1.**     **Salix's Motion Is Timely.**

Salix has timely moved to intervene. On June 5, 2023, Norwich filed its complaint, D.I. 1, and motion for preliminary injunction, D.I. 4. Salix now moves on June 12, 2023, before any responsive submissions have been made and before this Court has issued any orders. *See Appleton v. FDA*, 310 F. Supp. 2d 194, 197 (D.D.C. 2004) (motion timely when filed within two months of notification of suit); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) ("As to timeliness, Upjohn sought to intervene a few weeks after Mova initiated its action, and before the district court ruled on the preliminary injunction; this cannot be regarded as untimely.").

Intervention will not delay these proceedings or prejudice the parties. The Federal Defendants have yet to answer the complaint or respond to the preliminary injunction motion. If Salix is permitted to intervene, it will seek to coordinate the timing of any submissions at the same time or shortly after the Federal Defendants. Thus, Salix's motion is timely.

        **2.**     **Salix Has a Strong Interest in the Subject of this Action.**

Rule 24(a)'s second requirement for intervention of as right is that the putative intervenor have "an interest relating to the property or transaction which is the subject of the action." *Fund for Animals*, 322 F.3d at 735 (quoting Fed. R. Civ. P. 24(a)). "The test operates in large part as a 'practical guide,' with the aim of disposing of disputes with as many concerned parties as may be compatible with efficiency and due process." *Wildearth Guardians v. Salazar*, 272 F.R.D. 4, 12–13 (D.D.C. 2010) (quoting *United States v. Morten*, 730 F. Supp. 2d 11, 16 (D.D.C. 2010)). An intervenor "can be said to have a substantial and direct interest in the subject of th[e] litigation" where, as here, the plaintiff's success would mean that a governmental agency's "regulatory decisions, which are obviously in the intervenors' interests, will be set aside." *Nat. Res. Def. Council v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983).

Salix has a direct interest here at least because Norwich attacks the FDA's decision to follow the Delaware District Court's final judgment, which directly favors Salix.  *See Salix*, D.I. 222 at 3 (describing Norwich as "the trial loser").  As Norwich alleges in its complaint, "FDA based its decision to not grant final approval to Norwich's Amended ANDA on the order from the Delaware District Court." D.I. 1 ¶ 7.  And Norwich asks this Court to enter "judgment declaring that the FDA grant of tentative rather than final approval of Norwich's Amended ANDA is arbitrary, capricious, and contrary to law" and enter "an injunction directing FDA to grant final approval to Norwich's Amended ANDA immediately." D.I. 1 at 24 (Prayer for Relief ¶¶ A–B).  This relief would nullify the Delaware District Court's final judgment and FDA's decision to follow that judgment—an outcome that would materially impact Salix's interests.

This case will determine whether Norwich can immediately enter the market to compete with Salix's patent-protected Xifaxan® product.  That is exactly the issue just decided by the Delaware District Court in the Hatch-Waxman litigation between Salix and Norwich.  As a result, Salix has a concrete monetary interest in ensuring that FDA's decision to comply with the Delaware District Court's judgment is upheld.  As the patent holder, Salix stands to gain or lose substantially by the direct legal operation of the relief sought by Norwich's complaint against the Federal Defendants.  *See, e.g.*, *Apotex, Inc. v. FDA*, 508 F. Supp. 2d 78, 80 n.2 (D.D.C 2007) (granting motion to intervene where plaintiff's success in overturning the FDA's decision as to approval status would conflict with period of exclusivity as granted by the New York court); *Honeywell Int'l Inc. v. United States*, 71 Fed. Cl. 759, 764 (2006) (concluding that business and economic impairments constitute a direct interest for purposes of intervention); *Mova*, 140 F.3d at 1074 (finding that the intervenor had the requisite stake because "a firm has constitutional standing to challenge a competitor's entry into its market").

7

### 3. Disposition Would Impede Salix's Ability to Protect its Interests.

Norwich's action threatens Salix's ability to protect its interests. Should Norwich obtain its requested relief, FDA will immediately grant final approval for Norwich's generic, allowing market entry before the date ordered by the Delaware District Court. As a direct result, Norwich would reap the benefit of Salix's patent-protected product prematurely, and Salix would irreparably lose market share. *Mova*, 140 F.3d at 1076 ("Upjohn's interests were also at risk; Upjohn was in danger of losing market share to Mylan if the district court denied the injunction and allowed Mylan's product on the market."). This type of significant financial loss satisfies the impairment prong. *See, e.g., id.*; *Fund for Animals*, 322 F.3d at 735 (holding that temporary revenue loss satisfies this prong).

### 4. Salix's Interests Are not Adequately Represented by Existing Parties.

The inadequacy of representation requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). Accordingly, the showing required for inadequacy of representation is "not onerous." *Fund for Animals*, 322 F.3d at 735 (quotation omitted). Indeed, "a movant 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation.'" *Crossroads*, 788 F.3d at 321 (citation omitted).

Norwich's interests are squarely adverse to Salix's. Norwich hopes to circumvent (i) the judgment by the Delaware District Court that final approval of the Amended ANDA "cannot be granted until October 2, 2029 as specified in the [Delaware District Court] order," D.I. 1 ¶ 60; and (ii) the Delaware District Court's decision denying Norwich's motion to modify the order on the effective date of final approval based on Norwich's Amended ANDA, D.I. 1 ¶¶ 54–55. Should Norwich prevail, Norwich would be allowed to prematurely compete with Salix in the market in

violation of Salix's patent rights and the Delaware District Court's decisions. Thus, Norwich in no way represents Salix's interests, let alone adequately.

FDA's interests also differ from those that Salix seeks to protect. As the D.C. Circuit has explained, "governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. Salix's interests are no exception. Whereas Salix would suffer egregious economic harms in the market if Norwich prevailed in this action, FDA would not. In the end, an agency's obligation "is to represent the interests of the American people," not the more particular commercial interests of Salix. *Id.* at 736. As a result, the Federal Defendants cannot adequately represent Salix's interests in this action.

### 5. Salix Has Article III Standing.

A party seeking to intervene as a defendant seeking to uphold government action must have standing. *Id.* at 732–33 (intervening defendant showed injury-in-fact, causation, and redressability when the challenged government regulation threatened revenue and funding, that injury was "fairly traceable to the regulatory action," and a decision favorable to the government would prevent that loss from occurring). To establish standing, a party must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

For injury in fact, a party "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). And the D.C. Circuit has "generally found a sufficient injury in fact where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads*, 788 F.3d at 317; *see, e.g.*, *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (finding companies, benefiting from an EPA rule regulating their products, had

9

standing to intervene where petitioner challenged that rule).

If this Court were to grant the relief Norwich seeks, then Salix's commercial interests will be irreparably harmed. *Fund for Animals*, 322 F.3d at 733 (finding standing where there was a "threatened loss of tourist dollars" if the agency was forced to comply with petitioner's requested relief). Because Norwich's requested relief threatens to accelerate Norwich's entry into the market, it poses significant commercial harm to Salix,[3] thereby affording Article III standing.

The causation and redressability elements are satisfied as well. On the one hand, Salix's injury would occur if Norwich prevails in this lawsuit against the Federal Defendants. On the other, Salix's injury will be avoided if the Court rules in the Federal Defendants' favor. *See id.* (holding that the causation element was satisfied because the injury at issue was "fairly traceable to the regulatory action . . . that the [opposing party sought] in the underlying lawsuit," and the redressability element was satisfied because "it [was] likely that a decision favorable to the [putative intervenor] would prevent that loss from occurring").

Accordingly, Salix has standing to intervene as of right. *See Mova*, 140 F.3d at 1074 ("[N]umerous cases have found that a firm has constitutional standing to challenge a competitor's entry into its market.").

### B. Alternatively, Permissive Intervention Is Appropriate.

Salix also qualifies for permissive intervention. In the D.C. Circuit, "to litigate a claim on the merits under Rule 24(b)(2), the putative intervenor must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a

---

[3] The immediate and significant market share erosion experienced by the branded drug after generic entry is well documented. *See, e.g.*, HG Grabowski, et al., *Continuing Trends in U.S. Brand-Name and Generic Drug Competition*, 24 J. MED. ECON. 908, 908–17 (2021) (from 2017-2019, the brand's market share averaged 45% of standard units one month after generic entry, with greater declines for drugs with higher yearly sales).

10

question of law or fact in common with the main action." *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998). A court also considers "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

This Court has subject matter jurisdiction to hear a case arising under several federal statutes pursuant to 28 U.S.C. § 1331. *See* D.I. 1 ¶ 15. In addition, Salix has demonstrated that it has a claim or defense that shares common questions of fact and law with the suit filed by Norwich against the Federal Defendants—namely, whether the FDA must finally approve Norwich's Amended ANDA. Moreover, Salix has promptly moved to intervene, and it intends to follow any scheduling order entered by the Court.

Beyond that, permitting Salix's intervention would enhance "litigative economy, reduce[] risks of inconsistency, and increase[] information (which might reduce the risk of error)," without "concomitant issue proliferation." *Mass. Sch. of L. at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997). Salix's intervention "would also promote judicial and administrative convenience by avoiding a multiplicity of proceedings and by bringing to the aid of the tribunal the parties who 'may know the most facts and can best explain their implications.'" *Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765, 770 (D.C. Cir. 1955).

Thus, if Salix is not entitled to intervene as of right, permissive intervention is appropriate.[4]

---

[4] Should Article III standing be required for permissive intervention under Rule 24(b), Salix satisfies that requirement for the reasons discussed above in connection with intervention as of right under Rule 24(a). *See, e.g.*, *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 395 F. Supp. 3d 1, 10 (D.D.C. 2019) ("It remains an open question in this Circuit whether Article III standing is required for permissive intervention." (alterations omitted) (quoting *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013))).

## IV. CONCLUSION

For these reasons, Salix requests that the Court grant Salix's motion for intervention as of right under Rule 24(a) or, alternatively, permissive intervention under Rule 24(b).

Dated: June 12, 2023                            Respectfully submitted,

/s/ David B. Salmons
David B. Salmons
Douglas A. Hastings
Amanda L. Salz
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
david.salmons@morganlewis.com
douglas.hastings@morganlewis.com
amanda.salz@morganlewis.com

Michael J. Abernathy (*pro hac vice* forthcoming)
Wan-Shon Lo (*pro hac vice* forthcoming)
Karon N. Fowler (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T: (312) 324-1000
mike.abernathy@morganlewis.com
shon.lo@morganlewis.com
karon.fowler@morganlewis.com

William R. Peterson (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002-5006
T: (713) 890-5000
william.peterson@morganlewis.com

*Counsel for Putative Intervenor*