**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

NORWICH PHARMACEUTICALS, INC.

        *Plaintiff*,

   v.

XAVIER BECERRA, in his official capacity as
Secretary of Health and Human Services,

ROBERT M. CALIFF, M.D., in his official capacity as
Commissioner of Food and Drugs,

and

UNITED STATES FOOD AND DRUG
ADMINISTRATION,

        *Defendants*.

Civil Action No. 23-1611

---

## INTERVENOR SALIX PHARMACEUTICALS, INC.'S RESPONSE TO NORWICH PHARMACEUTICALS, INC.'S MOTION FOR PRELIMINARY INJUNCTION AND CROSS-MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

Intervenor/Defendant Salix Pharmaceuticals, Inc. ("Salix") submits this combined opposition to Plaintiff Norwich Pharmaceuticals Inc.'s ("Norwich's") motion for preliminary injunction and cross-motion to dismiss or, in the alternative, for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56(a).

Norwich asks the Court to (i) overturn defendant U.S. Food and Drug Administration's (the "FDA") tentative approval of a generic copy of Salix's Xifaxan® product and (ii) order FDA to grant final approval.[1]  D.I. 4-1; *see* D.I. 1-1.  The FDA granted tentative rather than final approval based on a final judgment—and a subsequent decision affirming that judgment—by the U.S. District Court for the District of Delaware ("Delaware District Court") in Hatch-Waxman litigation between Norwich and Salix.  The Delaware District Court's judgment is currently on appeal to the Federal Circuit.

After a full trial, the Delaware District Court found that Norwich's Abbreviated New Drug Application ("ANDA") infringed Salix's patents for the treatment of hepatic encephalopathy (the "HE Patents") and ordered that the FDA not grant final approval of Norwich's ANDA until the expiration date of the HE Patents.  The Delaware District Court also denied Norwich's Rule 60(b) motion to amend the judgment after Norwich amended its ANDA by carving out the HE indication pursuant to 21 U.S.C. § 355(j)(2)(A)(viii).  In that motion, Norwich conceded that the Court's judgment constituted an "***absolute prohibition on FDA's approval of Norwich's Amended ANDA before October 2, 2029***."  *Salix v. Norwich*, No. 20-cv-430, D.I. 211 at 6 (D. Del.) (emphasis added).  In reaffirming its judgment, the Delaware District Court considered and rejected the same

---

[1] Norwich has sued the FDA, the Secretary of Health and Human Services in his official capacity, and the Commissioner of Food and Drugs in his official capacity.  For simplicity, Salix will refer to these defendants collectively as the "Federal Defendants."

arguments Norwich presses in this action concerning its purported right to final approval of its Amended ANDA.

Norwich's APA claim and request for preliminary injunction are an inappropriate attempt to evade the normal process for appellate review of the Delaware District Court order and should be rejected.  Whatever complaints Norwich may have about how the Delaware District Court structured its final judgment should be presented to the Federal Circuit, not to this Court under the guise of an APA challenge to the FDA's decision to comply with that order.  The FDA was required to comply with the Delaware District Court's order, which Norwich agreed was an "absolute prohibition" on the FDA's final approval of Norwich's ANDA until the expiration of Salix's HE Patents.  Numerous courts have recognized that the FDA is bound by such Hatch-Waxman Act judgments.

At a minimum, the FDA's decision to comply with the Delaware District Court's clear directive is in no way arbitrary, capricious, or contrary to law.  Norwich's contention that FDA regulations required it to disregard the Delaware District Court's order and grant immediate final approval of its Amended ANDA is based on clear misreadings of the regulations.  In any event, the regulations do not and could not provide any basis for disregarding an unambiguous judicial order.

Moreover, Norwich is not entitled to the relief it seeks—immediate final approval of its Amended ANDA.  In its letter granting only tentative approval, the FDA noted that "[t]his letter does not include information related to the 180-day exclusivity provisions under section 505(j)(5)(B)(iv) of the FD&C Act."  D.I. 1-1 at 1.  Determination of exclusivity priority is necessary before Norwich could be entitled to immediate final approval.  21 U.S.C. § 355(j)(5)(B)(iv); 21 C.F.R. § 314.107(c)(1).  That is especially true here because Norwich was

not the first to file an ANDA.  Rather, as Norwich has acknowledged before the Federal Circuit, Teva, Sun, and Sandoz previously filed their own ANDAs seeking approval to market generic rifaximin.  Ex. A, Motion to Expedite Proceedings 6–7, No. 22-02153 & No. 23-01952 (Fed Cir.) ("Motion to Expedite").  As the first filer, Teva—not Norwich—is entitled to a 180-day period of generic drug exclusivity once regulatory barriers to enter the market are removed—meaning that under current circumstances, Norwich could not receive final approval and enter the market until approximately six months after Teva.  *See* 21 U.S.C. § 355(j)(5)(B)(iv), (j)(5)(D).  At a minimum, any order requiring immediate final approval of Norwich's ANDA would be inappropriate until the FDA has addressed the 180-day exclusivity period.

Lastly, to the extent the Court still considers Norwich's request for a preliminary injunction, it should deny it.  All the preliminary-injunction factors weigh heavily against injunctive relief, as does the fact that the injunction Norwich seeks would not preserve the status quo but dramatically alter it.  If Norwich desires that type of change to the status quo, the only proper pathway is the normal appellate review available in the Federal Circuit.

For these reasons and those described below, the Court should deny Norwich's request for preliminary injunction and grant either dismissal or summary judgment in favor of Salix and the Federal Defendants.

## II.    STATUTORY BACKGROUND

The Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act allow a generic "drug manufacturer to submit an ANDA to the FDA to obtain approval of a generic version of a previously approved drug."  *Mylan Lab'ys, Inc. v. Thompson*, 389 F.3d 1272, 1274–75 (D.C. Cir. 2014) (citing 21 U.S.C. § 355(j)).

The FDA's ability to approve an ANDA is always constrained by the statute and, like all administrative agency decisions, may also be constrained by a court order.  *See, e.g.*, *GTE Sylvania,*

*Inc. v. Consumers Union of the U.S., Inc.*, 445 U.S. 375, 386 (1980) (holding when a court order intended to bind an agency, "[t]here simply [was] no discretion for the agency to exercise"); *Apotex Inc. v. FDA*, 508 F. Supp. 2d 78, 84–85 (D.D.C. 2007) (holding "the FDA had no authority to issue final approval" of an ANDA after a district court had entered a § 271(e)(4)(A) order).  Under the Hatch-Waxman Act, the FDA must reject any ANDA that does not "contain one of four certifications regarding each patent that covers the application's drug":

> (I) that such patent information has not been filed,
> (II) that such patent has expired,
> (III) of the date on which such patent will expire, or
> (IV) that such patent is invalid or will not be infringed by the manufacture, use, or
> sale of the new drug for which the application is submitted.

*In re Omeprazole Patent Litig.*, 536 F.3d 1361, 1367 (Fed. Cir. 2008) (quoting 21 U.S.C. § 355(j)(2)(A)(vii)).

Congress created "a highly artificial act of infringement that consists of submitting an ANDA" with a paragraph IV certification.  *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990).  And the Act authorizes the patent holder to counter the application by litigating the infringement or invalidity in district court.  *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1329 (Fed. Cir. 2015).  If "the district court determines that the patent has been infringed, the FDA may not approve the ANDA until the effective date specified by the district court under section 271(e)(4)(A)."  *In re Omeprazole Patent Litig.*, 536 F.3d at 1367 (citing 21 U.S.C. § 355(j)(5)(B)(iii)).  And if, by the time the court finds the generic manufacturer liable for infringement, "the FDA has already approved the ANDA, the district court's order would alter the effective date of the application, thereby converting a final approval into a tentative approval."  *Id.* at 1367–68 (citing *Mylan Lab'ys*, 389 F.3d at 1281–82).  Thus, Congress plainly envisioned that

the FDA would be bound by court orders in Hatch-Waxman Act litigation, even though the FDA is not a party to the litigation.

## III.    FACTUAL BACKGROUND

Since March 2020, Norwich and Salix have been litigating the merits of a patent-infringement dispute under the Hatch-Waxman Act.  The case started in the United States District Court for the District of Delaware.  *Salix*, D.I. 59.  And this litigation has led to two appeals—one filed by Salix and one filed by Norwich—which are now consolidated before the United States Court of Appeals for the Federal Circuit.  No. 22-02153 & No. 23-01952 (Fed Cir.).

The dispute began when Salix, Salix Pharmaceuticals, Ltd., Bausch Health Ireland Ltd., and Alfasigma S.p.A. received notice of the paragraph IV certifications Norwich submitted in its Abbreviated New Drug Application—ANDA No. 214369—which sought FDA approval to sell a generic copy of Salix's Xifaxan® (rifaximin) 550 mg tablet (the "ANDA Product").  *Salix*, D.I. 59 ¶¶ 44–52.  Norwich was not the first to file such an ANDA.  Rather, as Norwich has acknowledged before the Federal Circuit, Teva, Sun, and Sandoz previously filed their own ANDAs seeking approval to market generic rifaximin.  Ex. A, Motion to Expedite 6–7.  As the first filer, Teva is entitled to a 180-day period of generic drug exclusivity once paragraph IV-related barriers to enter the market are removed—meaning that, under current circumstances, Norwich cannot receive final approval and enter the market until approximately six months after Teva.  *See* 21 U.S.C. § 355(j)(5)(B)(iv), (j)(5)(D).

The prescribing label for Norwich's ANDA—which stated that the ANDA Product should be used for (1) the treatment of irritable bowel syndrome with diarrhea ("IBS-D") in adults and (2) the reduction in risk of overt hepatic encephalopathy ("HE") recurrence in adults—infringed numerous patents protecting Salix's Xifaxan® products.  Salix sued Norwich, initially invoking 26

of its patents (the "Asserted Patents").  But eventually, Salix limited the number of asserted claims (the "Asserted Claims"), in compliance with the Delaware District Court's scheduling order.  *Salix*, D.I. 23 ¶ 3(g)(iv).  That limitation—along with decisions regarding discovery, pre- and post-trial stipulations, and the presentation of evidence at trial—was largely based on the label proposed in Norwich's original ANDA.  After two-and-a-half years of whittling down the issues, the parties spent nearly half of the trial litigating Norwich's infringement and the validity of the Asserted HE Patent claims, with five experts testifying on these issues.  At no point during the litigation did Norwich ever suggest amending its ANDA.

After trial, the parties filed a joint stipulation (the "Stipulation"), asking the Court to enter a final judgment of non-infringement regarding the patent claims that were not tried.  *Salix*, D.I. 179.  The Stipulation defined "Norwich's current ANDA No. 214369" and "current ANDA Product" to include "amendments or supplements to the ANDA that ***do not change the indications of use***, the polymorph forms, or the formulation."  *Id.* at 2 n.1 (emphasis added).  The Delaware District Court entered the Stipulation in May 2022.  *Salix*, D.I. 180.

On July 28, 2022, the Delaware District Court directed the parties to file a jointly proposed final judgment based on the court's conclusion that all claims asserted at trial were infringed and the Asserted HE Patent claims were valid.  *Salix*, D.I. 189.  The parties could not agree on a proposed final judgment, so each party filed a separate judgment alongside a joint letter (the "Joint Letter") that outlined its position.  In the Joint Letter, Salix explained that the final judgment should order the FDA approval date for "'Norwich's ANDA,' period.'"  *Salix*, D.I. 196 at 1.  Norwich, in contrast, asked the Delaware District Court to order the FDA approval date only for "Norwich's ANDA ***with proposed labeling***."  *Id.* at 3 (emphasis added); *see also id.* ("This proposal would leave Norwich the option of seeking to amend its ANDA, which has not been tentatively approved,

to carve out the HE indication pursuant to 21 U.S.C. § 355(j)(2)(A)(viii).").

On August 10, 2022, the Delaware District Court rejected Norwich's invitation to depart from the Hatch-Waxman Act.  Instead, consistent with Salix's request, the Delaware District Court entered a judgment ordering that "the effective date of any final approval by the [FDA] of Norwich's ANDA No. 214369 is to be a date not earlier than the date of the expiration of the last to expire" Asserted HE Patents—i.e., October 2, 2029.  *Salix*, D.I. 193 ¶ 5.

Weeks later, on September 7, 2022, Norwich filed a motion to amend the judgment under Federal Rule of Civil Procedure 60(b), asking the Delaware District Court to revise its judgment to address only a label including the HE indication and to "***remove the absolute prohibition on FDA's approval of Norwich's Amended ANDA before October 2, 2029***."  *Salix*, D.I. 211 at 6 (emphasis added).  In support of its request, Norwich explained that, just the day before, it had submitted a proposed amended label (the "New Label") for its ANDA Product (the "Amended ANDA") that excluded the HE indication—despite its acknowledgment that the FDA was "absolute[ly] prohibit[ed]" from approving that ANDA.

On May 17, 2023, the Delaware District Court denied Norwich's Rule 60(b) motion and reaffirmed its final judgment.  *Salix*, D.I. 222.  The court explained that there were no "changed circumstances" warranting modification of the judgment: "The only changed circumstance is that [Norwich] decided to amend its ANDA, which it filed on September 6, 2022 (D.I. 206 at 2), nearly one month after the final judgment.  The changed circumstance is simply a voluntary decision of the trial loser to change course, which is neither unanticipated nor unforeseeable."  *Id.* at 3.  According to the Delaware District Court, Norwich "fully litigated the merits of its non-infringement and invalidity case, lost, and now seeks a way around the final judgment through Rule 60(b)."  *Id.* at 4.  The court explained that it "seems wrong" for Norwich to "litigate a case

through trial and final judgment based on a particular ANDA, and then, after final judgment, change the ANDA to what it wishes it had started with, and win in a summary proceeding." *Id.* at 5. Two days later, Norwich filed a notice of appeal to the Court of Appeals for the Federal Circuit. *Salix*, D.I. 223; No. 23-01952 (Fed Cir.).

On June 2, 2023, the FDA granted tentative approval of Norwich's Amended ANDA, stating that "final approval cannot be granted until October 2, 2029, as specified in the [Delaware District Court] order." D.I. 1 ¶ 60 (quoting Ex. 1 at 3). Displeased that the FDA followed the concededly clear directive in the Delaware District Court's final judgment, Norwich sued the FDA and moved for a preliminary injunction in this Court. *See id.*; D.I. 4. To protect its intellectual-property rights, Salix moved to intervene as a defendant. On June 18, 2023, the Court granted Salix's motion. The Court also consolidated Norwich's motion for a preliminary injunction with a full consideration of the merits, clarifying that the motion will be treated as one for summary judgment.

## IV.   ARGUMENT

### A.   The FDA's Decision To Comply With The Delaware District Court's Order Directing The Timing For Final Approval Of Norwich's ANDA Was Not Arbitrary, Capricious, Or Contrary To Law.

#### 1.   The FDA was required by the Delaware District Court's order to grant no more than conditional approval.

The Delaware District Court's order is clear and unambiguous: it "ordered that the effective date of ***any final approval*** by the Food and Drug Administration ('FDA') of Norwich's ANDA No. 214369 is to be a date not earlier than the date of expiration of the last to expire of the '573, '195, and '397 Patents (currently October 2, 2029)." *Salix*, D.I. 193 at ¶ 5 (emphasis added). Norwich conceded to the Delaware District Court that this order was an "***absolute prohibition*** on FDA's approval of Norwich's Amended ANDA before October 2, 2029." *Salix*, D.I. 211 at 6

(emphasis added).  In its tentative approval letter, the FDA quoted from the Delaware District Court order, cited that court's Rule 60(b) ruling, and explained to Norwich that final approval of its ANDA "***cannot*** be granted until October 2, 2029 as specified in the court order."  D.I. 1-1 at 3 (emphasis added).  Nothing about the FDA's compliance is arbitrary, capricious, or contrary to law.  Indeed, the FDA was required to comply with the order.

Norwich's motion disregards the plain language, mandatory nature, and binding effect of the Delaware District Court's order.  Upon finding infringement of a valid patent in Hatch-Waxman Act litigation, 35 U.S.C. § 271(e)(4)(A) requires that the district court "shall order the effective date of any approval of the drug or veterinary biological product involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed."  Congress intended the FDA to be bound by federal court decisions under the Hatch-Waxman Act, and courts have consistently held that the FDA must comply with district court orders entered under § 271(e)(4)(A).

In *In re Omeprazole Patent Litigation*, for example, the Federal Circuit held that "[i]f the FDA has not approved the ANDA before the district court determines that the patent has been infringed, the FDA may not approve the ANDA until the effective date specified by the district court under section 271(e)(4)(A)."  536 F.3d at 1367.  Similarly, in *Vanda Pharmaceuticals Inc. v. West-Ward Pharmaceuticals International Ltd.*, the Federal Circuit ruled that "the FDA is entitled not to set an approval date prior to the expiration of a patent that has been found to be infringed under § 271(e)(4)(A) and not invalid in a Hatch-Waxman case."  887 F.3d 1117, 1139 (Fed. Cir. 2018).[2]

---

[2] Additional Federal Circuit decisions likewise confirm that § 271(e)(4)(A) orders bind the FDA. *See AstraZeneca AB*, 782 F.3d at 1341 ("If the FDA has not approved the ANDA at the time of

Consistent with this authority, the D.C. Circuit and this Court have rejected challenges to the FDA's compliance with § 271(e)(4)(A) orders.  In *Mylan Laboratories, Inc. v. Thompson*, the D.C. Circuit held that "the FDA was bound" by a § 271(e)(4)(A) order and rejected an arbitrary and capricious challenge to the agency's compliance with the same.  389 F.3d at 1277, 1282; *accord id.* at 1284 ("The Vermont district court's finding of patent validity and consequent injunction changed the factual and legal landscape and the agency's response to the court's decision is both reasonable and consistent with the statutory language.").  In *Apotex Inc. v. United States Food & Drug Administration*, this Court rejected the plaintiff's request for preliminary injunctive relief because after a district court had entered a § 271(e)(4)(A) order, "the FDA had no authority to issue final approval" for the plaintiff's ANDA, and also because "[t]he plaintiff has not convincingly argued that the FDA is free to disregard a court order when it imposes a period of exclusivity despite the patent's expiration."  508 F. Supp. 2d at 84–85.

In entering its § 271(e)(4)(A) order, the Delaware District Court fully considered Norwich's arguments about judgment formation and its asserted right to amend its ANDA post-judgment and rejected them.  The Delaware District Court first rejected Norwich's attempts to narrow the scope of its order because doing so would be inconsistent with the mandatory remedy under § 271(e)(4)(A) and because the scope of the Amended ANDA was not before the Court.  D.I. 4-6 at 2.  The Delaware District Court denied relief under Rule 60(b) because it was "unprecedented" and "wrong" for a "trial loser" to "litigate a case through trial and final judgment

---

the district court's [§ 271(e)(4)(A)] decision, the FDA may not approve the ANDA (and the generic may not sell its drug) until after the patent expires."); *Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374, 1378 (Fed. Cir. 2020) (citing § 271(e)(4)(A) for the proposition that if an ANDA for a generic drug is found to infringe a valid patent in Hatch-Waxman litigation, "the court shall enter an order barring the FDA from approving that distribution prior to expiration of the infringed patent").

based on a particular ANDA, and then, after final judgment, change the ANDA to what it wishes it had started with, and win in a summary proceeding." *Salix*, D.I. 222 at 3, 5. These rulings unmistakably prohibited the FDA from granting final approval of Norwich's ANDA until October 2, 2029.

### 2.  The FDA cannot have violated the APA by complying with a court order.

The Delaware District Court's order is fatal to Norwich's APA claim. An agency cannot violate the APA by doing what a court directed it to do. A prerequisite to arbitrary and capricious review under 5 U.S.C. § 706 is that an agency has exercised discretion allocated to it by Congress. *Frederick Cnty. Fruit Growers Ass'n, Inc. v. McLaughlin*, 703 F. Supp. 1021, 1026 (D.D.C. 1989). The majority of agency actions fall into that category. But there are some circumstances in which arbitrary and capricious review is inapplicable—either because Congress intended for some action to be *entirely* discretionary for the agency, 5 U.S.C. § 701(a)(2), or, as here, because some action was *entirely* mandatory or prohibited for the agency. Because an agency has "no choice *but* to comply" with a court's order it "simply cannot be deemed to have to violated the APA." *McLaughlin*, 703 F. Supp. at 1026. In other words, it is never "arbitrary" for an agency to respect the rule of law dictated by our three-branch system of government.

The Supreme Court made clear in 1980, in *GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.*, that compliance with a court order is never arbitrary and capricious. 445 U.S. at 386. There, two public interest groups sought under the Freedom of Information Act ("FOIA") the release of documents that a district court had preliminarily enjoined the Consumer Product Safety Commission ("CPSC") from releasing. The Supreme Court held that the CPSC could not have abused its discretion in denying the requesters' FOIA request—regardless of the underlying

regulatory standards—because the injunctions left "*no discretion* for the agency to exercise." *Id.* (emphasis added).

This Court has consistently applied this straightforward principle. *See, e.g.*, *McLaughlin*, 703 F. Supp. at 1026. The only question of its applicability arises when it is unclear whether the court's order mandates the agency's conduct. *See, e.g.*, *Concepcion v. FBI*, 699 F. Supp. 2d 106, 111–12 (D.D.C. 2010) (finding that agency's decision to withhold documents requested under FOIA was unlawful where prior court order to seal did not demonstrate the court's intent to prevent the agency from disclosing the document as long as the seal was in place). Here, there is no such question—as demonstrated above, the Delaware District Court unequivocally ordered the FDA not to issue a final approval of ANDA No. 214369 prior to the expiration of the '573, '195, and '397 Patents.

Because the FDA had no discretion to disregard the Delaware District Court's order, Norwich's APA challenge fails as a matter of law. This ground standing alone requires rejecting Norwich's request for injunctive relief and warrants dismissal of, or summary judgment against, all of Norwich's claims.

> ### 3. The FDA's decision is not contrary to its regulations; and in any event, those regulations would not justify disregarding a court order.

If there were any tension between FDA regulations and the Delaware District Court's order, the court order would trump. As explained above, it cannot be arbitrary and capricious for an agency to comply with the final judgment and injunctive relief ordered by a federal court. *Mylan Lab'ys*, 389 F.3d at 1284. That is particularly true under the Hatch-Waxman Act, since Congress manifestly intended the FDA to comply with court orders in Hatch-Waxman litigation. *See In re Omeprazole Patent Litig.*, 536 F.3d at 1367 (citing 21 U.S.C. § 355(j)(5)(B)(iii)).

In any event, Norwich's challenge is based on a misreading of two FDA regulations. Norwich contends that it was permitted to amend its ANDA under 21 C.F.R. § 314.94(a)(12)(viii)(A) while it and Salix are pursuing appeals to the Federal Circuit. *See, e.g.*, D.I. 4-1 at 15–16. Norwich then contends that its ANDA, as amended, must receive immediate and final approval under 21 C.F.R. § 314.107(b)(1)(ii). *See, e.g.*, *id.* at 16–17. Norwich is wrong as to both regulations.

*First*, the language of 21 C.F.R. § 314.107(b)(1)(ii) is discretionary and does not require immediate and final approval of Norwich's Amended ANDA. Contrary to Norwich's arguments, an ANDA "***may be approved***" under this subsection so long as all other regulatory prerequisites have been met:

> (1) Timing of approval based on patent certification or statement. If none of the reasons in § 314.125 or § 314.127, as applicable, for refusing to approve the 505(b)(2) application or ANDA applies, and none of the reasons in paragraph (d) of this section for delaying approval applies, the 505(b)(2) application or ANDA ***may be approved*** as follows:
>
> * * *
>
> > (ii) Immediately, if the applicant submits an appropriate statement under § 314.50(i) or § 314.94(a)(12) explaining that a method-of-use patent does not claim an indication or other condition of use for which the applicant is seeking approval, except that if the applicant also submits a paragraph IV certification to the patent, then the 505(b)(2) application or ANDA may be approved as provided in paragraph (b)(1)(i)(C) of this section.

21 C.F.R. § 314.107(b)(1)(ii) (emphasis added).

"The word 'may' commonly connotes discretion." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 346 (2005); *accord Smith v. Murphy*, 138 S. Ct. 784, 787 (2018) ("If Congress had wished to afford the judge more discretion in this area, it could have easily substituted 'may' for 'shall.'"). Thus, even assuming Norwich could demonstrate that its ANDA satisfied each of § 314.107(b)(1)(ii)'s prerequisites—an undertaking Norwich does not even attempt in its motion—the FDA still had discretion to grant only tentative approval based on the Delaware

District Court's § 271(e)(4)(A) order.  And there is no reason the FDA would willingly violate that order given the Hatch-Waxman statutory regime and Norwich's admission that the § 271(e)(4)(A) order is an "absolute prohibition."  *Salix*, D.I. 211 at 6.

Importantly, the FDA's regulations define "tentative approval" as notification that an ANDA "cannot be approved," among other reasons, "because a court order pursuant to 35 U.S.C. 271(e)(4)(A) orders that the . . . ANDA may be approved no earlier than the date specified."  21 C.F.R. § 314.3(b).  These regulations enshrine the "FDA's practice of giving effect to [a] court order under 35 U.S.C. 271(e)(4)(A)."  80 Fed. Reg. 6802, 6865 (Feb. 6, 2015).  The FDA did not act arbitrarily or capriciously in following them to the letter.

*Second*, Norwich improperly relies on 21 C.F.R. § 314.94(a)(12)(viii)(A) for the claimed right to amend and obtain immediate final approval.  *See, e.g.*, D.I. 4-1 at 15–16.  By its plain terms, however, this subsection references only amendments in the narrow circumstance when "a court enters ***a final decision from which no appeal has been or can be taken*** . . . that includes a finding that the patent is infringed."  21 C.F.R. § 314.94(a)(12)(viii)(A) (emphasis added).  Here, both Norwich and Salix are appealing the Delaware District Court's final judgment to the Federal Circuit.  This subsection cannot be invoked under these facts.  Nor can its counterpart, 21 C.F.R. § 314.107(b)(1)(ii), which Norwich misinterprets as mandating immediate and final approval.

*Third*¸ Norwich fails to demonstrate that the regulations it cites compel approval for an ANDA undergoing Hatch-Waxman litigation.  FDA regulations instead contemplate that final approval must await the outcome of district court proceedings and related appeals to the Federal Circuit.  Turning first to 21 C.F.R. § 314.105(d), the "FDA will issue a tentative approval letter if an ANDA," among other reasons, "cannot be approved until the conditions in § 314.107(b)(3) or (c) are met."  Turning next to 21 C.F.R. § 314.107(b)(3) ("Disposition of patent litigation"), the

FDA describes when an ANDA may be approved based on infringement and invalidity determinations of a district court and the Federal Circuit. Importantly, under the procedural posture presented here—in which a district court found Salix's patents infringed and not proven invalid and entered a § 271(e)(4)(A) order, and both sides are appealing those rulings to the Federal Circuit—Norwich identifies no aspect of § 314.107(b)(3) that provides for immediate and final approval of its ANDA.

## B. Norwich's APA Action Is An Inappropriate End-Run Around The Normal Process Of Appellate Review Of The Delaware Court's Order.

As the above case law makes clear, the APA is not a mechanism for challenging an agency's compliance with an unambiguous federal court order. Norwich's proper avenue for relief is through the normal appellate review of the Delaware District Court's order. Both Salix and Norwich have filed appeals from the final judgment, and Norwich's complaints about the structure of the Delaware District Court's judgment should be directed to the Federal Circuit, not this Court.

### 1. Principles of finality and comity require this Court to respect the Delaware District Court's judgment.

This Court—like the FDA—owes respect to the Delaware District Court's final judgment under longstanding principles of judicial finality and comity.

To ensure the finality of courts' decisions, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The D.C. Circuit has found issue preclusion—i.e., collateral estoppel—warranted where: (1) the same issue was "contested by the parties and submitted for judicial determination in the prior case"; (2) the issue "was actually and necessarily determined by a court of competent jurisdiction in that

prior case"; and (3) preclusion does "not work a basic unfairness to the party bound by the first determination." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

Each of those elements is present here. Norwich squarely teed up the issue of the prohibition on final approval of its Amended ANDA in its Rule 60(b) motion. *See Salix*, D.I. 211 at 6 (Norwich characterizing the District of Delaware's order as an "***absolute prohibition*** on FDA's approval of Norwich's Amended ANDA before October 2, 2029" (emphasis added)). And, as the FDA and Norwich have recognized, the Delaware District Court considered and rejected Norwich's arguments that it should be permitted to amend its ANDA post-judgment and evade the prohibition on final approval. D.I. 1-1 at 3 (FDA letter quoting the Delaware District Court's order denying Rule 60(b) relief and stating that final approval of Norwich's ANDA "***cannot*** be granted until October 2, 2029 as specified in the court order" (emphasis added)). The Delaware District Court considered whether Norwich should be permitted to receive final approval of its Amended ANDA before expiration of the HE Patents and concluded that it should not. This Court must give preclusive effect to that determination—its correctness is an issue for appeal.

There is nothing unfair about precluding relitigating the same issue here when Norwich has another avenue for relief: Norwich is appealing to the Federal Circuit. In its appeal, Norwich can argue that the Delaware District Court's judgment was in error, so this Court can have an "underlying confidence" that conclusion of that proceeding will be "substantially correct." *Bravo-Fernandez v. United States*, 580 U.S. 5, 10 (2016) (quotation omitted).[3]

---

[3] The fact that the Delaware District Court's decision is currently being appealed does not render it non-final for purposes of issue or claim preclusion. *See Hunt v. Liberty Lobby, Inc.*, 707 F.2d 1493, 1497 (D.C. Cir. 1983) ("Under well-settled federal law, the pendency of an appeal does not diminish the *res judicata* effect of a judgment rendered by a federal court.").

Moreover, even if the Delaware District Court's decision did not have a direct preclusive effect, broader principles of comity would nonetheless weigh against this Court second-guessing or interfering with the FDA's compliance with the Delaware District Court's judgment.  Under long-standing comity principles, courts in this Circuit will avoid wading into issues pending in other jurisdictions "to assure judicial efficiency and to reflect abiding respect for other courts," *Consumers Union of U. S., Inc. v. Consumer Prod. Safety Comm'n*, 590 F.2d 1209, 1219 (D.C. Cir. 1978) *rev'd on other grounds by GTE Sylvania*, 445 U.S. 375, particularly where another pending action is "near resolution," *Ellison v. Sadur*, 700 F. Supp. 54, 57 (D.D.C. 1988).  The need to reflect abiding respect for another court's decision is acute here, where the Delaware District Court has already rendered its decision and the case is on appeal.

The Delaware District Court's order and judgment together mandate the very action FDA has taken.  Just as the FDA is bound to comply with that judgment, this Court should both respect the finality our judicial system is designed to achieve and afford the Delaware District Court appropriate respect by declining to interfere with the FDA's compliance with its ruling.

> **2.     Norwich has exercised its full appellate rights to seek review of the Delaware District Court Order in the Federal Circuit, as Congress intended.**

Norwich's appellate rights to challenge the Delaware District Court's final judgment and denial of its Rule 60(b) motion are not just hypothetical:  Norwich has noticed an appeal and is free to raise whatever issues in that appeal it deems appropriate.

More than any other court or agency, the Federal Circuit has expertise in resolving patent-infringement questions.  *See Dickinson v. Zurko*, 527 U.S. 150, 163 (1999) (recognizing that "the Federal Circuit is a specialized court" that "examine[s] [agency] finding[s] through the lens of patent-related experience"); *cf.* 54 Fed. Reg. 28,872, 28,909 (July 10, 1989) (the "FDA lacks the

expertise in patent law" needed to resolve the merits of technical Hatch-Waxman issues). The "infringement analysis in a Hatch–Waxman suit is no different than that in any other patent infringement suit," *Abbott Lab'ys v. TorPharm., Inc.*, 503 F.3d 1372, 1379 (Fed. Cir. 2007), so the Federal Circuit is undoubtedly the best court to resolve a claim, like Norwich's, that is inextricably intertwined with the merits of a district court's Hatch-Waxman analysis.

Norwich has not—and cannot—provide any reason to conclude that the Federal Circuit is incapable of resolving the issues it seeks to raise here. This Court should reject Norwich's attack on the FDA's compliance with a binding court order and require Norwich to seek relief through the normal appellate process as Congress intended. *See* 28 U.S.C. § 1295(a)(1) ("the Federal Circuit shall have exclusive jurisdiction—of an appeal from a final decision of a district court . . . in any civil action arising under . . . any Act of Congress relating to patents").

### C.   In No Event Is Norwich Entitled To An Order Requiring Immediate Approval Of Its Amended ANDA, The Only Relief It Seeks.

In its letter granting only tentative approval, the FDA noted that "[t]his letter does not include information related to the 180-day exclusivity provisions under section 505(j)(5)(B)(iv) of the FD&C Act." D.I. 1-1 at 1. Determination of entitlement to the 180-day exclusivity period is necessary before Norwich could be entitled to immediate final approval. So in no circumstance would Norwich be entitled to an order requiring the FDA to immediately approve its Amended ANDA.

The statutory language is clear: "[I]f the application contains a [paragraph IV] certification"—as even Norwich's Amended ANDA does—"and is for a drug for which a first applicant has submitted an application containing such a certification"—which Norwich's Amended ANDA is—"the application ***shall be*** made effective on the date that is ***180 days after*** the date of the first commercial marketing of the drug . . . by any first applicant." 21 U.S.C.

§ 355(j)(5)(B)(iv) (emphases added); *see also* 21 C.F.R. § 314.107(c)(1) ("The ANDA of a subsequent application ***will not be approved*** during the period when any first applicant is eligible for 180-day exclusivity or during the 180-day exclusivity period of a first applicant." (emphasis added)).

Norwich acknowledges that it is not the first applicant to submit an ANDA seeking approval to market rifaximin 550 mg tablets. D.I. 4-1 at 25. However, Norwich ignores that, as a subsequent application, its ANDA "will not be approved during the period when any first applicant is eligible for 180-day exclusivity or during the 180-day exclusivity period of a first applicant." 21 C.F.R. § 314.107(c)(1). The FDA reports that the first ANDA for 550 mg rifaximin was submitted on December 18, 2015, and that the first applicant had not forfeited its 180-day exclusivity period as of August 24, 2021:

Paragraph IV Patent Certifications
June 12, 2023

| DRUG NAME | DOSAGE FORM | STRENGTH | RLD/NDA | DATE OF SUBMISSION | NUMBER OF ANDAs SUBMITTED | 180-DAY STATUS | 180-DAY DECISION POSTING DATE | DATE OF FIRST APPLICANT APPROVAL | DATE OF FIRST COMMERCIAL MARKETING BY FTF | EXPIRATION DATE OF LAST QUALIFYING PATENT |
|---|---|---|---|---|---|---|---|---|---|---|
| Rifaximin | Tablets | 550 mg | Xifaxan 21361 | 12/18/2015 | 1 | Non-Forfeiture | 8/24/2021 | | | 10/2/2029 |
| Rifaximin | Tablets | 200 mg | Xifaxan 21361 | 1/28/2019 | 1 | | | | | 7/24/2029 |

*See* Ex. B, Paragraph IV Patent Certifications at 69 (June 12, 2023).[4]

By being the first to submit a substantially complete ANDA containing paragraph IV certifications as to certain Salix Orange Book patents, Teva was the sole first applicant for 550 mg rifaximin. 21 U.S.C. §355(j)(5)(B)(iii)(II)(bb). Importantly, Teva's paragraph IV certifications, which qualified it to be a first applicant, include patents against which Norwich currently maintains

---

[4] The FDA explains that "non-forfeiture" indicates the "FDA tentatively approved a subsequent applicant solely on the basis of a first applicant's eligibility for 180-day exclusivity at a time that none of the grounds for forfeiture were found to apply." Ex. C, *Patent Certifications and Suitability Petitions*, U.S. FOOD & DRUG ADMINISTRATION (last visited July 5, 2023), available at https://www.fda.gov/drugs/abbreviated-new-drug-application-anda/patent-certifications-and-suitability-petitions.

paragraph IV certifications. *Compare* D.I. 1-1 at 3 ("With respect to the… **'620, '199, '206, '542, '275, '644, '781, '196, '569, '949, '452, '231,** '968, '384, '667 and '912 patents, your ANDA contains paragraph IV certifications under section 505(j)(2)(A)(vii)(IV) of the FD&C Act stating that the patents are invalid, unenforceable, or will not be infringed by your manufacture, use, or sale of Rifaximin Tablets, 550 mg, under this ANDA." (emphasis added)), *with* Ex. D, *Salix Pharms., Ltd. et al. v. Actavis Labs. FL, Inc.*, 16-cv-00188, D.I. 3 (D. Del.) (filing from the litigation between Salix and Teva disclosing that Salix received notification of paragraph IV certifications against the '620, '199, '206, '542, '275, '644, '781, '196, '569, '949, '452, '231 patents, amongst others). Thus, while Norwich's ANDA includes paragraph IV certifications against any non-expired patent that qualified Teva to be a "first applicant," the statute mandates that Norwich's ANDA cannot be approved until 180 days after Teva enters the market.

The only exception to the 180-day exclusivity period granted to a first applicant is if it forfeits its exclusivity under 21 U.S.C. § 355(j)(5)(D). Nothing in the public record indicates that Teva has forfeited its 180-day exclusivity since the FDA's August 24, 2021 "non-forfeiture" decision. Ex. B, Paragraph IV Patent Certifications. Further, there is no indication that Teva has withdrawn its application or amended or withdrawn all of its original paragraph IV certifications. 21 U.S.C. § 355(j)(5)(D)(i)(II), (III). Finally, while Teva did not obtain tentative approval within 30 months after the date its ANDA was filed, that occurred well before the FDA's August 24, 2021 "non-forfeiture" determination. 21 U.S.C. § 355(j)(5)(D)(i)(IV). Thus, the FDA apparently decided at that time that Teva's failure to obtain tentative approval was not a forfeiture event. Ex. B, Paragraph IV Patent Certifications; Ex. C, *Patent Certifications and Suitability Petitions*. The FDA has not revisited that assessment, expressly noting in Norwich's tentative approval letter that "[t]his letter does not include information related to the 180-day exclusivity provisions under

section 505(j)(5)(B)(iv) of the FD&C Act."  D.I. 1-1 at 1.  Nor has Norwich challenged the FDA's determination of "non-forfeiture" in its Motion, instead choosing to challenge only the FDA's reliance on the Delaware District Court's order.

This Court, of course, need not and should not resolve any issues related to exclusivity, since those issues remain before the FDA and were expressly not resolved by the FDA's letter granting only limited approval of Norwich's ANDA.  The key point here is that because issues of exclusivity remain before the FDA and must be resolved before Norwich could obtain final approval, this Court cannot grant Norwich the only relief it seeks in this action. Even if the Court were to agree with Norwich's misguided attacks on the FDA's compliance with a federal court order, Norwich would still not be entitled to an order requiring immediate final approval of its Amended ANDA.  At a minimum, such final approval could only be granted after the FDA addresses the 180-day exclusivity period.

### D.    Norwich Cannot Satisfy The Requirements For A Preliminary Injunction.

Norwich is asking for a mandatory injunction—"an even more extraordinary remedy than the typical preliminary injunction."  *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 92 (D.D.C. 2021) (quotation omitted).   Mandatory preliminary injunctions are "disfavored" because they do the opposite of the typical goal of preliminary injunctive relief by altering the status quo.  *Id.*; *see also Pantoja v. Martinez,* No. 21-7118, 2022 WL 893017, at *1 (D.C. Cir. Mar. 25, 2022) (rejecting request for mandatory preliminary injunction because it could not meet the "higher standard" for such relief).

Norwich claims that, because the D.C. Circuit has not "elaborated on" the details of the "higher standard" for mandatory injunctions, it is essentially the same as the ordinary preliminary injunction standard.  D.I. 4-1 at 15.  Not so.  This Court has long noted that the power to issue a mandatory injunction "should be sparingly exercised," *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp.

21

2d 30, 36 (D.D.C. 2000) (quotation omitted), "especially when directed at the United States Government," *Sierra Club v. Johnson*, 374 F. Supp. 2d 30, 33 (D.D.C. 2005).  So, Norwich must do more to justify its need for a mandatory injunction than meet the standard four-part test for a preliminary injunction.  As discussed below, it fails entirely to do so.

### 1.   Norwich is unlikely to succeed on the merits of its APA claims.

For the reasons described above, Norwich cannot succeed—much less show a likelihood of success—on the merits.  It can cite no case for the novel proposition that an agency behaves arbitrarily, capriciously, or contrary to law by complying with an unambiguous order of a federal court.  The Hatch-Waxman Act and this Circuit's and the Federal Circuit's consistent precedent establish the opposite.  Indeed, because the FDA had no legitimate choice but to comply with the Delaware District Court's clear directive, APA review is unavailable.  This Court owes respect to the Delaware District Court's judgment—as does the FDA—and Norwich remains free to pursue its appellate rights in the Federal Circuit.  This APA action fails as a matter of law.

### 2.   Norwich has not shown and cannot show irreparable harm.

"To be entitled to preliminary injunctive relief, a plaintiff must show injury that is certain, great, actual, and imminent."  *Mylan Lab'ys Ltd. v. FDA*, 910 F. Supp. 2d 299, 313 (D.D.C. 2012).  Mere economic harm is insufficient "unless a plaintiff can establish that the economic harm is so severe as to cause extreme hardship to the business or threaten its very existence."  *Mylan Pharms., Inc. v. Sebelius*, 856 F. Supp. 2d 196, 215 (D.D.C. 2012) (quotation omitted).

Norwich argues that it will be irreparably harmed absent preliminary relief because "wrongfully delaying Norwich's approval" will cause it to (i) "incur substantial and irrevocable economic loss," (ii) face unrecoverable monetary damages without "legal recourse" against the FDA, and (iii) lose "its *de facto* first-mover advantage."  D.I. 4-1 at 24–25, 27–28 (capitalization modified for readability).  But Norwich misses every mark.

*First*, Norwich has failed to show that it will incur sufficiently severe economic loss absent preliminary injunctive relief. *See* D.I. 4-1 at 24–25. Although Norwich claims that its "ANDA product is a critical asset in Norwich's product pipeline," *id.* at 24, it fails to note that it already manufactures twenty-six products, Ex. E, Grabowski Decl. ¶ 45, that are unaffected by the FDA's decision here. What is more, Norwich's parent company has a large, diversified product portfolio, and it does not heavily depend on the revenues or profits generated by a single generic product like the rifaximin product. *Id.* Norwich has provided no evidence to the contrary. Nor has it provided any evidence that revenues from the expected generic rifaximin product would substantively alter Norwich's or its parent's revenues or profits.

Norwich's cases do not warrant a different conclusion. *See* D.I. 4-1 at 25. Unlike here, the likelihood of success on the merits in *Mova Pharmaceutical Corp. v. Shalala* was "very high," thereby requiring "a much smaller quantum of injury" for a preliminary injunction. *See* 955 F. Supp. 128, 131 (D.D.C. 1997). And unlike the plaintiffs in *Bracco Diagnostics, Inc. v. Shalala*, there is no evidence that Norwich will suffer "significant and irreparable losses" relative to its overall revenue absent the relief it requests. *See* 963 F. Supp. 20, 28 (D.D.C. 1997). Nor is there any evidence, as in *Bracco*, that Norwich has undertaken "more difficult, time-consuming and expensive testing" than Salix. *Id.*

*Second*, Norwich's inability to later recover monetary damages against the FDA is irrelevant. *See* D.I. 4-1 at 24–25. If that were the rule, "every action claiming economic loss caused by the government would meet the standard." *Mylan*, 856 F. Supp. 2d at 216; *see Biovail Corp. v. FDA*, 519 F. Supp. 2d 39, 49 (D.D.C. 2007) ("plaintiff's inability to recover monetary damages from the FDA is immaterial to the court's consideration, and the plaintiff has failed to demonstrate that it will suffer anything other than economic harm").

**Third**, Norwich overstates any "loss of the *de facto* first-mover advantage" that it could theoretically suffer.  *See* D.I. 4-1 at 26.  Even if Norwich were entitled to such a "first-mover advantage"—which, as a subsequent applicant, it is not—if Norwich received final approval, it would face generic competition from at least Teva, Sandoz, and Sun after receiving final approval and entering the market.  Ex. E, Grabowski Decl. ¶¶ 19, 48-50.  Given the size and resources of Teva, Sandoz, and Sun, any theoretical share advantage from early access to customers would be greatly undermined when these companies entered the market.  *Id.* ¶ 50.  Moreover, because Teva and Sandoz would be expected to leverage their portfolio's breadth in converting generic customers, Norwich would be unlikely to sustain any goodwill with existing customers that it might procure upon initial market entry.  *Id.*

Thus, Norwich has failed to show irreparable harm, and injunctive relief should be denied.

### 3. The balance of equities strongly favors denying injunctive relief given the substantial injury that Salix would suffer.

Any harm caused by the Court's denial of the preliminary injunction would not outweigh the harm caused to Salix if Norwich were permitted to enter the market.  Norwich has not shown it would face any material hardship from remaining off the market.   *See* Section IV.D.2, *supra*. In contrast, if the Court were to grant Norwich its requested relief, Salix would be harmed irreparably.

If Norwich entered the market now, as it demands, Salix and its parent—Bausch Health— would suffer from a significant decline in revenue, resulting in substantial adverse consequences for the company as a whole.  Xifaxan® revenue substantially contributes to Salix and Bausch Health's ability to finance their ongoing operations and invest in research and development ("R&D").  Ex. E, Grabowski Decl. ¶¶ 18, 35, 53-54.  If Norwich entered the market, a decline in Xifaxan® net sales may significantly hinder Bausch Health's ability to maintain its current and

planned levels of R&D.  *Id.* ¶¶ 35, 53-54.  Salix  also may need to reduce the size of its sales force, reduce investment in physician and patient education, and alter its patient assistance programs.  *Id.* ¶¶ 18, 39, 55-56.

In addition, if Norwich entered the market now, only to be enjoined following Salix's appeal to the Federal Circuit of the invalidation of the other patents, Salix would be unable to recoup its losses incurred during the interim period.  For example, when Norwich's generic enters the market, third-party payers ("TPPs") may attempt to extract discounts from Salix to keep Xifaxan® on their formularies—resulting in downward pressure on Xifaxan®'s price.  *Id.* ¶ 29.  If Salix were to lower the price of Xifaxan® in response, TPPs might resist any attempt to restore Xifaxan®'s price to its pre-generic entry level, even if Norwich were later enjoined.  And if Salix did not lower the price in response to Norwich's generic product, TPPs may remove Xifaxan® from their drug formularies, making it all the harder for Salix to restore its formulary position after the Federal Circuit decision.  *Id.* ¶ 30.

Still, Norwich incorrectly argues that ordering the FDA to grant final approval would not harm Salix because "Salix has already delayed the introduction of competitive generics by virtue of its patents and settlement agreements."  D.I. 4-1 at 30.  But this delay was based on Salix's lawfully obtained patent rights.  Moreover, if Norwich receives final approval and enters the market without a license from Salix, other generic manufacturers would be allowed to launch earlier than otherwise permitted.  Ex. E, Grabowski Decl. ¶¶ 19-20, 31.  The result would be an erosion of Xifaxan® sales and profits.  *Id.* ¶ 20.

Thus, the balance of hardships favors denying injunctive relief.

### 4.      The public interest favors denying injunctive relief.

Hatch-Waxman cases simultaneously implicate two public interests: (i) lower drug prices, and (ii) the "importance of the patent system in encouraging innovation."  *Sanofi-Synthelabo v.*

*Apotex, Inc.*, 470 F.3d 1368, 1383–84 (Fed. Cir. 2006).  But the statutory framework is not intended to "encourage or excuse infringement of valid pharmaceutical patents," and lowering drug prices "does not justify infringing a patent."  *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1382 (Fed Cir. 2005) (quotation omitted).

Particularly given the pending cross-appeals of the Delaware District Court's final judgment, the public interest in recognizing Salix's patent rights and promoting continued, large-scale investment in research and development of new drugs outweighs the public's interest in promoting generic, low-cost alternatives to branded drugs.  *See Sanofi–Synthelabo*, 470 F.3d at 1383–84 (public interest favored patent enforcement over multiple drug options because "encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude" (quotation omitted)).

## V.      CONCLUSION

For the foregoing reasons, this Court should dismiss Norwich's APA claims or, in the alternative, enter judgment in favor of the Federal Defendants and, if not moot, deny Norwich's request for a preliminary injunction.


Dated:  July 7, 2023                              Respectfully submitted,

                                                  /s/ David B. Salmons
                                                  David B. Salmons
                                                  Douglas A. Hastings
                                                  Amanda L. Salz
                                                  MORGAN, LEWIS & BOCKIUS LLP
                                                  1111 Pennsylvania Avenue, NW
                                                  Washington, DC 20004
                                                  T: (202) 739-3000
                                                  F: (202) 739-3001
                                                  david.salmons@morganlewis.com
                                                  douglas.hastings@morganlewis.com
                                                  amanda.salz@morganlewis.com

Michael J. Abernathy (*pro hac vice*)
Wan-Shon Lo (*pro hac vice*)
Karon N. Fowler (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
T: (312) 324-1000
mike.abernathy@morganlewis.com
shon.lo@morganlewis.com
karon.fowler@morganlewis.com

William R. Peterson (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1000 Louisiana Street, Suite 4000
Houston, Texas 77002-5006
T: (713) 890-5000
william.peterson@morganlewis.com

*Counsel for Intervenor Salix Pharmaceuticals, Inc.*