# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NORWICH PHARMACEUTICALS, INC., | |
| Plaintiff, | |
| v. | No. 1:23-cv-01611-RDM |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, *et al.*, | |
| Defendants, | |
| and, | |
| SALIX PHARMACEUTICALS, INC., | |
| Intervenor-Defendant. | |

**Federal Defendants' Combined Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction and for Summary Judgment, and in Support of Federal Defendants' Cross-Motion for Summary Judgment**

OF COUNSEL:

SAMUEL R. BAGENSTOS
  General Counsel
  U.S. Department of Health and Human
  Services

MARK RAZA
  Chief Counsel
  Food and Drug Administration

WENDY VICENTE
  Deputy Chief Counsel, Litigation

BRIAN M. BOYNTON
  Principal Deputy Assistant
  Attorney General
  Civil Division

ARUN G. RAO
  Deputy Assistant Attorney General

AMANDA N. LISKAMM
  Director

HILARY K. PERKINS
  Assistant Director

JAMES ALLRED
  Associate Chief Counsel
  Office of the Chief Counsel
  Food and Drug Administration
  10903 New Hampshire Ave.
  White Oak Building 31
  Silver Spring, MD 20993-002

GABRIEL I. SCHONFELD
  (D.C. Bar No. 155539)
  Trial Attorney
  Consumer Protection Branch
  Civil Division
  U.S. Department of Justice
  P.O. Box 386
  Washington, DC 20044-0386
  (202) 353-1531
  (202) 514-8742 (fax)
  Gabriel.I.Schonfeld@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION...................................................................................................................1

BACKGROUND ...................................................................................................................3

    A.    Statutory and Regulatory Background ...................................................3

    B.    Factual and Procedural Background.......................................................7

        1.    Norwich's Rifaximin ANDA and the Patent Judgment .................................7

        2.    Norwich's Amended ANDA, Motion to Modify the Patent Judgment, and Appeal to the Federal Circuit...............................................................9

        3.    FDA's Decision to Tentatively Approve the Amended ANDA...................11

        4.    The Instant Lawsuit ........................................................................12

LEGAL STANDARDS .........................................................................................................13

ARGUMENT.......................................................................................................................14

    I.    This Court Lacks, or in the Alternative Should Decline to Exercise, Subject Matter Jurisdiction Over Norwich's Collateral Attack on the Patent Orders.....................14

      A.    Norwich Lacks Standing to Sue FDA for Injuries Traceable Only to the Patent Orders.......................................................................15

      B.    This Court Should Decline Jurisdiction Over Norwich's Impermissible Collateral Attack on the Patent Orders.........................................16

    II.    The Federal Defendants are Entitled to Summary Judgment on Norwich's APA Claim.................................................................................................18

      A.    Direct Appeal of the Patent Orders is an Adequate Alternative Remedy that Precludes APA Review. .........................................................19

      B.    FDA's Decision to Obey the Binding Patent Orders Was Not Arbitrary, Capricious, or Contrary to Law...............................................21

    III.    Norwich is Not Entitled to a Preliminary Injunction............................28

CONCLUSION ...................................................................................................................31

# TABLE OF AUTHORITIES

## Cases

*37 Assocs., Tr. for the 37 Forrester St., SW Tr. v. REO Constr. Consultants, Inc.,*
409 F. Supp. 2d 10 (D.D.C. 2006) ................................................................. 17, 18

*Alley v. U.S. Dept. of Health & Human Servs.,*
590 F.3d 1195 (11th Cir. 2009) ........................................................................ 17

*Am. Hosp. Ass'n v. Azar,*
385 F. Supp. 3d 1 (D.D.C. 2019) ...................................................................... 31

*Am. Immigr. Council v. DHS,*
470 F. Supp. 3d 32 (D.D.C. 2020) .................................................................... 14

*Andrx Pharms., Inc. v. Biovail, Cop.,*
276 F.3d 1368 (Fed. Cir. 2002) ........................................................................ 27

*Apotex, Inc. v. FDA,*
508 F. Supp. 2d 78 (D.D.C. 2007) .................................................................... 26

*Avadel CNS Pharms., LLC v. Becerra,*
— F. Supp. 3d —, 2022 WL 16650467 (D.D.C. 2022) ................................. 19, 20, 21, 25

*Bennett v. Panama Canal Co.,*
475 F.2d 1280 (D.C. Cir. 1973) ........................................................................ 24

*Camp. v. Pitts,*
411 U.S. 138 (1973) ........................................................................................... 14

*Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.,*
527 F.3d 1278 (Fed. Cir. 2008) .................................................................... 4, 27

*Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S,*
566 U.S. 399 (2012) ..................................................................................... 4, 5, 6

*Celotex Corp. v. Edwards,*
514 U.S 300 (1995) ............................................................................................ 17

*Cigar Ass'n of Am. v. FDA,*
411 F. Supp. 3d 1 (D.D.C. 2019) ...................................................................... 15

*Citizens for Resp. & Ethics in Wash. v. U.S. Dept. of Just.,*
846 F.3d 1235 (D.C. Cir. 2017) ........................................................................ 19

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
401 U.S. 402 (1971) ........................................................................................... 13

*Coal. For Common Sense in Gov't Procurement v. United States,*
821 F. Supp. 2d 275 (D.D.C. 2011) .................................................................. 13

*Coker v. Sullivan*,
  902 F.2d 84 (D.C. Cir. 1990)...................................................................21

*Common Cause v. Biden*,
  748 F.3d 1280 (D.C. Cir. 2014)...............................................................15

*Dir., Off. of Workers Comp. Programs v. Newport News Shipbldg. & Dry Dock Co.*,
  514 U.S. 122 (1995)...............................................................................28

*Dorfmann v. Boozer*,
  414 F.2d 1168 (D.C. Cir. 1969).............................................. 14, 28, 30

*Eli Lilly & Co. v. Medtronic, Inc.*,
  496 U.S. 661 (1990).............................................................................5, 6

*FCC v. Prometheus Radio Project*,
  141 S. Ct. 1150 (2021)..........................................................................13

*Frederick Cnty. Fruit Growers Ass'n, Inc. v. McLaughlin*,
  703 F. Supp. 1021 (D.D.C. 1989)..........................................................22

*Greater New Orleans Fair Hous. Action Ctr. v. HUD*,
  639 F.3d 1078 (D.C. Cir. 2011)..............................................................28

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
  445 U.S. 375 (1980).............................................................................22

*Henson v. Santander Consumer USA Inc.*,
  582 U.S. 79 (2017)...............................................................................27

*In re Omeprazole Patent Litig.*,
  536 F.3d 1361 (Fed. Cir. 2008).............................................................26

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ..................................................................14

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..............................................................................15

*Lykins v. U.S. Dept. of Justice*,
  725 F.2d 1455 (D.C. Cir. 1984)..............................................................22

*McNeil v. Brown*,
  2018 WL 4623057 (D.D.C. Sept. 26, 2018) ..........................................17

*Moms Against Mercury v. FDA*,
  483 F.3d 824 (D.C. Cir. 2007)...............................................................13

*Morgan Drexen, Inc. v. CFPB*,
  785 F.3d 684 (D.C. Cir. 2015).........................................................17, 18

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)...............................................................................13

*Mylan Lab'ys, Inc. v. Thompson,*
  389 F.3d 1272 (D.C. Cir. 2004)........................................................26

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.,*
  520 F.3d 1358 (Fed. Cir. 2008)........................................................26

*Richards v. Delta Air Lines, Inc.,*
  453 F.3d 525 (D.C. Cir. 2006).........................................................18

*Rodriguez v. United States,*
  480 U.S. 522 (1987).........................................................................27

*Salix Pharms., Ltd. v. Norwich Pharms., Inc.,*
  2022 WL 3225381 (D. Del. Aug. 10, 2022) ....................................8

*Serono Lab'ys, Inc. v. Shalala,*
  158 F.3d 1313 (D.C. Cir. 1998).......................................................30

*Shaw v. Austin,*
  2023 WL 1438394 (D.D.C. Jan. 31, 2023) ......................................13

*Sherley v. Sebelius,*
  644 F.3d 388 (D.C. Cir. 2011).........................................................30

*Singh v. Carter,*
  185 F. Supp. 3d 11 (D.D.C. 2016) ...................................................14

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998)...........................................................................13

*Stone v. HUD,*
  859 F. Supp. 2d 59 (D.D.C. 2012) ...................................................17

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.,*
  887 F.3d 1117 (Fed. Cir. 2018).......................................................26

*Vapor Tech. Ass'n v. FDA,*
  977 F.3d 496 (6th Cir. 2020).......................................................15, 16

*Winter v. Nat. Res. Def. Council, Inc.,*
  555 U.S. 7 (2008).............................................................................14

*Women's Equity Action League v. Cavazos,*
  906 F.2d 742 (D.C. Cir. 1990).........................................................21

**Statutes**

5 U.S.C. §

  704.....................................................................................................19

  706(2)(A)............................................................................................13

21 U.S.C. §

355 .................................................................................................................26

355(a) ..............................................................................................................3

355(j) ...............................................................................................................3

355(j)(2)(A) .....................................................................................................4

355(j)(2)(A)(i) .................................................................................................3

355(j)(2)(A)(v) ................................................................................................4

355(j)(2)(A)(vi) ...............................................................................................4

355(j)(2)(A)(vii) ..........................................................................................4, 5

355(j)(2)(A)(vii)(IV) .......................................................................................5

355(j)(2)(A)(vii)(III) .......................................................................................5

355(j)(2)(A)(viii) .........................................................................................4, 5

355(j)(5)(B)(i) ..................................................................................................5

355(j)(5)(B)(ii) .................................................................................................5

355(j)(5)(B)(iii) ............................................................................................5, 6

355(j)(5)(B)(iii)(II) ........................................................................................20

355(j)(5)(B)(iii)(II)(bb) .................................................................................25

355(j)(5)(B)(iv) .........................................................................................29, 30

355(j)(5)(B)(iv)(I) .........................................................................................29

355(j)(5)(B)(iv)(II)(dd)(AA) .........................................................................11

355(j)(5)(D) ...................................................................................................29

28 U.S.C. § 1295(a)(1)........................................................................................20

35 U.S.C. §

271 ..............................................................................................................1, 26

271(e)(2)(A) .....................................................................................................6

271(e)(4)(A) ........................................................................................... passim

**Rules**

Federal Rule of Civil Procedure 60(b)(5) .................................................. passim

**Regulations**

21 C.F.R. §

314.107 ....................................................................................... 20, 24, 25, 27

314.107(b)(1) ...................................................................................................5

314.107(b)(1)(ii) ....................................................................................................6, 24

314.107(b)(1)(iii) ........................................................................................................5

314.107(b)(2) ..............................................................................................................5

314.107(b)(3) ...........................................................................................................5, 6

314.107(b)(3)(iv) .....................................................................................................6, 25

314.127(a)(7) ...............................................................................................................6

314.3 .........................................................................................................................11

314.94(a)(3) .................................................................................................................3

314.94(a)(4) .................................................................................................................4

314.94(a)(5) .................................................................................................................4

314.94(a)(6) .................................................................................................................4

314.94(a)(7) .................................................................................................................4

314.94(a)(8) .................................................................................................................4

314.94(a)(8)(iv) ............................................................................................................6

314.94(a)(12) ...........................................................................................................4, 5

314.94(a)(12)(i)(A)(3) ..................................................................................................5

314.94(a)(12)(i)(A)(4) ..................................................................................................5

314.94(a)(12)(iii)(A) ....................................................................................................5

314.94(a)(12)(viii)(A) ...............................................................................................9, 24

80 Fed. Reg. 6802 .......................................................................................................27

81 Fed. Reg. 69580 .....................................................................................................27

\* Indicates those cases or authorities on which counsel chiefly relies. Local Civ. R. 7(a).

INTRODUCTION

The Hatch-Waxman Amendments facilitate early resolution of patent disputes between manufacturers of brand-name and generic drugs. When a generic manufacturer loses a Hatch-Waxman infringement suit, the district court must order the U.S. Food and Drug Administration ("FDA") to delay approval of its Abbreviated New Drug Application ("ANDA") until the "expiration of the patent which has been infringed." 35 U.S.C. § 271; *see also* 21 U.S.C. § 355(j)(5)(B)(iii)(II)(bb). If the generic manufacturer wants to challenge that ruling, it may appeal to the Federal Circuit.

This APA suit arises out of Plaintiff Norwich Pharmaceuticals, Inc.'s attempt to end-run that process. In 2019, Norwich filed an ANDA seeking approval for a generic version of a drug called rifaximin, and Intervenor-Defendant Salix Pharmaceuticals, Inc. (which manufactures the brand-name version of that drug) sued for patent infringement in the District of Delaware.

After Norwich lost at trial, the Delaware Court entered a judgment (the "Patent Judgment") ordering FDA not to approve Norwich's ANDA until the infringed patents expire in 2029. Norwich tried, but failed, to persuade the Delaware Court to modify its order to permit immediate approval of labeling that "carved out" the particular methods of use found to be infringing. Collectively and together with the opinions that explain them, the Patent Judgment and subsequent denial of Norwich's motion to modify it under Rule 60(b)(5) comprise the "Patent Orders" that give rise to this case.

Norwich now sues FDA for *complying* with the Patent Orders by delaying final approval for its generic rifaximin product. What's more, it asks this Court for

mandatory injunctive relief that would directly clash with the Delaware court's order. Norwich's collateral attack on the Patent Orders is as extraordinary as it is baseless, and there are multiple reasons why this Court should grant summary judgment for the Federal Defendants:

*First,* Norwich lacks Article III standing because its claimed injuries are traceable to the Delaware Court (which ordered FDA to delay approval of Norwich's ANDA) rather than to FDA itself (which merely implemented the Patent Orders).

*Second*, even if Norwich has shown standing, this Court should decline to exercise jurisdiction over Norwich's claim, which is an impermissible collateral attack on the valid judgment of another district court. The Patent Orders direct FDA to *delay* approving the ANDA until certain patents expire, but Norwich asks this Court to order it approved *immediately*. The Court should decline to hear Norwich's attempt to nullify a federal judgment outside the proper channels of appeal.

*Third*, even if the Court reaches the merits of Norwich's APA claim, it should grant summary judgment as a threshold matter because Norwich has no cause of action under the APA. That statute provides a right to judicial review only where there is no adequate alternative remedy in a court. Here, Norwich may challenge (and indeed is challenging) the Patent Orders on direct appeal to the Federal Circuit. That is sufficient to displace any APA claim.

*Fourth*, if the Court exercises jurisdiction, finds a cause of action under the APA, and reaches the substance of FDA's action, it should grant summary judgment for the

Federal Defendants because FDA's decision to follow a binding federal court order was not arbitrary, capricious, or unlawful.

*Lastly*, the Court should deny any remaining request to grant Norwich preliminary injunctive relief. Norwich cannot succeed on the merits, has not shown a likelihood of irreparable harm without interim relief, and both the balance of equities and the public interest weigh heavily against the drastic change to the status quo that Norwich seeks. Moreover, any remedy (whether preliminary or final) granted to Norwich should be limited to a remand to FDA, rather than an order mandating outright approval.

For these reasons, the Court should deny Norwich's motion for a preliminary injunction and for summary judgment, and grant the Federal Defendants' motion for summary judgment.

## BACKGROUND

### A.  Statutory and Regulatory Background

Like their brand-name counterparts, generic drugs can be marketed in the United States only with FDA's approval. 21 U.S.C. § 355(a). As relevant here, a generic manufacturer may seek that approval by filing an ANDA. *Id.* § 355(j).

Because an ANDA relies on FDA's finding that a previously approved brand-name drug (the "reference" drug) is safe and effective, *id.* § 355(j)(2)(A)(i), 21 C.F.R. § 314.94(a)(3), the generic manufacturer does not have to repeat the same animal and human studies that supported the reference drug's approval. Rather, it must show that the generic drug is bioequivalent to the reference drug and that the generic drug has the

same active ingredient(s), conditions of use, strength, dosage form, and route of administration as the reference drug. *See generally* 21 U.S.C. § 355(j)(2)(A); 21 C.F.R. § 314.94(a)(4)-(7). A generic drug must also meet quality standards. 21 U.S.C. § 355(j)(2)(A)(vi). Lastly, with certain exceptions explained *infra*, the generic manufacturer must also show that the generic and reference drugs have the same labeling. 21 U.S.C. § 355(j)(2)(A)(v); 21 C.F.R. § 314.94(a)(8).

Since brand-name drugs are often protected by multiple patents, the requirements that generic drugs copy their predecessors lead to frequent disputes over whether those patents are valid and (if so) whether the generic drug will infringe them. As part of the Hatch-Waxman Amendments, Congress enacted a two-step mechanism to "facilitate[] the early resolution" of these disputes. *Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.* (*Forest Lab'ys*), 527 F.3d 1278, 1283-84 (Fed. Cir. 2008).

**First,** Hatch-Waxman requires a generic manufacturer to address in its ANDA the listed[1] patents that cover the brand-name drug. *See generally* 21 U.S.C. § 355(j)(2)(A)(vii)-(viii); 21 C.F.R. § 314.94(a)(12). "Those patents [may] come in different varieties. One type protects the drug compound itself. Another kind—the one at issue here—gives the brand manufacturer exclusive rights over a particular *method of using* the drug." *Caraco*, 566 U.S. at 405 (emphasis added).

---

[1] ANDA filers are only required to address a patent if the brand-name manufacturer submits required information about what the patent protects and when it expires to FDA, which then lists that patent information (hence, "listed patents") in a volume called the Orange Book. *See generally Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S* (*Caraco*), 566 U.S. 399, 405-06 (2012); 21 C.F.R. § 314.94(a)(12).

For each timely listed patent that covers the reference drug, an ANDA must contain an appropriate patent certification or statement. *See generally* 21 U.S.C. § 355(j)(2)(A)(vii)-(viii); 21 C.F.R. § 314.94(a)(12). When (as relevant here) the reference drug is covered by unexpired method-of-use patents, an ANDA filer typically must choose among the following:

- A *paragraph III certification*, which states the future date on which the patent will expire, *see* 21 U.S.C. § 355(j)(2)(A)(vii)(III), 21 C.F.R. § 314.94(a)(12)(i)(A)(*3*);

- A *paragraph IV certification*, which asserts "[t]hat the patent is invalid, unenforceable, or will not be infringed by the manufacture, use, or sale" of the proposed generic, 21 C.F.R. § 314.94(a)(12)(i)(A)(*4*); *see also* 21 U.S.C. § 355(j)(2)(A)(vii)(IV); or

- A *section viii statement*, which explains that "the labeling for the [proposed generic] drug . . . [does] not include an indication or other condition of use that is covered by the method-of-use patent," 21 C.F.R. § 314.94(a)(12)(iii)(A); *see also* 21 U.S.C. § 355(j)(2)(A)(viii).

*Second*, based on which patent certifications or statements are submitted, Hatch-Waxman defines when and on what terms FDA may grant final approval to an otherwise-satisfactory ANDA. *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 677 (1990); 21 U.S.C. § 355(j)(5)(B)(i)-(iii); 21 C.F.R. § 314.107(b)(1)-(3). Most straightforwardly, if a generic manufacturer submits a paragraph III certification, FDA may approve the ANDA as soon as the patent in question expires. 21 C.F.R. § 314.107(b)(1)(iii).

Alternatively, if the generic manufacturer chooses to proceed via a section viii statement, it "will propose labeling for the generic drug that 'carves out' from the brand's approved label the still-patented methods of use." *Caraco*, 566 U.S. at 406 (citing

21 C.F.R. § 314.94(a)(8)(iv)). "FDA may approve such a modified label as an exception to the usual rule that a generic drug must bear the same label as the brand-name product." *Id.* (internal citations omitted); *see also* 21 C.F.R. § 314.127(a)(7). "FDA acceptance of the carve-out label allows the generic company to place its drug on the market (assuming the ANDA meets other requirements), but only for a subset of approved uses—*i.e.*, those not covered by the brand's patents." *Caraco*, 566 U.S. at 406. If there is no other basis for delaying approval, an ANDA that relies on section viii carve-outs may receive final approval immediately. 21 C.F.R. § 314.107(b)(1)(ii).

Lastly, a generic manufacturer may include a paragraph IV certification in its ANDA. The Patent Act treats doing so as an automatic "act of infringement," 35 U.S.C. § 271(e)(2)(A), which gives the brand-name manufacturer "an immediate right to sue," *Caraco*, 566 U.S. at 407 ("Filing a paragraph IV certification means provoking litigation."). When an ANDA is submitted with a paragraph IV certification, final approvability depends on the "[d]isposition of [any] patent litigation" that the brand-name manufacturer commences within 45 days of receiving notice of the paragraph IV certification. 21 C.F.R. § 314.107(b)(3); 21 U.S.C. § 355(j)(5)(B)(iii); *Eli Lilly*, 496 U.S. at 677-78.

If the brand-name manufacturer sues within that window, and the district court "decides that the patent [is valid and] has been infringed, and if the judgment of the district court is not appealed or is affirmed, the . . . ANDA may be [finally] approved no earlier than the date specified by the district court in an order under 35 U.S.C. § 271(e)(4)(A)." 21 C.F.R. § 314.107(b)(3)(iv). Section 271(e)(4)(A) in turn provides that

when there is a finding of infringement in a paragraph IV case, "the [patent] court shall order the effective date of any [final] approval of the drug . . . involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed." 35 U.S.C. § 271(e)(4)(A).

### B. Factual and Procedural Background

#### 1. Norwich's Rifaximin ANDA and the Patent Judgment

Rifaximin (marketed by Salix under the brand name Xifaxan®) is approved by FDA for, *inter alia*, reducing the risk of hepatic encephalopathy ("HE," a brain disorder caused by severe liver disease), and treating irritable bowel syndrome with diarrhea ("IBS-D"). *See* Salix Pharms. Inc., *Xifaxan Prescribing Information* §§ 1.2, 1.3 (Sept. 2022), https://perma.cc/D3BQ-T3TT.

Norwich filed an ANDA in December 2019 seeking approval to market generic 550 mg rifaximin tablets. AR 371-72. At that time, FDA's Orange Book listed nearly two dozen unexpired patents for 550 mg rifaximin tablets. *See* AR 372. These included drug product and drug substance patents covering rifaximin's active ingredient, as well as method-of-use patents covering its administration for HE and for IBS-D, respectively.

As part of its ANDA, Norwich submitted paragraph IV certifications for all 23 of those unexpired patents (it would later submit three additional paragraph IV certifications as to patents which were listed after its initial filing), along with proposed labeling that included both the HE and IBS-D indications. *See* AR 372-73. Salix responded by filing an infringement suit in the District of Delaware within the 45-day

Hatch-Waxman window. *See generally Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 1:20-cv-00430-RGA (D. Del. Mar. 26, 2020).

By the time trial began, that suit had narrowed to two drug substance and product patents, three method-of-use patents covering the HE indication, and two method-of-use patents covering the IBS-D indication. *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, 2022 WL 3225381, at *1 (D. Del. Aug. 10, 2022). After a four-day bench trial, the Delaware Court held in a written opinion that (1) the drug substance and product patents and (2) the IBS-D method patents were invalid as obvious, *id.* at *6-8, *18-22, but that (3) the HE method patents were both valid and infringed, *id.* at *9-17.

The Delaware Court entered the Patent Judgment shortly thereafter. *See* AR 41 (Final Judgment, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Dkt. 193, No. 1:20-cv-00430-RGA (D. Del. Aug. 10, 2022) ("Patent Judgment")). Pursuant to 35 U.S.C. § 271(e)(4)(A), the Patent Judgment ordered "that the effective date of any final approval by [FDA] of Norwich's ANDA No. 214369 is to be a date not earlier than the date of expiration of the last to expire of the [HE patents] (currently October 2, 2029), plus any regulatory exclusivity to which [Salix] [is] or become[s] entitled." AR 42 (Patent Judgment ¶ 5).

In an accompanying opinion, the Delaware Court stated that in fashioning the Patent Judgment, it had rejected Norwich's proposal to limit its order delaying final approval to only "Norwich's ANDA with proposed labeling containing the HE indication." AR 43-44 (Memorandum, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Dkt. 192 at 1-2, No. 1:20-cv-00430-RGA (D. Del. Aug. 10, 2022) ("Judgment Memorandum") (internal modification omitted)). The Delaware Court explained that because it had

found the HE patents to be infringed by Norwich's ANDA, its understanding of section 271(e)(4)(A) *required* it to enter an order delaying final approval until "expiration of the latest asserted HE claim." AR 44 (Judgment Memorandum at 2).

### 2. Norwich's Amended ANDA, Motion to Modify the Patent Judgment, and Appeal to the Federal Circuit

██████████, Norwich amended its ANDA to withdraw its paragraph IV certifications respecting the HE patents. AR 54-58. Norwich chose to convert its prior certifications to section viii statements and carve out the HE indications from its proposed labeling. *Id.*; *see also* 21 C.F.R. § 314.94(a)(12)(viii)(A).

Following those amendments to its ANDA, Norwich moved to modify the Patent Judgment under Federal Rule of Civil Procedure 60(b)(5). *See generally* AR 264 (Opening Brief in Support of Motion to Modify Judgment, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Dkt. 206, No. 1:20-cv-00430-RGA (D. Del. Sept 7, 2022) ("Rule 60(b)(5) Brief"). Complaining that the Patent Judgment was "blocking the approval of Norwich's ANDA until the expiration of the Asserted HE Patents," AR 269 (Rule 60(b)(5) Brief at 1), Norwich argued that its decision to carve out the HE indication justified modification because the "[t]he specific conduct that provided the predicate for ordering FDA to delay [final approval] . . . no longer exist[ed]," and it was therefore "neither necessary nor equitable" to leave that portion of the order in place. *Id.* Norwich asked that the Patent Judgment be modified to permit immediate final approval of its ANDA as amended. AR 291 (Proposed Amended Final Judgment, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Dkt. 206-1 at ¶ 5, No. 1:20-cv-00430-RGA (D. Del. Sept 7, 2022))

(proposing that order delaying final approval on patent grounds should apply only "to the extent Norwich's ANDA . . . maintains Paragraph IV certifications" to the HE patents).

The Delaware Court denied Norwich's motion to modify the judgment so as not to prevent immediate approval of the amended ANDA. AR 358 (Memorandum Order, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Dkt. 222, No. 1:20-cv-00430-RGA (D. Del. May 17, 2023) ("Rule 60(b)(5) Order")). It held that Norwich's wish to proceed under a different label than it initially chose to litigate was "simply a voluntary decision of the trial loser to change course," which could not justify Rule 60(b)(5) relief because it was "neither unanticipated nor unforeseeable." AR 360 (Rule 60(b)(5) Order at 3). For that reason and others, the Delaware Court held that Norwich could not "litigate a case . . . based on a particular ANDA, and then, after final judgment, change the ANDA to what it wishes it had started with, and win [relief from judgment on that basis]. AR 362 (Rule 60(b)(5) Order at 5). That decision left in place, and applicable to Norwich's amended ANDA, the Patent Judgment's order that "FDA not . . . approve the ANDA before the latest expiration . . . of the [HE] patents on which [Salix] won." AR 359 (Rule 60(b)(5) Order at 2).

Norwich appealed to the Federal Circuit. *See* Defendant's Notice of Appeal, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Dkt. 223, No. 1:20-cv-00430-RGA (D. Del. May 19, 2023), *docketed as* Fed. Cir. No. 22-2153.[2] That still-pending appeal challenges the

---

[2] Norwich's opening brief in the Federal Circuit is due July 24, 2023. Salix's response will be due August 23, 2023. Norwich's reply will be due September 13, 2023. The

Delaware Court's denial of modification under Rule 60(b)(5), as well as the underlying

Patent Judgment "to the extent that it bars [FDA] from approving" Norwich's amended

ANDA "prior to the expiration of [the HE patents]." *Id.*

### 3. FDA's Decision to Tentatively Approve the Amended ANDA

Pursuant to the Patent Judgment,



FDA tentatively approved Norwich's amended ANDA on June 2, 2023. AR 365

("Tentative Approval Letter"). Tentative approval "is notification that an . . . ANDA

otherwise meets the requirements for approval, but cannot be approved"—either

because another applicant is entitled to a "period of exclusivity" under one or more

other provisions of the Federal Food, Drug, and Cosmetic Act ("FDCA"), or "because a

court order pursuant to 35 U.S.C. § 271(e)(4)(A) orders that the . . . ANDA may be

approved no earlier than the date specified." 21 C.F.R. § 314.3; 21 U.S.C.

§ 355(j)(5)(B)(iv)(II)(dd)(AA). "A drug product that is granted tentative approval is not

an approved drug and will not be approved until FDA issues an approval letter after

any necessary additional review." 21 C.F.R. § 314.3.

---

Federal Circuit has ordered that Norwich's appeal be placed on the next available oral
argument calendar after briefing is complete. *See* Order on Motion to Expedite, *Salix
Pharms., Ltd. v. Norwich Pharms. Inc.*, Dkt. 27 at 2, No. 22-2153 (Fed. Cir. June 29, 2023).

Here, the Tentative Approval Letter informed Norwich that its ANDA had met the statutory requirements discussed *supra* at 11-12, and acknowledged Norwich's section viii statements as to the HE patents, but stated that FDA was nevertheless "unable to grant final approval . . . at this time because of [a] patent issue." AR 365 (Tentative Approval Letter at 1). Specifically, FDA referred to the Patent Judgment and the Delaware Court's subsequent denial of Norwich's Rule 60(b)(5) motion. AR 367 (Tentative Approval Letter at 3). Thus, the Tentative Approval Letter explained, "final approval cannot be granted until October 2, 2029 as specified in the court order." *Id.*

FDA also set out the basis for its decision ████████████████████████ ████████████████████████████████████████████ FDA stated that "Norwich's ANDA is eligible for only a Tentative Approval based on the 271(e)(4)(A) judgment." AR 374 ██████████████. FDA also expressly addressed ██████████████████, explaining that it had "interpret[ed] the May 17 order refusing to modify the judgment to say that the prior order that FDA not approve the ANDA before the expiration of the relevant patents *still stands and applies to Norwich's post-amendment ANDA*." *Id.* (emphasis added).

### 4. The Instant Lawsuit

Following receipt of the Tentative Approval Letter, Norwich filed its Complaint in this action, *see* Dkt. 1, and moved for a preliminary injunction ordering FDA to immediately grant final approval for the rifaximin ANDA, *see* Dkt. 4. This Court subsequently ordered that Norwich's motion be treated as one for summary judgment and consolidated with the merits under Federal Rule of Civil Procedure 65(a)(2). Minute

Order re Joint Status Report (June 18, 2023). The Court also granted Salix's motion to intervene as a defendant. Minute Order re Intervention (June 18, 2023).

LEGAL STANDARDS

*Summary Judgment.* Subject matter jurisdiction is a threshold issue that must be addressed before reaching the merits. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Norwich has the burden of establishing this Court's jurisdiction by a preponderance of the evidence. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007); *Shaw v. Austin*, 2023 WL 1438394, at *4 (D.D.C. Jan. 31, 2023).

As to the merits, the agency in an APA case is entitled to summary judgment when its actions were consistent with the APA's standard of review. *Coal. For Common Sense in Gov't Procurement v. United States*, 821 F. Supp. 2d 275, 280 (D.D.C. 2011). The question is whether the challenged action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In applying this highly deferential standard, the reviewing court may not "substitute its judgment for that of the agency," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), but must instead uphold the agency's action if it is "rational, based upon consideration of the relevant factors and within the scope of the authority delegated to the agency by the statute," *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). That determination is based on the Court's review of the

administrative record, rather than its own factfinding. *See, e.g.*, *Camp. v. Pitts*, 411 U.S. 138, 142 (1973).

***Preliminary Injunction.*** For a preliminary injunction, Norwich must "make a clear showing that four factors, taken together, warrant relief: [1] likely success on the merits, [2] likely irreparable harm in the absence of preliminary relief, [3] a balance of equities in its favor, and [4] accord with the public interest." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016) (quotations omitted). Where a federal agency is the defendant, the last two factors merge. *See Am. Immigr. Council v. DHS*, 470 F. Supp. 3d 32, 36 (D.D.C. 2020). "A preliminary injunction is an extraordinary remedy never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and an even "higher standard" applies to preliminary injunctions that "would alter, rather than preserve, the *status quo*," *Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016). This higher standard requires a "clear[]" showing that the plaintiff "is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *Id.* A preliminary injunction also should not "give a party essentially the full relief [it] seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969).

**ARGUMENT**

**I.    This Court Lacks, or in the Alternative Should Decline to Exercise, Subject Matter Jurisdiction Over Norwich's Collateral Attack on the Patent Orders.**

Two threshold defects independently warrant summary judgment. ***First***, Norwich has no standing to sue FDA based on the Patent Orders. Norwich cannot market generic rifaximin because the Delaware Court ordered FDA to delay approving

14

it. Because its alleged injuries are a direct result of that order and not fairly traceable to FDA, Norwich lacks standing. ***Second***, even if Norwich has standing, this Court should still decline to exercise subject-matter jurisdiction over Norwich's claim because it is an impermissible collateral attack on the facially valid orders of another federal Court.

### A. Norwich Lacks Standing to Sue FDA for Injuries Traceable Only to the Patent Orders.

To have standing, Norwich must establish that it has suffered "(1) a concrete injury (2) caused by the defendant (3) that a favorable judicial decision will redress." *Common Cause v. Biden*, 748 F.3d 1280, 1284 (D.C. Cir. 2014). The causation element ensures "that a proper defendant [is] sued." *Id.* To meet it, the "plaintiff's claimed injury must have been caused by acts of the defendant, not of some absent third party." *Id.* (quotations omitted); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992) (injury must be "fairly traceable" to the defendant rather than another independent actor).

Norwich lacks standing because its present inability to market rifaximin is traceable to the Delaware Court's Patent Orders and not FDA. When a third party is affected by agency action that is "entirely a function of a judicial ruling," the underlying judgment—not the agency that obeys it—is the real cause of any harm. *Cigar Ass'n of Am. v. FDA*, 411 F. Supp. 3d 1, 3 (D.D.C. 2019) (no standing to sue FDA for following court-ordered schedule for regulation of tobacco products); *Vapor Tech. Ass'n v. FDA*, 977 F.3d 496, 501-02 (6th Cir. 2020) (same).

The record leaves no doubt that Norwich's claimed injury is entirely a function of the Patent Orders. The Delaware Court ordered FDA to delay approval of the

rifaximin ANDA until the last HE patent expires. AR 42 (Patent Judgment ¶ 5), AR 43-

44 (Judgment Memorandum at 1-2). It later denied a motion to modify that judgment,

*despite* Norwich amending its ANDA to carve out the HE indication from its proposed

labeling, leaving in place its order that "FDA not . . . approve the ANDA before the

latest expiration . . . of the [HE] patents on which [Salix] won." AR 359 (Rule 60(b)(5)

Order at 2), AR 362 (Rule 60(b)(5) Order at 5). And FDA, in turn, expressly stated that

the Patent Orders were the basis for its tentative approval decision. AR 365, 367

(Tentative Approval Letter at 1, 3) ("[W]e are unable to grant final approval . . . at this

time because of the patent issue . . . . [F]inal approval cannot be granted until October 2,

2029 as specified in the court order."); AR 374 ███████████████ ("Norwich's

ANDA is eligible for only a Tentative Approval based on the 271(e)(4)(A) judgment . . . .

[W]e interpret the May 17 order refusing to modify the judgment to say that the prior

order . . . still stands and applies to Norwich's post-amendment ANDA.").

FDA has done nothing but follow the Patent Orders, the entry of which were

"action[s] taken by the [Delaware] [C]ourt itself"—"an independent third party that is

not part of the present suit." *Vapor Tech. Ass'n*, 977 F.3d at 501-02. Norwich lacks

standing because Article III does not allow it to "sue the *FDA* to attack the [*Delaware*]

*court's* decision," *id.* at 502 (emphasis added).

### B. This Court Should Decline Jurisdiction Over Norwich's Impermissible Collateral Attack on the Patent Orders.

When litigants come to one court already bound by another's rulings, those prior

orders "are to be respected" until they are "reversed . . . by orderly review, either by

[the issuing court] or by a higher [one]." *Celotex Corp. v. Edwards*, 514 U.S 300, 313

(1995). "[F]ederal district courts [therefore] lack the power to void or otherwise alter

other federal courts' orders through a collateral attack." *McNeil v. Brown*, 2018 WL

4623057, at *7 (D.D.C. Sept. 26, 2018). These concerns are at their height when the order

under attack is a permanent injunction entered after a full trial on the merits. Because a

collateral attack on such an order would threaten "serious interference with . . . another

court's continuing power to supervise and modify its injunctions, considerations of

comity and orderly administration of justice demand that the non-rendering court

should decline jurisdiction." *Alley v. U.S. Dept. of Health & Human Servs.*, 590 F.3d 1195,

1203-04 (11th Cir. 2009) (quotations omitted); *see also Morgan Drexen, Inc. v. CFPB*, 785

F.3d 684, 696-97 (D.C. Cir. 2015) (explaining that district court has discretion to deny

declaratory relief for reasons of "practicality and wise judicial administration")

(quotations omitted).

This lawsuit is a collateral attack because Norwich seeks to "to avoid or evade"

the Patent Orders, "or to deny [their] force and effect." *37 Assocs., Tr. for the 37 Forrester

St., SW Tr. v. REO Constr. Consultants, Inc.*, 409 F. Supp. 2d 10, 14 (D.D.C. 2006); *see also

Stone v. HUD*, 859 F. Supp. 2d 59, 64 (D.D.C. 2012) (explaining that APA challenge to

federal agency's acceptance of plaintiff's criminal restitution payments was a prohibited

collateral attack on underlying judgment of conviction).

The Delaware Court ordered FDA to *delay* final approval of the rifaximin ANDA

until October 2029, AR 42 (Patent Judgment ¶ 5), AR 43-44 (Judgment Memorandum at

1-2), AR 359 (Rule 60(b)(5) Order at 2), and Norwich is asking this Court to order final

approval *immediately*, Dkt. 1 at 24 (Compl. Prayer ¶ B). Indeed, the relief Norwich seeks here—nullification of the Patent Orders—is as a practical matter indistinguishable from the reversal of those orders that it is pursuing on direct appeal. *Compare id.* (seeking an order "directing FDA to grant final approval to Norwich's Amended ANDA"), *with* Motion to Expedite Proceedings, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Dkt. 23 at 8-9, No. 22-2153 (Fed. Cir. June 14, 2023) ("If Norwich prevails [on appeal], the barrier to final approval . . . identified by FDA will be removed.").

There is no question, in other words, that the relief Norwich seeks would "in some fashion . . . overrule a previous judgment." *37 Associates*, 409 F. Supp. 2d at 14. Indeed, it seeks to overrule a previous judgment *that Norwich is already challenging by way of direct appeal. See Morgan Drexen*, 785 F.3d at 696 (explaining that a district court may decline to hear a declaratory judgment action where "other remedies are available or other proceedings pending" that would resolve the controversy); *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 n.6 (D.C. Cir. 2006) ("The general rule is that injunctive relief will not issue when an adequate remedy at law exists."). This Court should decline to hear Norwich's improper attempt to effectively appeal the Patent Orders outside the Federal Circuit.

## II. The Federal Defendants are Entitled to Summary Judgment on Norwich's APA Claim.

Even if this Court reaches the merits, Norwich's APA claim still fails for two reasons. ***First***, at the threshold, the APA does not provide a cause of action to plaintiffs who have another adequate remedy in a court. Norwich has such a remedy, because it

can appeal (and is appealing) the Patent Orders to the Federal Circuit. Because success on direct appeal would afford Norwich the same relief it seeks here, that alternative remedy is more than adequate to displace APA review. **Second**, even if Norwich has a cause of action and this Court reaches the substance of FDA's challenged action, the Federal Defendants are still entitled to summary judgment because FDA's decision to follow the terms of a federal court order was not arbitrary, capricious, or contrary to law.

**A.  Direct Appeal of the Patent Orders is an Adequate Alternative Remedy that Precludes APA Review.**

The APA authorizes judicial review only where the plaintiff lacks any "other adequate remedy in a court." 5 U.S.C. § 704; *see also generally Avadel CNS Pharms., LLC v. Becerra*, — F. Supp. 3d —, 2022 WL 16650467, at *6 (D.D.C. 2022). That limitation "reflects Congress's judgment that the general grant of review in the APA ought not . . . provide additional judicial remedies in situations where Congress has provided special and adequate review procedures." *Citizens for Resp. & Ethics in Wash. v. U.S. Dept. of Just.*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (quotations omitted). Courts determine whether an alternative remedy exists by looking for "clear and convincing evidence of legislative intent to create a special, alternative remedy and thereby bar APA review." *Avadel*, 2022 WL 16650467, at *6 (quotations omitted). "One way in which such intent is manifest is if Congress has provided . . . an alternative review procedure." *Id.* (quotations omitted).

19

Because Norwich seeks relief from the consequences of a judgment in a patent suit, its pending Federal Circuit appeal is more than adequate to displace APA review. In enacting Hatch-Waxman, "Congress plainly contemplated that the affirmative patent infringement action [that follows a paragraph IV certification]"—rather than administrative action by FDA—would "resolve any dispute between the patentholder and the [ANDA] applicant and lead to the establishment of the effective date of approval for the [ANDA]." *Avadel*, 2022 WL 16650467, at *7.[3]

That patent litigation encompasses both trial and appellate proceedings. Hatch-Waxman carefully describes how the outcome of a paragraph IV suit will affect an ANDA's approval date, in terms that explicitly account for multiple potential appellate outcomes. *See* 21 U.S.C. § 355(j)(5)(B)(iii)(II) (separately specifying approvability consequences of reversal, affirmance, and settlement on appeal); *see also* 28 U.S.C. § 1295(a)(1) (providing for appeal to the Federal Circuit in all patent cases). "Unlike cases in which a statute is silent on the question of alternative[s]" to APA review, "or in which the existence of an alternative remedy is doubtful, Congress has spoken clearly . . . by setting up an alternate remedial scheme via a patent infringement action" with appeal to the Federal Circuit. *Avadel*, 2022 WL 16650467, at *7 (quotations and citation omitted).

---

[3] Although *Avadel* involved a so-called "§ 505(b)(2)" application rather than an ANDA, the distinction is immaterial here. Notwithstanding their other differences, the 505(b)(2) and ANDA pathways share a common procedure for resolving patent disputes in district court and fixing a date for final FDA approval based on the outcome of that private litigation. *See* 21 C.F.R. § 314.107 ("Date of approval of a 505(b)(2) application or ANDA").

Nor is there any question about the adequacy of directly appealing the Patent Orders. Those orders themselves, after all, are "the immediate cause of the injuries of which [Norwich] complains" here. *See Coker v. Sullivan*, 902 F.2d 84, 90 (D.C. Cir. 1990). In this Court, Norwich asks FDA not "to refrain from harming [it] but rather to cure [its] [judgment]-created injuries." *See id.*; *see also Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) (availability of direct suits against allegedly discriminatory federal grantees precluded APA suit challenging grantor agency's oversight).

Norwich's right to *directly* appeal the source of its alleged injuries to the Federal Circuit is dispositive of its attempt to *indirectly* achieve the same result in this suit. An alternative remedy is adequate if it can "put the plaintiff in the [same] position in which they seek to be placed" under the APA. *Avadel*, 2022 WL 16650467, at *8. That test is met here because a victory for Norwich in the Federal Circuit would mirror the relief it seeks in this Court—removal of the Patent Orders as a bar to final approval of its ANDA. Norwich cannot invoke the APA, and the Federal Defendants are entitled to summary judgment because "the ultimate relief [Norwich] seeks before this court" is already available "via the specific avenue Congress created for it to do so." *Id.*

## B.  FDA's Decision to Obey the Binding Patent Orders Was Not Arbitrary, Capricious, or Contrary to Law.

At its core, Norwich's position is that FDA should have approved its ANDA in direct violation of a federal court's order not to do so. That argument fails for multiple reasons, and the Federal Defendants are entitled to summary judgment.

*First*, as a threshold matter, Norwich is wrong that the APA's bar on arbitrary, capricious, or unlawful agency action required FDA to violate a facially valid judgment entered by an Article III court pursuant to an act of Congress. It is "established doctrine" that federal agencies "subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object . . . ." *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980). Notwithstanding any "disagreement over whether the District Court erred in issuing the [Patent Orders]," FDA was "required to obey [them] . . . out of respect for judicial process," *Id.* at 386-87 (quotations omitted), and Norwich was "expected to make [its] objection by means of the [ordinary] rules and procedures" of federal civil litigation, *Lykins v. U.S. Dept. of Justice*, 725 F.2d 1455, 1460-61 (D.C. Cir. 1984).

The APA does not require otherwise. "To construe the . . . obedience of an injunction issued by a federal district court" as arbitrary, capricious, or unlawful "would do violence to the common understanding of th[ose] term[s]." *Cf. GTE Sylvania*, 445 U.S. at 386-87 (holding that agency's decision to withhold agency records pursuant to a court order was not "improper" nondisclosure under FOIA). "An agency acting on the express instructions of a federal court simply cannot be deemed to have violated the APA; at the very least, the agency cannot be deemed to have acted in an *arbitrary or capricious* manner." *Frederick Cnty. Fruit Growers Ass'n, Inc. v. McLaughlin*, 703 F. Supp. 1021, 1026 (D.D.C. 1989) (emphasis added).

*Second*, Norwich does not and could not dispute that the terms of the Patent Orders, as explained by the Delaware Court's opinions, in fact bar FDA from approving Norwich's amended ANDA during the term of the HE patents. To the contrary, Norwich concedes that the Delaware Court meant to impose an "absolute prohibition" on final approval before those patents expire, even after Norwich subsequently amended its ANDA to carve out the HE indication. *See, e.g.* AR 274 (Rule 60(b)(5) Brief at 6); *see also* AR 282 (Rule 60(b)(5) Brief at 14) (describing Patent Judgment as "the bottleneck preventing FDA's approval of Norwich's Amended ANDA").

To the extent Norwich now hints at such a dispute in this Court, *see* Dkt. 4-1 at 15 ("FDA apparently believes that it is hamstrung by the district court's order . . . ."), *id* at 12 (characterizing the Delaware Court as "recogniz[ing] that Norwich may seek to carve out the HE Indication") (quotation omitted), it does not argue that FDA's reading of the Patent Orders was itself arbitrary, capricious, or otherwise unlawful. Nor could it, since the materials ████████████████████ show that the Delaware Court meant to bar final approval under exactly these circumstances. *See* AR 42 (Patent Judgment ¶ 5), AR 43-44 (Judgment Memorandum at 1-2), AR 359 (Rule 60(b)(5) Order at 2), AR 362 (Rule 60(b)(5) Order at 5).

*Finally*, Norwich is wrong to argue that FDA's regulations *required* it to ignore the Patent Orders' directive to delay final approval of Norwich's ANDA notwithstanding any amendments.[4] Rather than the approvability regulations codified

---

[4] Without conceding that Norwich accurately characterizes the law governing deference to an agency interpreting its own regulations, *see* Dkt. 4-4 at 28-29, the question of

at 21 C.F.R. § 314.107, Norwich relies primarily on a *separate* requirement that the loser

in a paragraph IV lawsuit "from which no appeal has been or can be taken" amend its

ANDA to withdraw the paragraph IV certifications to the infringed patents and

substitute for each one either a paragraph III certification or a section viii statement. *See*

21 C.F.R. § 314.94(a)(12)(viii)(A).

Norwich asserts that once it made that switch, *see* AR 54-58, its ANDA contained

only section viii statements as to the HE patents and therefore should have been

immediately approved under 21 C.F.R. § 314.107(b)(1)(ii). Dkt. 4-1 at 22-23. At bottom

then, Norwich argues that to the extent its amended ANDA would have been

approvable *before* the Patent Orders (had it submitted the carved-out version to begin

with), § 314.94 means that its amended ANDA must be immediately approvable

*regardless* of the Delaware Court's order—which that court specifically reaffirmed as

applicable to the amended ANDA—delaying approval until 2029. *See id.* at 22.

Neither the text nor structure of FDA's regulations or the Hatch-Waxman

Amendments compel such a result. At the very least, § 314.107 did not require FDA to

approve the amended ANDA because it speaks in permissive rather than mandatory

terms. That provision states only that a carved-out ANDA "*may* be approved"

immediately under certain conditions, not that it *must* be approved. 21 C.F.R.

§ 314.107(b)(1)(ii) (emphasis added); *see Bennett v. Panama Canal Co.*, 475 F.2d 1280, 1282

(D.C. Cir. 1973) ("Ordinarily 'may' is a permissive not a mandatory term."). In other

---

deference does not arise here because the decision at issue implements the Delaware
Court's orders.

words, even if *section 314.107* does not demand delay of a carved-out ANDA's approval,
there remains the question of whether *something else does*.

On the specific facts of this case, the answer was an unambiguous yes. The
Delaware Court was fully aware of Norwich's intent to pursue approval of its carved-
out ANDA, and explicitly re-affirmed its order that approval of that amended
application should *still* be delayed until 2029. AR 359 (Rule 60(b)(5) Order at 2), AR 362
(Rule 60(b)(5) Order at 5); *see also* AR 374 ████████████████ (interpreting the
Patent Judgment, in light of the Rule 60(b)(5) Order, as applying to the amended
ANDA). Nothing in the text and structure of FDA's regulations remotely suggests that
the agency must ignore the Patent Orders when evaluating the very amended ANDA
for which the Delaware Court explicitly meant to delay final approval.

Indeed, doing so would contradict the basic structure of Hatch-Waxman
litigation, which enlists *district courts* to provide speedy and definitive resolution of
pharmaceutical patent disputes, with only an implementation role left for FDA once an
applicable judgment has been issued. *See Avadel*, 2022 WL 16650467, at *7; 21 U.S.C.
§ 355(j)(5)(B)(iii)(II)(bb) (directing that when a court finds infringement and enters an
order under section 271(e)(4)(A) that is not or cannot be appealed, FDA approval "shall
be made [final] on the date specified by the district court"); 21 C.F.R. § 314.107(b)(3)(iv)
(providing that under same conditions, an ANDA "may be approved no earlier than the
date specified by the district court" in its remedial order).

Case law in related contexts is in accord, making clear that FDA follows
applicable patent rulings from district courts, rather than considering whether agency

regulations would allow for a different result in those rulings' absence. *See In re Omeprazole Patent Litig.*, 536 F.3d 1361, 1367-68 (Fed. Cir. 2008) ("If the FDA has not approved the ANDA before the district court determines that the patent has been infringed, the FDA may not approve the ANDA until the effective date specified by the district court . . . ."); *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117, 1139 (Fed. Cir. 2018) ("FDA is entitled not to set an approval date prior to the expiration of a patent that has been found to be infringed . . . in a Hatch-Waxman case.").

Here, the Delaware Court prohibited final approval and rejected a request to modify its order with respect to Norwich's amended ANDA. At that point, "FDA had no authority to issue" final approval, *see Apotex, Inc. v. FDA*, 508 F. Supp. 2d 78, 84 (D.D.C. 2007), because the operative Hatch-Waxman provisions "direct[] that upon a finding of infringement" it is the "*district court* [that] establishes a new effective date for approval," which "FDA [is] bound" to follow, *Mylan Lab'ys, Inc. v. Thompson*, 389 F.3d 1272, 1282 (D.C. Cir. 2004) (emphasis added).

To be sure, a section 271(e)(4)(A) order will sometimes (as here) override the default standards for approving an ANDA under 21 U.S.C. § 355 and its implementing regulations. But that too is part of the statutory design, under which the rules by which FDA ordinarily processes an ANDA "do[] not limit a court's authority to reset [an ANDA's approval date] . . . directly under 35 U.S.C. § 271 without going through 21 U.S.C. § 355." *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358, 1366 (Fed. Cir. 2008).

Norwich's remaining appeals to out-of-context snippets of regulatory history and the general purposes of the Hatch-Waxman Amendments are equally unavailing. To the extent Norwich relies on the regulatory history of FDA's approval timing regulation, *see* 21 C.F.R. § 314.107, that history (like the regulation itself) does not contemplate that FDA may ignore a binding court judgment. *See* Dkt. 4-1 at 23 (citing 81 Fed. Reg. 69580, 69624 (Oct. 6, 2016)). The same is true of Norwich's appeal to history and guidance relating to the requirement that paragraph IV certifications be withdrawn and replaced after a district court has found the patents infringed and all appeals have been exhausted or waived. Like the regulation itself, these materials make no special provision for approval notwithstanding a contrary court order. *See* Dkt. 4-1 at 24 (citing 80 Fed. Reg. 6802, 6803 (Feb. 6, 2015), at 26 (citing FDA Good ANDA Submission Practices Guidance for Industry, FDA-2017-D-6854, at 6 (Jan. 2022)).

Lastly, Norwich cannot prevail based on a general appeal to Hatch-Waxman's policy of promoting generic competition. *See id.* at 29-30. As enacted, Hatch-Waxman navigates numerous competing policy objectives, including innovation, competition, and the definitive early resolution of patent disputes. *See Andrx Pharms., Inc. v. Biovail Cop.*, 276 F.3d 1368, 1370-71 (Fed. Cir. 2002); *Forest Lab'ys*, 527 F.3d at 1283. "No legislation pursues its purposes at all costs"—least of all legislation conceived from the start as a balancing act—and deciding where to draw that line "is the very essence of legislative choice." *Rodriguez v. United States*, 480 U.S. 522, 525-26 (1987). Not every "result consistent with . . . [a] statute's overarching goal must be the law," *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017), which is why the Supreme Court

has repeatedly cautioned against appeal "to that last redoubt of losing causes." *Dir., Off. of Workers Comp. Programs v. Newport News Shipbldg. & Dry Dock Co.*, 514 U.S. 122, 135-36 (1995). The Delaware Court knew of Norwich's amended ANDA, but intentionally left in place its order delaying approval, and FDA is constrained from contravening that order in the name of competition (or any other policy). Even if the Delaware Court erred in its determination, any such error will be properly adjudicated in the pending Federal Circuit appeal, consistent with Hatch-Waxman's provision that infringement disputes be resolved in private patent litigation rather than by FDA.

### III. Norwich is Not Entitled to a Preliminary Injunction

To the extent Norwich still seeks a mandatory preliminary injunction pending final resolution of the merits, that extraordinary relief should be denied because *none* of the required factors support it. **First**, Norwich has no likelihood of success on the merits for the reasons discussed in Parts I and II, *supra*. That is itself a sufficient basis to deny a preliminary injunction. *See Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011) ("When a plaintiff has not shown a likelihood of success on the merits, there is no need to consider the remaining factors."). Norwich has certainly not made the "overwhelming" merits showing necessary to obtain *mandatory* relief that would alter the status quo on an interim basis. *Dorfmann*, 414 F.2d at 1173.

**Second**, Norwich has not shown that it is likely to suffer irreparable harm without preliminary relief. Norwich suggests that FDA's respect for the Patent Orders is the only remaining obstacle to final approval of its ANDA, and that relief in this Court would therefore allow Norwich to enter the generic rifaximin market before any of its

competitors. Dkt. 4-1 at 30-35. Norwich's theory of irreparable harm depends heavily on the benefits it speculates will flow from this "first mover advantage." *Id.*

The Tentative Approval Letter, however, does *not* commit FDA to granting Norwich immediate final approval either following the 2029 date set by the Patent Orders, or upon an earlier modification of the same. Rather, FDA expressly stated that the Tentative Approval Letter "does not include information related to the [Hatch-Waxman Amendments'] 180-day exclusivity provisions." AR 365 (Tentative Approval Letter at 1). Those provisions provide a period of market exclusivity (running from a statutory trigger date) to the "first applicant[(s)]" that submit to FDA a substantially complete ANDA with a paragraph IV certification for the drug in question (unless the exclusivity is later forfeited). *See* 21 U.S.C. § 355(j)(5)(B)(iv). If such a "first applicant" exists, FDA may not finally approve a subsequent ANDA until the 180-day exclusivity period expires or is forfeited. *See id.* §§ 355(j)(5)(B)(iv)(I), 355(j)(5)(D). Indeed, the record shows that Norwich is not the "first applicant" eligible for 180-day exclusivity. *Compare* AR 134 (showing submission of the first applicant's ANDA for rifaximin 550 mg tablets in 2015, and FDA's determination that the first applicant had not forfeited its eligibility for 180-day exclusivity as of August 2021), *with* AR 372 (showing that Norwich's ANDA was not submitted until 2019).

At a minimum, Norwich will not be able to enter the market unless FDA determines that the first applicant has either forfeited its eligibility for 180-day exclusivity or has triggered and extinguished its exclusivity period. Even in the event that the Delaware Court's delay of approval on patent grounds were lifted, if FDA

subsequently determined that no such forfeiture or extinguishing has occurred, Norwich's ANDA would still only be eligible for *tentative* approval, and Norwich would be legally barred from the first-mover advantage it asks this Court to preserve. *See generally* 21 U.S.C. § 355(j)(5)(B)(iv). Norwich's claim of likely harm from FDA's application of the Patent Orders in particular, therefore, is too contingent and speculative to justify the extraordinary relief of a mandatory preliminary injunction.

**Third**, the balance of equities and the public interest likewise weigh heavily against interim mandatory relief. The preliminary injunction Norwich seeks is "essentially the full relief [it] seeks on the merits," *Dorfmann*, 414 F.2d at 1173 & n.132, and would cause "certain and substantial" hardship to Salix, *Sherley v. Sebelius*, 644 F.3d 388, 398 (D.C. Cir. 2011). And while FDA has no monetary interest in the outcome of this litigation, it shares the public's strong interest in implementing the Hatch-Waxman process according to Congress's design. *See Serono Lab'ys, Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C. Cir. 1998).

A final point on remedy: Norwich seeks an injunction ordering FDA to immediately approve its ANDA. Dkt. 1 at 24 (Compl. Prayer ¶ B). In the event the Court grants summary judgment to Norwich, however, the ordinary and proper remedy would be for this Court to instead remand to FDA for further proceedings in accord with its judgment, including consideration of any other potential obstacles to final approval. That is "ordinarily the appropriate course" in APA litigation, where "the role of the district court . . . is to act as an appellate tribunal" and "it is the prerogative of the agency to decide in the first instance how best to provide relief." *Am. Hosp. Ass'n*

*v. Azar*, 385 F. Supp. 3d 1, 11 (D.D.C. 2019). It would be especially appropriate here, where the possibility that another manufacturer is eligible for 180-day exclusivity (which could block Norwich's approval) is apparent on the face of the record.

## CONCLUSION

For the foregoing reasons, the Court should deny Norwich's motion for a preliminary injunction and for summary judgment, and grant summary judgment for the Federal Defendants.

July 7, 2023

Respectfully submitted,

/s/ Gabriel I. Schonfeld
GABRIEL I. SCHONFELD
(D.C. Bar. No. 155539)
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
PO Box 386
Washington, DC 20044-0386
(202) 353-1531
(202) 514-8742 (fax)
Gabriel.I.Schonfeld@usdoj.gov