**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| NORWICH PHARMACEUTICALS, INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:23-cv-01611-RDM |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, *et al.*, | |
| *Defendants*, | |
| and, | **REDACTED** |
| SALIX PHARMACEUTICALS, INC., | |
| *Intervenor-Defendant*. | |

---

**NORWICH PHARMACUETICAL, INC.'S**
**OPPOSITION TO FDA AND INTERVENOR SALIX'S**
**MOTION FOR SUMMARY JUDGMENT, AND REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, WHICH HAS**
**BEEN CONSOLIDATED FOR FULL CONSIDERATION ON THE MERITS**

# **TABLE OF CONTENTS**

I.   WHEN FDA'S ERRONEOUS "INTERPRET[ATION]" OF THE DELAWARE COURT ORDERS IS CORRECTED, FDA MUST GRANT FINAL APPROVAL TO NORWICH'S AMENDED ANDA UNDER ITS OWN UNAMBIGUOUS REGULATIONS.......................... 3

   A.   FDA ADMITS THAT IT WITHHELD FINAL APPROVAL BECAUSE IT "INTERPRET[ED]" THE DELAWARE COURT'S RULE 60(B) ORDER TO PROVIDE THAT THE SECTION 271(E)(4)(A) ORDER APPLIES TO NORWICH'S AMENDED ANDA .................... 3

     *1.   The Delaware Court's Section 271(e)(4)(A) Order Does Not Apply to Norwich's Amended ANDA*.................................................................................. 4

     *2.   The Delaware Court's May 17 Order Cannot be Interpreted to Provide that the Section 271(e)(4)(A) Order Applies to Norwich's Amended ANDA* .................................... 6

   B.   FDA HAS CONCEDED THAT NORWICH'S AMENDED ANDA MEETS ALL REGULATORY REQUIREMENTS FOR APPROVAL, THUS NO DISCRETION REMAINED ........................... 7

   C.   NORWICH IS NOT APPEALING TO THE FEDERAL CIRCUIT THE DELAWARE COURT ORDER FINDING THAT NORWICH'S ORIGINAL ANDA INFRINGED VALID HE PATENTS ...................... 11

II.  THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE INSTANT SUIT, AND NORWICH HAS STANDING BECAUSE FDA CAUSED NORWICH'S INJURY ....... 14

   A.   FDA DIRECTLY CAUSED NORWICH'S INJURY, AND THEREFORE NORWICH HAS STANDING ................................................................................................ 14

   B.   NORWICH'S LITIGATION AGAINST FDA IS NOT A "COLLATERAL ATTACK" ON THE DELAWARE COURT ...................................................................................... 16

III. AN APA ACTION IS APPROPRIATE, AND NORWICH'S APPEAL TO THE FEDERAL CIRCUIT DOES NOT PREVENT JUDICIAL REVIEW HERE............................ 19

IV.  FDA HAS PREVIOUSLY ENDORSED THE IMPORTANT POLICY GOALS OF SECTION VIII STATEMENTS................................................................................ 25

V.   THIS COURT DOES NOT NEED TO ANALYZE THE PRELIMINARY INJUNCTION FACTORS............................................................................................................. 26

VI.  THIS COURT SHOULD DENY FDA'S REQUEST FOR REMAND FOR FAILING TO FOLLOW ITS REGULATIONS, AND, AT MOST, GRANT A LIMITED REMAND PERIOD CONCERNING FIRST-FILER EXCLUSIVITY........................................................ 28

   A.   FDA FAILED TO PROPERLY CONSIDER ITS REGULATIONS AND SHOULD NOT BE GIVEN A SECOND BITE OF THE APPLE WHEN THE CONCLUSION IS CLEAR ............................ 28

   B.   AT MOST, FDA SHOULD BE GIVEN TEN BUSINESS DAYS TO CONSIDER THE FIRST-FILER EXCLUSIVITY STATUS ............................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*37 Assocs., Tr. for the 37 Forrester St., SW Tr. v. REO Constr. Consultants, Inc.*,
  409 F. Supp. 2d 10 (D.D.C. 2006) ............................................................................18

*A.L. Pharma, Inc. v. Shalala*,
  62 F.3d 1484 (D.C. Cir. 1995) ..................................................................................30

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977)
  (abrogated on other grounds) ....................................................................................21

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013) .................................................................................14

*Alley v. U.S. Dept. of Health & Human Servs.*,
  590 F.3d 1195 (11th Cir. 2009) ...........................................................................17, 18

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ..................................................................................4

*Amgen Inc. v. Azar*,
  290 F. Supp. 3d 65 (D.D.C. 2018) .............................................................................32

*Amgen Inc. v. Hargan*,
  285 F. Supp. 3d 351 (D.D.C. 2018) ...........................................................................32

*Aracely, R. v. Nielsen*,
  319 F. Supp. 3d 110 (D.D.C. 2018) ...........................................................................20

*Asfour v. Napolitano*,
  732 F. Supp. 2d 512 (E.D. Pa. 2010) .........................................................................32

*Attias v. Carefirst, Inc.*,
  865 F.3d 620 (D.C. Cir. 2017) ..................................................................................15

*Avadel CNS Pharms., LLC v. Becerra*,
  No. 22-02159, 2022 WL 16650467 (D.D.C. Nov. 3, 2022) ............................22, 23

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)...................................................................................................20

*Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S,*
 566 U.S. 399 (2012) ................................................................................................1

*Celotex Corp. v. Edwards,*
 514 U.S. 300 (1995) ..........................................................................................17, 18

*Cigar Ass'n of Am. v. FDA,*
 411 F. Supp. 3d 1 (D.D.C. 2019) .........................................................................18

*Citizens for Resp. & Ethics in Washington v. United States Dep't of Just.,*
 846 F.3d 1235 (D.C. Cir. 2017) ...........................................................................23

*Coker v. Sullivan,*
 902 F.2d 84 (D.C. Cir. 1990) ..........................................................................23, 24

*Common Cause v. Biden,*
 748 F.3d 1280 (D.C. Cir. 2014) ...........................................................................16

*D.C. v. Dep't of Labor,*
 34 F. Supp. 3d 172 (D.D.C. 2014) ........................................................................4

*Dynalantic Corp. v. Dep't of Def.,*
 115 F.3d 1012 (D.C. Cir. 1997) ...........................................................................16

*El Paso Nat. Gas Co. v. United States,*
 632 F.3d 1272 (D.C. Cir. 2011) ...........................................................................21

*El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS,*
 396 F.3d 1265 (D.C. Cir. 2005) ...........................................................................20

*Ellison v. Sadur,*
 700 F. Supp. 54 (D.D.C. 1988) ............................................................................19

*Encino Motorcars, LLC v. Navarro,*
 579 U.S. 211 (2016) .............................................................................................11

*Exhaustless Inc. v. FAA,*
 931 F.3d 1209 (D.C. Cir. 2019) ...........................................................................16

*Fisher v. Pension Benefit Guar. Corp.,*
 151 F. Supp. 3d 159 (D.D.C. 2015) .....................................................................12

*Fla. Audubon Soc. v. Bentsen,*
 94 F.3d 658 (D.C. Cir. 1996) (en banc) ...............................................................15

*GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.,*
 No. 18-1976 (Fed. Cir.) ........................................................................................26

iii

*HealthAlliance Hosps., Inc. v. Azar*,
    346 F. Supp. 3d 43 (D.D.C. 2018) ........................................................................11

*Hebert v. Lisle Corp.*,
    99 F.3d 1109 (Fed. Cir. 1996) ............................................................................14

*I.N.S. v. Orlando Ventura*,
    537 U.S. 12 (2002) .......................................................................................31, 32

*Ingram Barge Co. v. United States*,
    884 F.2d 1400 (D.C. Cir. 1989) ..........................................................................11

*Kisor v. Wilkie*,
    139 S. Ct. 2400 (2019) ........................................................................................8

*Kucana v. Holder*,
    558 U.S. 233 (2010) ..........................................................................................22

*Make The Rd. New York v. Wolf*,
    962 F.3d 612 (D.C. Cir. 2020) ............................................................................21

*Mar. for Life v. Burwell*,
    128 F. Supp. 3d 116 (D.D.C. 2015) ....................................................................27

*McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*,
    895 F. Supp. 316 (D.D.C. 1995) ........................................................................30

*McElmurray v. U.S. Dep't of Agric.*,
    535 F. Supp. 2d 1318 (S.D. Ga. 2008) ................................................................31

*McNeil v. Brown*,
    Civ. No. 17-cv-2602 (RC) 2018 WL 4623057 (D.D.C. Sept. 26, 2018) .........................17, 18

*MediNatura, Inc. v. FDA*,
    496 F. Supp. 3d 416 (D.D.C. 2020), *aff'd*, 998 F.3d 931 (D.C. Cir. 2021) ......................21

*Mylan Labs., Inc. v. Thompson*,
    389 F.3d 1272 (D.C. Cir. 2004) .......................................................................4, 25

*Mylan Pharms., Inc. v. Shalala*,
    81 F. Supp. 2d 30 (D.D.C. 2000) ..........................................................................9

*Noble Energy, Inc. v. Salazar*,
    671 F.3d 1241 (D.C. Cir. 2012) ..........................................................................13

*Norwich Pharms., Inc. v. Becerra*,
    Civ. No. 23-1611 ECF No. 4-1 ..............................................................................6

*Orangeburg, S.C. v. FERC*,
  862 F.3d 1071 (D.C. Cir. 2017) ..................................................................................15, 16

*RSB Spine, LLC v. DePuy Synthes Sales, Inc.*,
  Civ. No. 19-1515-RGA, 2023 WL 4456874 (D. Del. July 11, 2023) ......................................7

*Salix Pharms., Ltd. v. Norwich Pharms., Inc.*,
  No. 1-20-cv-00430-RGA (D. Del.) ...................................................................................1, 13

*Salix v. Norwich*,
  ECF No. 213 ...........................................................................................................................7

*Sandoz, Inc. v. Leavitt*,
  427 F. Supp. 2d 29 (D.D.C. 2006) ......................................................................................30

*Stone v. Dep't of Hous. & Urb. Dev.*,
  859 F. Supp. 2d 59 (D.D.C. 2012) ................................................................................17, 18

*Teva Pharms. USA, Inc. v. FDA*,
  441 F.3d 1 (D.C. Cir. 2006) ..........................................................................................12, 31

*Teva Pharms. USA, Inc. v. Glaxosmithkline LLC*,
  143 S. Ct. 2483 (2023), 2023 WL 2717391 ........................................................................27

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
  482 F.3d 1330 (Fed. Cir. 2007) ............................................................................................9

*TorPharm, Inc. v. Thompson*,
  260 F. Supp. 2d 69 (D.D.C. 2003), *aff'd sub nom. Purepac Pharm. Co. v.
  Thompson*, 354 F.3d 877 (D.C. Cir. 2004) .......................................................................24

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*,
  887 F.3d 1117 (Fed. Cir. 2018) ..........................................................................................25

*Vapor Tech. Ass'n v. FDA*,
  977 F.3d 496 (6th Cir. 2020) ..............................................................................................16

*Warner-Lambert Co. v. Apotex Corp.*,
  316 F.3d 1348 (Fed. Cir. 2003) ....................................................................................24, 25

*Watson Lab'ys, Inc. v. Sebelius*,
  Civ. A. No. 12-1344 (ABJ), 2012 WL 6968224 (D.D.C. Oct. 22, 2012),
  *vacated*, No. 12-5332, 2013 WL 11250319 (D.C. Cir. June 10, 2013) ..............................31

*Women's Equity Action League v. Cavazos*,
  906 F.2d 742 (D.C. Cir. 1990) ............................................................................................23

*Yamaha Corp. of Am. v. United States*,
   961 F.2d 245 (D.C. Cir. 1992) .................................................................................18

**Statutes**

5 U.S.C. § 551(13) .................................................................................................30

5 U.S.C. § 704 ......................................................................................................23

5 U.S.C. § 706(1) ..................................................................................................30

21 U.S.C. § 355(j)(2)(A)(viii) ..................................................................................5

28 U.S.C. § 1295(a)(1) ...........................................................................................21

35 U.S.C. § 271(e)(4)(A) ............................................................................... *passim*

FD&C Act section 505(j)(2)(A)(viii) ............................................................3, 6, 12

**Other Authorities**

*21 C.F.R. 314.94 ......................................................................................... *passim*

*21 C.F.R. § 314.107 ...................................................................................9, 10, 11

21 C.F.R. §§ 314.125 ..............................................................................................9

21 C.F.R. § 314.127 ....................................................................................9, 10, 11

81 Fed. Reg. 69580, 69624 (Oct. 6, 2016) ...............................................................9

FDA-2017-D-6854 (Jan. 2022) ..............................................................................8

# INTRODUCTION

With the benefit of the Administrative Record and FDA's memorandum to this Court, it is now apparent that FDA took it upon itself to (in FDA's own words) "interpret" the Delaware Court's May 17 Order to arrive at its incorrect determination that the earlier Section 271(e)(4)(A) Order applies to Norwich's Amended ANDA.  There is no basis for FDA's interpretation, and, when it is corrected, the straight-forward application of FDA's own regulation requires FDA to give final approval to Norwich's Amended ANDA.

Rather than engage with Norwich's position, FDA[1] and Salix pivot to attacks on standing and jurisdiction that incorrectly assume that the Delaware Court Orders[2] apply to Norwich's Amended ANDA.  Not only are FDA and Salix wrong, but, if they were correct, then section viii carveouts after a finding of infringement would serve no purpose, rendering FDA's regulation a nullity and disrupting the entire process Congress expressly created.  As the Supreme Court has recognized, "[t]he Hatch-Waxman Amendments authorize the FDA to approve the marketing of a generic drug for particular unpatented uses; and section viii provides the mechanism for a generic company to identify those uses, so that a product with a label matching them can quickly come to market."  *Caraco Pharm. Labs., Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 415 (2012).  FDA's decision here subverts this Congressionally-established mechanism.

---

[1] For ease of reading, "FDA" refers to the Defendants Xavier Becerra; Robert M. Califf, M.D.; and the United States Food and Drug Administration.

[2] The term "Delaware Court Orders" hereinafter refers to the Final Judgment dated August 10, 2022 (AR041-042; ECF No. 193) – also referred to here as the Section "271(e)(4)(A) Order" – and Memorandum Order dated May 17, 2023 (i.e., AR358-362; ECF No. 222) in *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 1-20-cv-00430-RGA (D. Del.) (hereinafter "*Salix v. Norwich*").

FDA and Salix's attempts to focus on the "permissive" language of the regulation ignores that the *only* two reasons listed in the regulation for which FDA may not grant approval – bioequivalence/therapeutic equivalence and new product or orphan drug exclusivity – do *not* apply here. Their arguments that the Delaware Court Orders provide "no choice" but to deny approval are based on FDA's misinterpretation of the Delaware Court Orders and are contrary to the Delaware Court Orders themselves and to Salix's own arguments presented to the Delaware Court. In fact, the Delaware Court explicitly foreclosed FDA's interpretation by limiting the scope of its Orders to Norwich's Original ANDA *with the infringing HE Indication*.

The remaining arguments from FDA and Salix fare no better. Their attacks on standing and jurisdiction not only incorrectly assume that the Delaware Court Orders apply to Norwich's Amended ANDA, but they fundamentally ignore that (as FDA acknowledges) FDA is the *only* party that can grant approval to Norwich's Amended ANDA. There can be no reasonable dispute that FDA has therefore caused injury to Norwich. Similarly, FDA and Salix's focus on "collateral attack," "collateral estoppel," and issues of "comity" are inapplicable because they disregard that Norwich is not challenging the Delaware Court Orders in *this* Court but is only challenging FDA's failure to follow its unambiguous regulations and incorrect interpretation and implementation of the Delaware Court Orders. And, FDA and Salix's focus on the inapplicability of the regulation due to Norwich's appeal to the Court of Appeals for the Federal Circuit ignores the scope of Norwich's appeal.

Finally, FDA and Salix's insistence that remand is the proper remedy falls flat. Because FDA wrongfully applied its unambiguous regulation, there is no need for remand, and FDA should not be given a second bite of the apple. If any issues concerning first-filer 180-day

exclusivity persist despite FDA's repeated consideration of the issue, FDA should be given a maximum of ten business days to review the record and finalize its decision regarding whether Teva has forfeited exclusivity.

The Court should therefore enter judgment on the merits in Norwich's favor and deny FDA's motion for summary judgment and Salix's cross-motion to dismiss or, in the alternative, for summary judgment.

I. **WHEN FDA'S ERRONEOUS "INTERPRET[ATION]" OF THE DELAWARE COURT ORDERS IS CORRECTED, FDA MUST GRANT FINAL APPROVAL TO NORWICH'S AMENDED ANDA UNDER ITS OWN UNAMBIGUOUS REGULATIONS**

A. **FDA Admits That It Withheld Final Approval because It "Interpret[Ed]" The Delaware Court's Rule 60(B) Order To Provide That The Section 271(E)(4)(A) Order Applies to Norwich's Amended ANDA**

FDA does not contend, nor could it, that the Delaware Court's August 10, 2022 Section 271(e)(4)(A) Order applies on its face to Norwich's Amended ANDA. On the contrary, FDA's letter granting tentative approval correctly acknowledges that Norwich's Amended ANDA has carved out the basis for the Delaware Court's infringement ruling and Section 271(e)(4)(A) Order, i.e., the HE Indication and accompanying Paragraph IV certifications to the HE Patents. *See* AR367-68 ("your ANDA contains statements under section 505(j)(2)(A)(viii) of the FD&C Act that these are method-of-use patents that do not claim any indication for which you are seeking approval under your ANDA"). Instead, FDA admits that it looked behind the Section 271(e)(4)(A) Order and "interpret[ed] the May 17 order refusing to modify the judgment to say that the prior order that FDA not approve the ANDA before the expiration of the relevant patents still stands and *applies to Norwich's post-amendment ANDA*."

FDA Br. at 20 (citing AR374) (emphasis added).  FDA's interpretation is incorrect and requires reversal of the agency's decision.[3]

As an initial matter, FDA's interpretation of court orders is not entitled to deference.  *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1085 (D.C. Cir. 2001) ("We, of course, owe no deference to an agency's reading of judicial orders or decisions . . . [and] the reading the government urges upon us . . . is unreasonable."); *see also Mylan Labs., Inc. v. Thompson*, 389 F.3d 1272, 1279 n. 5 (D.C. Cir. 2004) ("Mylan also asserts, correctly, that the court owes no deference to the FDA's interpretation of 35 U.S.C. § 271(e)(4)(A), a patent statute provision which the FDA is not charged with administering . . . or of the decision of the . . . district court[.]").  Furthermore, when an agency relies on an improper interpretation of a court order, that is reversible.  *See id.*; *see also D.C. v. Dep't of Labor*, 34 F. Supp. 3d 172, 188-89 (D.D.C. 2014) (holding that "the Court owes what is simply a legal interpretation, rather than an application of specialized agency expertise, little deference" and finding that the agency's "conclusion that these [judicial] cases provided support for its decision was, itself, unreasonable.").

1.     **The Delaware Court's Section 271(e)(4)(A)
         Order Does Not Apply to Norwich's Amended ANDA**

There can be no dispute that the Delaware Court's August 10, 2022 order under 35 U.S.C. § 271(e)(4)(A) is directed to Norwich's Original ANDA.  *See AR041-042.*  It provides

---

[3] FDA asserts that "[Norwich] does not argue that FDA's reading of the Patent Orders was itself arbitrary, capricious, or otherwise unlawful."  FDA Br. at 31.  But, prior to receiving the Administrative Record and FDA's Brief, Norwich could not know how FDA had misinterpreted and misapplied the Delaware Court Orders.  Moreover, Norwich explained in its Opening Brief that, because its Amended ANDA has section viii statements in place of Paragraph IV certifications to the HE Patents, the Delaware Court's Order relating to the HE Patents cannot be a basis for a refusal to grant final approval.  *See* Norwich Opening Br. at 22-23.

"that the effective date of any final approval by [FDA] of Norwich's ANDA No. 214369 is to be a date not earlier than the date of expiration of the last to expire of the [HE Patents] (currently October 2, 2029)." AR042 at ¶ 5. The paragraphs leading up to that conclusion leave no doubt that the act of infringement that forms the basis for the order is induced infringement of the asserted HE Patent claims. *See id.* at ¶¶ 1-3. Plainly, therefore, only an ANDA that seeks approval for the HE Indication and contains Paragraph IV certifications to the HE Patents can be the object of the Delaware Court's Section 271(e)(4)(A) Order.

Furthermore, the Delaware Court provided a memorandum expressly delineating the scope of its Section 271(e)(4)(A) Order. *See* AR043-045. "The scope of my ruling is that the HE patents are not invalid, and that the HE indication would infringe the HE patents. Norwich's proposed ANDA has the HE indication." AR044. And "[t]hat Norwich may seek to carve out the HE indication as permitted by 21 U.S.C. § 355(j)(2)(A)(viii) is immaterial to this analysis. That label is not before me." *Id.* Plainly, then, the Delaware Court did not consider its Section 271(e)(4)(A) Order to apply to any amended ANDA without the HE Indication.

Notably, FDA itself recognized the propriety of Norwich amending its ANDA to carve out the HE Indication and convert its Paragraph IV certifications to the HE Patents to section viii statements when FDA tentatively approved Norwich's carved out label and section viii statements. *See* AR367-368 ("your ANDA contains statements under section 505(j)(2)(A)(viii) of the FD&C Act that these are method-of-use patents that do not claim any indication for which you are seeking approval under your ANDA."); ███████████████████████████████ ████████████████████████████████████████████████████ Norwich Opening Br.

at 18 (noting the Use Codes carved out by Norwich's Amended ANDA).[4]  In doing so, FDA

acknowledged that Norwich's Amended ANDA no longer contains the HE Indication and does

not overlap with any patent use code listed by Salix in the Orange Book for the Asserted HE

Patents – U-1481: "reduction in the risk of overt [HE] recurrence" and U-2579: "reduction in a

subject's risk of experiencing a breakthrough overt [HE] episode."  Norwich Opening Br. at 18;

AR367-68 (acknowledging Norwich's section viii statements).

> ### 2.   The Delaware Court's May 17 Order
> ### Cannot be Interpreted to Provide that the Section
> ### 271(e)(4)(A) Order Applies to Norwich's Amended ANDA

Other than its own say-so, FDA offers no basis for its interpretation of the Delaware

Court's May 17 order as saying that the earlier Section 271(e)(4)(A) Order "still stands and

applies to Norwich's post-amendment ANDA."  FDA Br. at 20.  Nor is there any such basis.

The Delaware Court's May 17 order focused on the requirements of Rule 60(b)(5) and

said *nothing* about its Section 271(e)(4)(A) Order somehow applying to Norwich's Amended

ANDA.  *See* AR358.[5]  On the contrary, the Delaware Court explicitly explained that it had

---

[4] "Norwich's Opening Brief" refers to *Norwich Pharms., Inc. v. Becerra*, Civ. No. 23-1611 ECF No. 4-1 ("Memorandum of Points and Authorities in Support of Plaintiff's Motion for a Preliminary Injunction").

[5] FDA and Salix attempt to make hay with Norwich's reference to an "absolute prohibition" in its Rule 60(b) motion brief.  FDA Br. at 31; Salix Br. at 2-3, 8-9, 15, 17.  Norwich was raising the risk that FDA might misapply the Delaware Court's Section 271(e)(4)(A) Order – a risk that has come to pass – and improperly refuse to grant final approval to Norwich's Amended ANDA. Norwich's statement is not any sort of judicial admission as to the effect of the Delaware Court's Section 271(e)(4)(A) Order on the Amended ANDA.  *See, e.g.*, *RSB Spine, LLC v. DePuy Synthes Sales, Inc.*, Civ. No. 19-1515-RGA, 2023 WL 4456874, at *1-*2 (D. Del. July 11, 2023) (rejecting that Defendants' representations were "judicial admissions" because "Defendants, having lost at trial, are certainly not bound by their arguments").

"ruled in Plaintiffs' favor only on the HE indication," and that it had ordered FDA to not approve Norwich's ANDA until expiration "on the patents on which Plaintiffs won," i.e., the HE Patents. AR360.  It went on to reject any post-judgment consideration of the Amended ANDA, stating that "it just seems wrong to me that Defendant can litigate a case through trial and final judgment based on a particular ANDA, and then, after final judgment, change the ANDA to what it wishes it had started with, and win in a summary proceeding."  AR362.[6]

There is *no* basis for FDA's claim that "the May 17 order refusing to modify the judgment [means] that the prior order that FDA not approve the ANDA before the expiration of the relevant patents still stands *and applies to Norwich's post-amendment ANDA*."  FDA Br. at 20 (emphasis added); AR374.  Rather, having correctly ascertained that Norwich's Amended ANDA carved out the HE Indication and contains proper section viii statements to the HE Patents, FDA cannot reasonably contend that the Delaware Court's Section 271(e)(4)(A) Order applies to the Amended ANDA.

## B.  FDA Has Conceded That Norwich's Amended ANDA Meets All Regulatory Requirements for Approval, thus No Discretion Remained

FDA's unambiguous regulations at issue here are clear on their face.[7]  First, the relevant subsection of the regulation dealing with amended patent certifications is titled "*[a]fter finding*

---

[6] Salix has similarly maintained that the Delaware Court could not consider Norwich's carved out label in its Section 271(e)(4)(A) Order, arguing that the court "entered final judgment based on [Norwich's Original] ANDA" and characterizing the issue of infringement as to Norwich's Amended ANDA as a "complex issue [that] cannot be resolved by this Court in summary adjudication . . . ."  *Salix v. Norwich*, ECF No. 213 at 6, 9.

[7] As discussed in Norwich's Opening Brief, a court may only grant deference to an agency's interpretation of its own regulation if that regulation is "genuinely ambiguous . . . even after a court has resorted to all the standard tools of interpretation."  *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019); Norwich Opening Br. at 28-29.  Before concluding that a rule is genuinely

*of infringement*" and provides that "if a *court enters a final decision . . . that includes a finding that the patent is infringed*," the ANDA applicant may convert the Paragraph IV certification to a section viii statement and "amend[] its ANDA such that the applicant is no longer seeking approval for a method of use claimed by the patent."  21 C.F.R. § 314.94(a)(12)(viii)(A) (emphasis added); *see also* FDA Good ANDA Submission Practices Guidance for Industry, FDA-2017-D-6854 at 10 (Jan. 2022) (an applicant after a non-appealed final judgment of infringement "can amend its ANDA to no longer seek approval for a method of use claimed by the patent[.]") (citing 21 C.F.R. § 314.94(a)(12)(viii)(A)).  Second, "[o]nce an amendment for the change [to a section viii statement] has been submitted, the ANDA will no longer be considered to contain a paragraph IV certification to the patent."  21 C.F.R. § 314.94(a)(12)(viii)(A).  And third, the regulation governing the timing of ANDA approvals provides that, upon a conversion of a Paragraph IV certification to a section viii statement, FDA may approve the amended ANDA "immediately."  21 C.F.R. § 314.107(b)(1)(ii); 81 Fed. Reg. 69580, 69624 (Oct. 6, 2016).

FDA and Salix contend incorrectly that the use of "may" in the above-referenced regulation indicates that approval is "permissive rather than mandatory," and that "something else" may require FDA to delay final approval of Norwich's Amended ANDA.  FDA Br. at 32-

---

ambiguous, "a court must exhaust all the 'traditional tools' of construction."  *Id.* at 2415 (citing *Chevron*, 467 U.S. at 843, n.9, as "adopting the same approach for ambiguous statutes").  And, "not all reasonable agency constructions of those truly ambiguous rules are entitled to deference."  *Id.* at 2414.  There is no genuine ambiguity here, and certainly none asserted by FDA, and therefore deference is inapplicable in this case.

33; Salix Br. at 14.[8]  But the regulation enumerates only two potential reasons (set forth in

Section 314.127 and Section 314.107(d)) for delaying final approval of Norwich's Amended

ANDA.  *See* 21 C.F.R. § 314.107(b)(1).[9]  Neither apply here.

First, Section 314.127 provides that an ANDA must meet requirements regarding, *inter*

*alia*, bioequivalence and therapeutic equivalence.  *See* 21 C.F.R. § 314.127.  But here, FDA

conceded that Norwich's Amended ANDA "met the statutory requirements" for approval.  *See*

FDA Br. at 11-12, 19-20 ("the Tentative Approval Letter informed Norwich that its ANDA had

met the statutory requirements[.]"); AR365 ("We have determined your Rifaximin Tablets,

550 mg to be bioequivalent and therapeutically equivalent to . . . Xifaxan[.]").[10]  Thus,

---

[8] As Norwich explained in its Opening Brief, although a regulation containing "may" can
provide the agency some leeway in its actions, if those actions go against the goal of the statute,
then such actions are arbitrary and capricious.  *See* Norwich Opening Br. at 21 (citing *Georgia v.*
*Brooks-LaSure*, 2:22-cv-6, 2022 WL 3581859, at *11-*13 (S.D. Ga. Aug., 19, 2022) (finding
that the Agency's decision to withdraw a project pursuant to its "may" regulation was deemed
arbitrary and capricious because the agency's decision actually took away from the goal of the
statute)).  Here, FDA did not have leeway in its actions (as discussed below), but to the extent
the Court finds that FDA still had leeway in its actions, those actions should be deemed arbitrary
and capricious because, by not approving Norwich's Amended ANDA, FDA's actions have
taken away from the goal of the Hatch-Waxman Amendments, i.e., to allow cheaper generic
drugs to come to market quickly.  *See, e.g.*, *Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30,
41 (D.D.C. 2000) ("the Hatch-Waxman Amendments['] central purpose [is] getting generic
drugs into the hands of patients at reasonable prices–fast."); *Teva Pharms. USA, Inc. v. Novartis*
*Pharms. Corp.*, 482 F.3d 1330, 1344 (Fed. Cir. 2007) ("[a] central purpose of the Hatch-
Waxman Act . . . is to enable competitors to bring cheaper, generic drugs to market as quickly as
possible.").

[9] The regulation refers to "§ 314.125 or § 314.127, as applicable."  21 C.F.R. § 314.107(b)(1).
Section 314.125 is titled "Refusal to approve an NDA" while Section 314.127 is titled "Refusal
to approve an ANDA."  21 C.F.R. §§ 314.125, 314.127.  Thus, only Section 314.127 is relevant
to this case.

[10] Salix argues that Norwich "[did] not even attempt in its motion" to allege that "Norwich could
demonstrate that its ANDA satisfied each of [the statutory requirements for approval]."  Salix Br.
at 14-15.  That is incorrect (*see* Norwich Opening Br. at 20) (discussing TA approval) and at 12-

Section 314.127 cannot support FDA failing to immediately approve Norwich's Amended ANDA under Section 314.107(b)(1)(ii).

Second, Section 314.107(d) provides that FDA may delay approval due to enumerated regulatory "exclusivity" regulations.  21 C.F.R. § 314.107(d).  The specific "exclusivity" provisions referenced here are only Section 314.108 ("New drug product exclusivity") and Section 316.31 ("Orphan-drug Exclusiv[ity]").  *See* 21 C.F.R. § 314.107(d) (citing "the exclusivity provisions in § 314.108" and "the exclusivity provisions in . . . § 316.31").  But FDA has already determined that ███████████████████████████████████████████ ██████████████████████████.  Thus, FDA cannot rely on this provision either to avoid following the requirements of Section 314.107(b)(1)(ii) to immediately approve Norwich's Amended ANDA.

Given that it is uncontested that Norwich's Amended ANDA meets the requirements of Section 314.127 and is not barred from approval by any exclusivity listed in Section 314.107(d), there is no discretion remaining under Section 314.107(b) for FDA to delay approval.  In fact, FDA made clear in the administrative record that the *only* reason it did not grant final approval was its interpretation of the May 17 order to mean that the Section 271(e)(4)(A) Order ███████ ████████████████████████████████████; *see also* AR365 ("we are unable to grant final approval to your ANDA at this time *because of the patent issue* noted below") (emphasis added).[11]  In failing to follows its unambiguous regulations, FDA's actions were arbitrary,

---

13 (discussing that TA Approval notes that "an ANDA is deemed safe and effective by FDA")), and FDA has conceded as much as well.  *See, e.g.*, FDA Br. at 11-12, 19-20.

[11] To the extent FDA alleges that there is "something else" that could prevent approval (FDA Br. at 33), undisclosed and non-regulatory reasons are the very definition of arbitrary decision-

capricious, and contrary to law and should be reversed by this Court. *See, e.g.*, *HealthAlliance Hosps., Inc. v. Azar*, 346 F. Supp. 3d 43, 60 (D.D.C. 2018) (holding that the agency's decision was "arbitrary and capricious" because the agency violated its "unambiguous" regulation when the agency calculated Medicaid adjustments); *Ingram Barge Co. v. United States*, 884 F.2d 1400, 1405 (D.C. Cir. 1989) (finding that the agency could not delay issuing a certificate "without contravening its own regulation" and the agency's "departure" from "its own regulation . . . would be arbitrary and capricious"); *see also* Norwich Opening Br. at 21-25. Thus, FDA should be ordered to immediately approve Norwich's Amended ANDA under the clear and unambiguous requirements set forth in Section 314.107(b)(1)(ii). Once again, FDA's and Salix's attempts to argue that FDA's actions were not arbitrary and capricious because FDA was simply complying with the Delaware Court Orders (FDA Br. at 30; Salix Br. at 12-13) is based on a misreading of the Orders. *See supra* at Sec. I.A. Their citations to *GTE Sylvania*, *Lykins*, *McLaughlin*, and *Concepcion* (FDA Br. at 30; Salix Br. at 12-13) therefore hold no weight.

### C. Norwich Is Not Appealing to The Federal Circuit The Delaware Court Order Finding That Norwich's Original ANDA Infringed Valid He Patents

There is no dispute that Norwich has foregone any appeal of the Delaware Court's determination that the HE Patents are valid and infringed by the HE Indication in Norwich's Original ANDA, and that Norwich amended its ANDA to no longer seek approval for the HE Indication, converting its Paragraph IV certifications to the HE Patents to section viii statements. *See* ████████████████████████████████████████████████████

---

making. *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions. . . . But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law.").

█████████████████████████████████████████████████████████████ ;

AR367-68 ("your ANDA contains statements under section 505(j)(2)(A)(viii) of the FD&C Act

that these are method-of-use patents that do not claim any indication for which you are seeking

approval under your ANDA.");  █████████████████████████████████████

████████████████████████████████████████████████. Thus,

following the clear directives set forth in its unambiguous regulations, FDA should have

immediately granted Norwich's Amended ANDA final approval. *See supra* at I.B.[12]

    FDA and Salix argue that FDA's regulation does not apply here because an appeal is

pending in the patent case relating to the Delaware Court Orders.[13] *See* FDA Br. at 18-19; Salix

Br. at 15.  That misunderstands the scope of Norwich's appeal to the Federal Circuit.  Norwich is

not appealing the underlying findings or judgment regarding infringement by the HE Indication

---

[12] Despite ████████████████████████████████████████████████████████████
████████████████ FDA appears to not have considered it before
rendering its decision, which itself is arbitrary and capricious.  *See, e.g., Fisher v. Pension
Benefit Guar. Corp.*, 151 F. Supp. 3d 159, 167-68 (D.D.C. 2015) (finding that the Agency
"wholly ignore[d] whether and how [the regulation] might apply to Fisher's claim" and "the
[Agency's] decision, however, did not discuss or even mention the regulation," and thus the
Agency's decision "must be set aside"); *Teva Pharms. USA, Inc. v. FDA*, 441 F.3d 1, 4 (D.C.
Cir. 2006) (vacating and remanding with instructions to vacate FDA's arbitrary and capricious
decision that provided "no explanation" and "fail[ed] to reconcile its decision in the case with its
own regulations."); *Noble Energy, Inc. v. Salazar*, 671 F.3d 1241, 1245-46 (D.C. Cir. 2012)
(vacating and remanding with instructions to vacate an agency decision, which the court found
lacked "any consideration of the regulations" and "contain[ed] no hint of the agency's
reasoning").

[13] ████████████████████████████████████████████████████████████████████
████████ FDA accepted these section viii statements.  *See, e.g.,* AR367-68.  By accepting the
section viii statements, FDA accepted the carve out and amendments, and therefore FDA appears
to have waived its argument that Norwich had not met the requirements of the regulation.

in Norwich's Original ANDA and the validity of the HE Patents.[14]  *See* AR258-59 (Norwich's

Notice of Appeal) (Norwich "hereby appeals . . . the August 10, 2022 Final Judgment . . . to the

extent that it bars [FDA approval] . . . when the ANDA does not contain a Paragraph IV patent

certification . . . and the [60(b)] Memorandum Order"); *see also* Norwich Opening Br. at 17

("Norwich has not, and does not intend to, appeal the district court's holdings that Norwich's

Original ANDA infringes the Asserted HE Patents or that the HE Patents had not been shown

invalid.").  Norwich's limited Federal Circuit appeal leaves the merits of the Delaware Court's

final judgment with respect to infringement by the HE Indication in Norwich's Original ANDA

and validity of the HE Patents intact, rendering that decision final[15] and availing Norwich of the

procedures offered under Section 314.94(a)(12)(viii)(A).  *See* 21 C.F.R. § 314.94(a)(12)(viii)(A)

("An applicant who has submitted a paragraph IV certification and is sued for patent

infringement must submit an amendment to change its certification if a court enters a final

decision from which no appeal has been or can be taken[.]").[16]

---

[14] Just to clarify the record, it is *Salix*, not *Norwich* who filed the opening brief in the Federal Circuit on July 24, 2023.  *See* FDA Br. at 18.

[15] Issues left unappealed are considered final.  *See, e.g.*, *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1114 (Fed. Cir. 1996) (stating that the issue of validity, which was sustained on post-trial motions and not appealed, "was finally decided as between these parties" and that "the policy of finality is of great weight when an issue was fully and fairly tried and decided and not appealed"); *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341-42 (Fed. Cir. 2013) (stating that, because the issue of validity of certain method claims was not appealed, "it is final and conclusive").

[16] Salix contends, *inter alia*, that it has also appealed the Delaware Court Orders.  *See* Salix Br. at 15.  Salix succeeded on its allegations that the HE Indication in Norwich's Original ANDA infringed the HE Patents and that the HE Patents are valid.  As the prevailing party, Salix cannot and is not appealing those issues, and its appeal is irrelevant to Norwich's ability to proceed with this suit.

**II.      THIS COURT HAS SUBJECT MATTER
          JURISDICTION OVER THE INSTANT SUIT, AND NORWICH
          HAS STANDING BECAUSE FDA CAUSED NORWICH'S INJURY**

Failing to address the straightforward application of FDA's unambiguous regulation,

FDA and Salix attempt to argue that, despite FDA directly causing Norwich's injury, Norwich

somehow does not have standing and jurisdiction is improper.  These arguments are incorrect

and inconsistent with the record and case law.

**A.  FDA Directly Caused Norwich's
     Injury, and Therefore Norwich Has Standing**

FDA acknowledges that "generic drugs can be marketed in the United States *only* with

FDA's approval."  FDA Br. at 11 (citing 21 U.S.C. § 355(a)) (emphasis added).  Yet, despite

being the "only" party that can grant approval to Norwich's Amended ANDA, FDA contends

that FDA's refusal to do so did not "cause" Norwich's injury because FDA was simply following

the Delaware Court Orders.  FDA Br. at 10, 22-24.  FDA is wrong for at least two reasons.

First, the argument assumes that the Delaware Court Orders actually apply to Norwich's

Amended ANDA.  They do not, as discussed above and in Norwich's Opening Brief.  *See*

Opening Br. at 21-23, 25; *supra* at Sec. I.A.

Second, Article III standing has three elements: (1) an actual or imminent "concrete and

particularized" injury; (2) that is "caused by, or fairly traceable to an act that the litigant

challenges in litigation"; and (3) "redressable by the court."  *Fla. Audubon Soc. v. Bentsen*, 94

F.3d 658, 663 (D.C. Cir. 1996) (en banc).  FDA focuses solely on the second element: causation.

FDA Br. at 23-24.[17]  Causation "examines whether it is *substantially probable* . . . that the

---

[17] Although FDA does not challenge Norwich under the injury or redressability prongs of
Article III standing, Norwich plainly satisfies both.  Norwich is injured because FDA should

challenged acts of the defendant, not of some absent third party, will cause the particularized injury of the plaintiff." *Fla. Audubon*, 94 F.3d at 663 (emphasis added); *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017) (Article III standing "does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiffs' injuries; it requires only that those injuries be 'fairly traceable' to the defendant."); *see also Orangeburg, S.C. v. FERC*, 862 F.3d 1071, 1080 (D.C. Cir. 2017) (finding the causation element satisfied because "the existence of . . . an equally important player in the story does not erase [the agency's] role") (citing numerous examples of finding causation against one of multiple causes).

Here, FDA is the only entity that can approve Norwich's Amended ANDA, and it is FDA that ignored its own regulations and misinterpreted the Delaware Court Orders to deny such approval. Any (even mistaken) role the Delaware Court also played in the causal story does not negate that Norwich's injury is "fairly traceable" to FDA. *See, e.g.*, *Orangeburg*, 862 F.3d at 1080 (D.C. Cir. 2017). Indeed, "[w]hen a petitioner itself is the object of the challenged agency action," as Norwich is here, "there usually is little doubt of causation." *Exhaustless Inc. v. FAA*, 931 F.3d 1209, 1212 (D.C. Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992).) Subject matter jurisdiction thus squarely vests in this Court.

The cases cited by FDA are unavailing. In *Common Cause*, there was no standing because the party that caused the injury (the Senate) was immunized from suit and was thus an "absent third party." *See* FDA Br. at 23 (citing *Common Cause v. Biden*, 748 F.3d 1280, 1284-

---

have approved Norwich's Amended ANDA "immediately," and every day that Norwich does not receive approval causes harm to Norwich, including economic harms from being withheld from being the first generic to come to market. *See* Norwich Opening Br. at 30-35. Further, redress can be accomplished in this jurisdiction once the Court corrects FDA's action and orders FDA to approve Norwich's Amended ANDA.

85 (D.C. Cir. 2014).).  Here, FDA is not immune from suit, and as the party that prevented

Norwich from coming to market, it is both the cause of and the party that will redress Norwich's

injuries.  *See Dynalantic Corp. v. Dep't of Def.*, 115 F.3d 1012, 1017 (D.C. Cir. 1997)

("Typically, redressability and traceability overlap as two sides of a causation coin[.]").  In

*Vapor Tech.* (FDA Br. at 23-24), the Maryland District Court had found that FDA's guidance

violated the APA and issued an injunction ordering FDA to impose a new compliance deadline.

*Vapor Tech. Ass'n v. FDA*, 977 F.3d 496, 499 (6th Cir. 2020).  The Sixth Circuit affirmed that

there was no standing to challenge this injunction in a suit against FDA in the Eastern District of

Kentucky because the Maryland District Court, not FDA, issued the injunction and thus caused

the injury to plaintiffs.  *See id.* at 501-02.  Here, by contrast, FDA caused Norwich's injury by

incorrectly interpreting the Delaware Court Orders and failing to follow its unambiguous

regulations.  Thus, Norwich's injury is not "a function of a judicial ruling," (FDA Br. at 23) but

of FDA's *misreading* of the judicial ruling.

### B. Norwich's Litigation Against FDA Is Not A "Collateral Attack" on The Delaware Court

Norwich's suit is not a "collateral attack," nor does it trigger "collateral estoppel" or

concerns about "comity."  *See* FDA Br. at 10, 24-26; Salix Br. at 16-18.  These principles are

inapplicable for the simple reason that Norwich is not seeking to have this Court overrule any

order by the Delaware Court.  Rather, Norwich is asking this Court to correct FDA's incorrect

interpretation of those orders and its failure to follow its unambiguous regulations and approve

Norwich's Amended ANDA.  *See supra* at Sec. I.A, I.B.

FDA asserts that this suit is a collateral attack on the Delaware Court because it "ordered

FDA to *delay* final approval of the Rifaximin ANDA" while "Norwich is asking this Court to

order final approval *immediately.*"  FDA Br. at 25-26 (emphasis in original).  This argument

assumes, of course, that the Delaware Court Orders apply to Norwich's Amended ANDA, which they do not. *Supra* at Sec. I.A. Rather, and as discussed above, the Delaware Court Orders do not pertain to Norwich's Amended ANDA, which was "not before" the Delaware Court. *See* AR043-045, AR358-362; *supra* at Sec. I.A. And, Norwich is seeking a determination from this Court that FDA failed to follow its clear and unambiguous regulations in failing to approve Norwich's Amended ANDA, which again is not a collateral attack on the orders.

The cases cited by FDA are unavailing. *See* FDA Br. at 23-26. *Celotex, Cigar Association*, *McNeil*, *Alley*, *Stone*, and *37 Associates* all involved challengers in one court requesting either relief from a separate district court or requesting to overrule a separate district court, neither of which applies here. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995); *Cigar Ass'n of Am. v. FDA*, 411 F. Supp. 3d 1, 3 (D.D.C. 2019); *McNeil v. Brown*, Civ. No. 17-cv-2602 (RC) 2018 WL 4623057, at *7 (D.D.C. Sept. 26, 2018); *Alley v. U.S. Dept. of Health & Human Servs.*, 590 F.3d 1195, 1203-04, 1209-10 (11th Cir. 2009); *Stone v. Dep't of Hous. & Urb. Dev.*, 859 F. Supp. 2d 59, 64 (D.D.C. 2012); *37 Assocs., Tr. for the 37 Forrester St., SW Tr. v. REO Constr. Consultants, Inc.*, 409 F. Supp. 2d 10, 13-14 (D.D.C. 2006). Norwich is not challenging or seeking an exception to the Delaware Court Orders, but is instead requesting that this Court correct FDA's incorrect interpretation of those Orders to Norwich's Amended ANDA and FDA's failure to follow its own unambiguous regulations. As such, no concerns raised in the cases cited by FDA are present here. Further, *Morgan Drexen* and *Richards* are irrelevant. FDA Br. at 26. Plaintiffs in *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau* raised a constitutionality defense against the agency that could have been raised in a parallel suit in the Central District of California. *See* 785 F.3d 684, 687 (D.C. Cir. 2015). Here, Norwich cannot raise FDA's improper interpretation and implementation of the Delaware Court Orders because,

as FDA acknowledges, FDA is the only entity that can approve Norwich's ANDA. FDA Br. at

11. *Richards v. Delta Air Lines, Inc.* is entirely irrelevant because it involved a class action in

which the requested remedy of monetary damages was sufficient to preclude the need for

injunctive relief.  *See* 453 F.3d 525, 531 n.6 (D.C. Cir. 2006).  The only relief Norwich can seek

against FDA is mandatory injunctive relief through this APA action.

Salix's cases regarding "collateral estoppel" and the "principles of comity" are equally

distinguishable.  *See* Salix Br. at 16-18.  In *Yamaha*, one of the parties asked this Court to re-

litigate issues decided years prior in the Central District of California.  *Yamaha Corp. of Am. v.*

*United States*, 961 F.2d 245, 249, 252 (D.C. Cir. 1992).  Norwich is not requesting any re-

litigation of the merits of the Delaware Court Orders but only that this Court correct FDA's

incorrect interpretation of those orders as applying to Norwich's Amended ANDA and FDA's

failure to follow its own clear regulations.  *Ellison* involved attempts to appeal a state case

concerning domestic relations to a federal court and is irrelevant here.  *Ellison v. Sadur*, 700 F.

Supp. 54, 56-57 (D.D.C. 1988).  *Bravo-Fernandez* and *Consumers Union* (Salix Br. at 17-18)

likewise are inapplicable because – as reiterated repeatedly – Norwich is not appealing the

Delaware Court's decision that the HE Indication in Norwich's Original ANDA infringes the

valid HE Patents.  Further, *Allen v. McCurry* (Salix Br. at 16) recognizes that "the concept of

collateral estoppel cannot apply when the party against whom the earlier decision is asserted did

not have a full and fair opportunity to litigate that issue in the earlier case."  449 U.S. 90, 95

(1980) (internal quotations omitted).  In contrast to the *Allen* case, collateral estoppel cannot be

said to apply here because Norwich did not have "a full and fair opportunity" to litigate against

FDA that Norwich's Amended ANDA should have been approved because FDA was not a party

to the Delaware Court and Norwich did not even have a cause of action until FDA's erroneous

failure to approve Norwich's Amended ANDA.

In sum, the allegations of "collateral attack," "collateral estoppel," and "comity" rely on

the faulty premise that the Delaware Court Orders apply to Norwich's Amended ANDA.  They

do not.  Moreover, Norwich is not seeking to overturn the Delaware Court Orders here but has

instead brought an APA challenge to FDA's incorrect interpretation of the Delaware Court

Orders and FDA's failure to follow its own clear and unambiguous regulations.

### III.       AN APA ACTION IS APPROPRIATE, AND NORWICH'S APPEAL TO THE FEDERAL CIRCUIT DOES NOT PREVENT JUDICIAL REVIEW HERE

FDA also argues that "[b]ecause success on direct appeal would afford Norwich *the same*

*relief* it seeks here, that alternative remedy is more than adequate to displace APA review."  FDA

Br. at 27 (emphasis added).  But Norwich does not seek, and indeed cannot obtain, the same

relief from the Federal Circuit as it seeks from FDA.  Again, Norwich's suit here seeks

correction of FDA's incorrect interpretation of the Delaware Court Orders and failure to follow

its own unambiguous regulations.  If Norwich cannot obtain such relief from this Court,

however, then the last remaining course of action for its Amended ANDA to come to market is

to ask the Federal Circuit to amend the Delaware Court Orders to make more explicit that FDA

can approve Norwich's Amended ANDA.  This is very different relief, even if it would

ultimately lead to approval of the Amended ANDA.  *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110,

139 (D.D.C. 2018) ("The Court agrees that Plaintiffs could have brought a habeas claim, but it

disagrees that the possibility of habeas relief precludes Plaintiffs' APA claims.").

Moreover, the Supreme Court has clarified that for alternative remedies, courts should

not "defeat the central purpose of providing a broad spectrum of judicial review of agency

action."  *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  And the D.C. Circuit has stated

that an alternative remedy only precludes APA review if there is "clear and convincing evidence of a contrary legislative intent" to preclude APA review. *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 396 F.3d 1265, 1270 (D.C. Cir. 2005) (internal quotations omitted) (analyzing the legislative history of the relevant statute and finding no legislative history or text precluding an APA action). No such alternative remedy exists here, and certainly none requiring the level of depth and analysis requited by law. FDA and Salix's arguments to the contrary would defeat judicial review of FDA's actions.

FDA cites 28 U.S.C. § 1295(a)(1) as "providing for appeal to the Federal Circuit in all patent cases," incorrectly suggesting that such an appeal comprises an "alternate remedial scheme" of which Norwich should avail itself. FDA Br. at 28. This is not a patent suit, however, but a challenge to FDA's erroneous interpretation of the Delaware Court Orders and failure to follow its own unambiguous regulations to approve Norwich's Amended ANDA. APA review is therefore appropriate. *See supra* at Sec. I.A, I.B. "[T]he APA creates a basic presumption of judicial review [for] one 'suffering legal wrong because of agency action[.]'" *MediNatura, Inc. v. FDA*, 496 F. Supp. 3d 416, 444 (D.D.C. 2020), *aff'd*, 998 F.3d 931 (D.C. Cir. 2021) (internal citation omitted) (quoting 5 U.S.C. § 702). Indeed, "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967) (also noting that this concept has "been reinforced by the enactment of the Administrative Procedure Act, which embodies the basic presumption of judicial review"), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977) (abrogated on other grounds).

In fact, the presumption in favor of judicial review "is so embedded in the law that it applies even when determining the scope of statutory provisions specifically designed to limit

judicial review." *Make The Rd. New York v. Wolf*, 962 F.3d 612, 624 (D.C. Cir. 2020)

(collecting cases).  This Court has noted that "[the] presumption applies even where . . . the

statute *expressly prohibits* judicial review—in other words, the presumption dictates that such

provisions must be read narrowly." *El Paso Nat. Gas Co. v. United States*, 632 F.3d 1272, 1276

(D.C. Cir. 2011) (emphasis added).  In addition, because the presumption favoring

interpretations of statutes to allow judicial review of administrative action is so well-settled,

Congress is assumed to "legislate[ ] with knowledge of it." *Kucana v. Holder*, 558 U.S. 233,

251-52 (2010) (internal quotations and citations omitted).

FDA's reliance on *Avadel* is misplaced.  *See* FDA Br. at 27-29 (citing *Avadel CNS*

*Pharms., LLC v. Becerra*, No. 22-02159, 2022 WL 16650467, at *6 (D.D.C. Nov. 3, 2022)).

*Avadel* addressed a different scenario giving rise to a materially different APA challenge.  In

*Avadel*, FDA determined that an applicant's section viii patent statement for a method of use

patent listed in the Orange Book was "inappropriate" and required the applicant to instead submit

a Paragraph IV patent certification "because its application seeks approval of a condition of use

that is claimed by the [patent], as described by the [patent] use code." *Id*. at *3 (internal

quotations omitted).  The applicant filed an APA action challenging FDA's decision.  *Id*.

However, the applicant concurrently asserted a counterclaim under the FD&C Act in a co-

pending patent case to delist the same patent from the Orange Book.  *Id*. at *4.  This Court held

that the FD&C Act set forth a specific means for patent delisting that reflected "clear and

convincing evidence of legislative intent to create a special, alternative remedy and thereby

bar[red] APA review." *Id*. at *6 (internal quotations omitted).

Here by contrast, FDA has accepted Norwich's section viii patent statement to the HE

Patents and agreed that Norwich's Amended ANDA removed the HE Indication.  Norwich seeks

final approval of its Amended ANDA.  It does not seek to delist a patent.  The FD&C Act neither

bars Norwich from bringing this APA challenge nor creates any "special, alternative remedy."

The opposite is true.  As discussed, the FD&C Act and FDA's regulations expressly authorize

the submission of a section viii statement, even after a finding of infringement, and immediate

approval of applications containing the same.  *See, e.g.*, *supra* at Sec. I.B.  Neither the patent

delisting scheme nor the general discussion of the Hatch-Waxman framework for addressing

unsuccessful Paragraph IV challenges in *Avadel* applies to Norwich's Amended ANDA.

Therefore, the APA is an appropriate means for challenging FDA's wrongful application of the

Delaware Court Orders to Norwich's Amended ANDA and its failure to follow its unambiguous

regulations.

FDA next further attempts to rely upon 5 U.S.C. § 704 (FDA Br. at 27), which provides

that agency actions are reviewable under the APA provided there is "no other adequate remedy

in a court[.]"  5 U.S.C. § 704.  But Section 704 and the case law cited by FDA regarding this

"other adequate remedy" are inapplicable here.  In the *Citizens* case (FDA Br. at 27), there was

an "express private right of action," under the Freedom of Information Act ("FOIA"), allowing

district courts to review an agency's decision to withhold records.  *Citizens for Resp. & Ethics in

Washington v. United States Dep't of Just.*, 846 F.3d 1235, 1245 (D.C. Cir. 2017).  And, the D.C.

Circuit went further and clarified that "no one should understand our decision as "assum[ing],

categorically,—i.e., outside the FOIA context—that an alternative remedy will preclude APA

relief[.]"  *Id.* at 1245-46 (internal quotations omitted).  Yet, FDA ignores the warning in both

*Avadel* and *Citizens* (FDA Br. at 27-29) that "[c]ourts must . . . avoid lightly 'constru[ing]

[Section 704] to defeat the [APA's] central purpose of providing a broad spectrum of judicial

review of agency action.'"  *Avadel,* 2022 WL 16650467, at *6; *Citizens*, 846 F.3d at 1244.  The

*Women's Equity* case is similarly inapposite (FDA Br. at 29) because Congress provided only one possible remedy for the cause of action raised. *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 751 (D.C. Cir. 1990) (emphasis added). There is no such limitation of relief here. FDA's appeal to *Coker v. Sullivan*, 902 F.2d 84 (D.C. Cir. 1990), is likewise misplaced. *See* FDA Br. at 29. As the court recognized there, "plaintiffs nonetheless lack[ed] congressional authorization" to bring an action under APA because the statute explicitly guaranteed an alternative of a "fair hearing before a state administrative agency," and it is the "states [that] are the immediate cause of the injuries[.]" *Coker*, 902 F.2d at 88-90 (internal quotations omitted). This simply does not apply here.

Finally, FDA and Salix's attempts (FDA Br. at 33-34; Salix Br. at 10-11) to cite to various authority to argue that FDA was "bound" to follow district court orders ignores that the statutes, regulations, and court opinions they rely on concern Paragraph IV certifications, not section viii statements, and are therefore irrelevant. *See, e.g.*, 21 C.F.R. 314.94(a)(12)(viii)(A) ("Once an amendment for the change [to a section viii statement] has been submitted, the ANDA will no longer be considered to contain a paragraph IV certification to the patent."); *see also Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1361 (Fed. Cir. 2003) ("[A] certification need not be provided for a patent claiming a use for which the ANDA applicant is not seeking approval[.]"); *TorPharm, Inc. v. Thompson*, 260 F. Supp. 2d 69, 73 (D.D.C. 2003) ("There is, however, an alternative to the paragraph IV certification, known as a 'section viii statement[.]'"), *aff'd sub nom. Purepac Pharm. Co. v. Thompson*, 354 F.3d 877 (D.C. Cir. 2004). In doing so, FDA and Salix ignore that Paragraph IV certifications and section viii statements are "alternatives" (*see Torpharm*, 260 F. Supp. 2d at 73) that do not exist at the same time for method-of-use patents (*see* 21 C.F.R. § 314.94(a)(12)(viii)(A) ("once an amendment for the

change [to a section viii statement] has been submitted, the ANDA will no longer be considered

to contain a paragraph IV certification")).  Their arguments here would render section viii

statements a nullity.

First, FDA's cited statute and regulation concern only patent certifications (FDA Br. at

33 (citing 21 U.S.C. § 355(j)(5)(B)(iii)(II)(bb) and 21 C.F.R. § 314.107(b)(3)(iv)), but Norwich

already cited the proper statute and regulation concerning section viii statements.  *See* Norwich

Opening Br. at 12 (citing 21 U.S.C. § 355(j)(5)(A) and  21 C.F.R. § 314.107(b)(1)(ii)).  Second,

FDA and Salix's cited case law (FDA Br. at 33-34; Salix Br. at 10-11 (citing *In re Omeprazole*,

*Apotex*, *Ortho-McNeil*, *AstraZeneca*, and *Mylan Labs.*[18])) pertain to Paragraph IV certifications

for formulation patents rather than section viii statements for method-of-use patents.[19]  These

cases demonstrate the uncontested concept that, when a party maintains a Paragraph IV

certification and is found to infringe formulation patents, courts can enter Section 271(e)(4)(A)

---

[18] *Mylan Labs.* does discuss 21 C.F.R. § 314.94(a)(12)(viii)(A).  *See Mylan Labs., Inc. v. Thompson*, 389 F.3d 1272, 1283 (D.C. Cir. 2004).  As discussed in Norwich's Opening Brief, however, prior to 2015 this regulation did not expressly provide that an applicant could file a section viii statement after a finding of infringement.  *See* Norwich Opening Br. at 24. Moreover, FDA's actions in delaying approval until certain patents expire only tracks the first part of the regulation – "the applicant must certify . . . that the patent will expire on a specific date" – while Norwich followed the direction of the second part of the regulation – "or, with respect to a patent claiming a method of use," the applicant may file a section viii statement.  21 C.F.R.  § 314.94(a)(12)(viii)(A).  FDA should be required to follow the second part of the regulation in making an approval determination with respect to Norwich's Amended ANDA. FDA's statement that somehow "FDA is bound" to follow the district court's order per *Mylan Labs.* (FDA Br. at 34) ignores this distinction.

[19] FDA and Salix also rely on *Vanda* and focus on the quotation that "FDA is not entitled to set an approval date prior to the expiration of a patent that has been found to be infringed under § 271(e)(4)(A)[.]"  Salix Br. at 10; FDA Br. at 34 (citing *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117 (Fed. Cir. 2018)).  *Vanda* involved a Paragraph IV certification (not a section viii statement) to a method-of-use patent, and that case concerned whether late-listed patents could be the proper subject of a Section 271(e)(4)(A) order and is therefore irrelevant.

orders that delay FDA from granting final approval until a date certain.  But, these cases have no

relevance to the approval of Norwich's Amended ANDA, which does not have Paragraph IV

certifications to the HE Patents, but rather section viii statements and a carved out label that FDA

agrees does not contain the HE Indication.  AR367-68.  Further, Salix's quotation from *Valeant*

(Salix Br. at 11, n.2) is irrelevant because it is dicta discussed in the context of a venue dispute.

IV.     **FDA HAS PREVIOUSLY ENDORSED THE
         IMPORTANT POLICY GOALS OF SECTION VIII STATEMENTS**

FDA argues that because "Hatch Waxman navigates numerous competing policy

objectives," the policy goals underlying section viii statements are irrelevant.  FDA Br. at 35-36.

That most (if not all) legislation involves competing goals does not discount the goals of

constituent parts, and other than relying on its erroneous interpretation of the Delaware Court

Orders, FDA fails to offer any competing policy goals that would be thwarted by the approval of

Norwich's Amended ANDA.

Moreover, FDA ignores its previous statements regarding the importance of section viii

statements.  For instance, when FDA drafted its 2024 Legislative Proposals in light of

*GlaxoSmithKline LLC v. Teva Pharm. USA, Inc.,* No. 18-1976 (Fed. Cir.), FDA expressly

recognized the importance of section viii statements and that section viii statements are "an

important statutory marketing pathway that allows earlier generic drug market entry for

conditions of use of a drug not protected by a patent" and reflect "the careful balance struck by

the Hatch-Waxman Amendments regarding labeling carve-outs[.]"  FDA, *Summary of FY 2024

Legislative Proposals* at 3.[20]  FDA has further acknowledged that "[t]he section viii pathway is

an integral component of a complex statutory scheme designed to encourage market entry by

---

[20] https://www.fda.gov/media/166049/download (last visited July 26, 2023).

generic-drug manufacturers as soon as patents allow." Brief for U.S. as Amicus Curiae at *20,

*Teva Pharms. USA, Inc. v. Glaxosmithkline LLC*, 143 S. Ct. 2483 (2023) (No. 22-37), 2023 WL

2717391.

> Indeed, FDA has asserted that:

> [t]he section viii pathway enables manufacturers to market generic versions of a brand-name drug where the drug itself is not patented and only some of its FDA-approved uses are claimed by a method-of-use patent. By authorizing FDA to approve an ANDA in those circumstances, Congress necessarily contemplated that one patented use will not foreclose marketing a generic drug for other unpatented ones.

*Id.* at *14 (internal citations and quotation omitted). Yet that is exactly what FDA is doing here

through its incorrect interpretation of the Delaware Court's orders and its failure to follow its

unambiguous regulations.

As Norwich stated in its Opening Brief, Norwich is the *only* applicant in a position to

freely launch its generic product before January 1, 2028, bringing significant savings to patients

and payors. *See* Norwich Opening Br. at 31. If not for Norwich's efforts invalidating the IBS-D

and polymorph patents and carving out the HE Indication, patients would not have access to a

less expensive generic rifaximin 550 mg tablet for treatment of IBS-D for at least another five

*years*. *See id.* at 17-18, 31. Thus, as FDA has recognized, the very purpose of section viii

statements would be served by approving Norwich's Amended ANDA without the HE

Indication. FDA's failure to act accordingly should be reversed by this Court.

V.      **THIS COURT DOES NOT NEED TO
        ANALYZE THE PRELIMINARY INJUNCTION FACTORS**

Other than deciding the merits, this Court does not need to analyze the other preliminary

injunction factors because Norwich's Motion for a Preliminary Injunction was consolidated with

a full consideration of the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). *See* June

18, 2023 Minute Order in *Norwich v. Becerra et al.*; *Mar. for Life v. Burwell*, 128 F. Supp. 3d

116, 124 (D.D.C. 2015) (noting that the court "do[es] not need to analyze the typical preliminary

injunction factors" after "consolidat[ing] the preliminary injunction with trial on the merits on all

claims").  Nonetheless, any further delay by FDA in granting final approval to Norwich's

Amended ANDA continues the substantial and irreparable harm Norwich is already suffering.

*See, e.g.*, Norwich Opening Br. at 30-35.  With each passing day that FDA improperly withholds

final approval of Norwich's Amended ANDA, Norwich is foreclosed from launching its generic

rifaximin product and from earning and maintaining generic market share for the use of rifaximin

to treat IBS-D.  *Id.*

Salix's assertion that Norwich has not shown "any material hardship" from market delay

is without merit.  Salix Br. at 25.  Norwich is positioned to enjoy significant benefits as the first

company to market a generic rifaximin product for treating IBS-D.  *See, e.g.*, Norwich Opening

Br. at 30-35.  If FDA continues to improperly withhold final approval of Norwich's ANDA, it

will be impossible for Norwich to make up for lost opportunities to fill generic prescriptions for

treating IBS-D.  *Id.*  It is imperative that FDA grant final approval immediately, in accordance

with its regulations, to reduce the continuing, material harm Norwich suffers from being

prevented from realizing these benefits.

Further, the balance of equities favors Norwich.  Salix argues that it "would be harmed

irreparably" if Norwich's Amended ANDA is approved.  Salix Br. at 25.  But Salix ignores that

the Delaware Court has already deemed its asserted IBS-D patents invalid.  AR042 at ¶ 4.

Norwich cleared a path to market by proving that Salix's patents directed to a crystalline form of

the rifaximin drug substance and the IBS-D indication are invalid, and Norwich's Amended

ANDA only seeks approval for the use of rifaximin to treat IBS-D.  Although Salix's revenues

may decline, Salix does not have valid patent rights to preclude Norwich from entering the

generic rifaximin market for the treatment of IBS-D.  *See id.*  Salix has already benefitted

inequitably from FDA's improper refusal to grant Norwich's Amended ANDA final approval.

*See, e.g.*, Norwich Opening Br. at 30-35.  Moreover, the harm Salix alleges if the Delaware

Court's decision is overturned at the Federal Circuit (Salix Br. at 25-26) is purely speculative.

The Delaware Court's decision has not been overturned; Salix's patents directed to a method of

use concerning the treatment of IBS-D and a polymorph form of rifaximin are invalid.  AR042 at

¶ 4.

Norwich shares FDA's concern for the public interest in correctly implementing "the

Hatch-Waxman process according to Congress's design."  FDA Br. at 38.  But FDA has not

acted in accordance with that design.  *See, e.g.*, *supra* at Sec. IV.  Norwich also disagrees with

FDA's conclusion that the balance of equites do not favor Norwich.  *See* FDA Br. at 38.  FDA

has incorrectly interpreted the Delaware Court Orders as applying to Norwich's Amended

ANDA and flouted its own unambiguous regulations.  *See supra* at Sec. I.A, I.B.  Prompt

resolution of this action in Norwich's favor promotes FDA and the public's interest in correctly

implementing the Hatch-Waxman process and in the establishment of clear rules to guide the

generic pharmaceutical industry.  *See, e.g.*, Norwich Opening Br. at 35-39.

## VI.   THIS COURT SHOULD DENY FDA'S REQUEST FOR REMAND FOR FAILING TO FOLLOW ITS REGULATIONS, AND, AT MOST, GRANT A LIMITED REMAND PERIOD CONCERNING FIRST-FILER EXCLUSIVITY

### A.   FDA Failed To Properly Consider Its Regulations and Should Not Be Given A Second Bite of The Apple When The Conclusion Is Clear

This Court should not grant the FDA's request for remand on its decision relating to the

Delaware Court Orders but should instead order FDA to immediately approve Norwich's

Amended ANDA.  The Amended ANDA is "immediately" approvable pursuant to FDA's

unambiguous regulations, and none of the considerations that typically support remand apply. Moreover, this Court has previously awarded the type of relief Norwich requests.

The APA grants courts the power to "compel agency action unlawfully withheld or unreasonably delayed."[21]  5 U.S.C. § 706(1).  Thus, a court may compel an "agency 'to take a *discrete* agency action that it is *required to take*.'"  *Sandoz, Inc. v. Leavitt*, 427 F. Supp. 2d 29, 34 (D.D.C. 2006) (emphasis in original) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).  When a court is justified in compelling agency action, "its order must be limited to directing the agency to 'perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act'."  *Id.* (quoting *Norton*, 542 U.S. at 64).

Under FDA's unambiguous regulations, Norwich's Amended ANDA is "immediately" approvable.  *See, e.g.*, Norwich Opening Br. at 21-25.  Therefore, this Court should declare that FDA's decision to withhold final approval from Norwich's Amended ANDA is arbitrary, capricious, and contrary to law.  *See id.* at 21-25; *supra* at Sec. I.B.

FDA's decision to grant or withhold final approval to Norwich's Amended ANDA is binary.  FDA's decision to withhold final approval is based on a plainly incorrect interpretation of the Delaware Court Orders and failure to follow unambiguous regulations; correction of those errors would compel FDA to grant final approval to Norwich's Amended ANDA.  Remand on this issue is not appropriate because the outcome is certain.  *See A.L. Pharma, Inc. v. Shalala*, 62 F.3d 1484, 1489 (D.C. Cir. 1995) (courts do not remand where there is "not the slightest uncertainty" as to the outcome of an agency proceeding); *see also McDonnell Douglas Corp. v.*

---

[21] The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]"  5 U.S.C. § 551(13).

*Nat'l Aeronautics & Space Admin.*, 895 F. Supp. 316, 319 (D.D.C. 1995) (the agency "is not entitled to a second bite of the apple just because it made a poor decision – if that were the case, administrative law would be a never ending loop from which aggrieved parties would never receive justice"); *see also McElmurray v. U.S. Dep't of Agric.*, 535 F. Supp. 2d 1318, 1336 (S.D. Ga. 2008) (same).

Ordering FDA to grant final approval to Norwich's Amended ANDA would be in line with a previous order by this Court upon finding an arbitrary, capricious, or unlawful agency decision.  *See Watson Lab'ys, Inc. v. Sebelius*, Civ. A. No. 12-1344 (ABJ), 2012 WL 6968224, at *1 (D.D.C. Oct. 22, 2012) (overturning FDA's decision denying shared exclusivity "and order[ing] FDA to approve Watson's ANDA for generic pioglitazone effective immediately"), *vacated*, No. 12-5332, 2013 WL 11250319 (D.C. Cir. June 10, 2013) (vacating this Court's decision because the matter was moot "in light of the expiration of the 180–day exclusivity period").

Moreover, remand is not appropriate because there are no ambiguities for the agency to resolve (Norwich Opening Br. at 21-25) and therefore there is "no room for agency discretion." *See, e.g.*, *Teva*, 441 F.3d at 4-5 (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 125 S. Ct. 2688, 2700 (2005)).  Remand is also not appropriate here because none of the "consideration[s] that classically support[] the law's ordinary remand requirement" apply.  *See, e.g.*, *I.N.S. v. Orlando Ventura*, 537 U.S. 12, 17 (2002).  The Supreme Court has stated that remand is appropriate when:

> The agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides.

*Id.* Here, there is no need for FDA to bring its technical or scientific expertise to bear on the issue because the record is clear and the regulations are unambiguous, requiring FDA to immediately grant final approval to Norwich's Amended ANDA upon correcting its interpretation of the Delaware Court Orders and failure to follow its unambiguous regulations. Therefore, this Court should order FDA to grant final approval to Norwich's Amended ANDA.

### B.   At Most, FDA Should Be Given Ten Business Days to Consider The First-Filer Exclusivity Status

Both FDA and Salix argue that remand is proper because of "the possibility that another manufacturer [i.e., Teva] is eligible for 180-day exclusivity." FDA Br. at 39; *see also* Salix Br. at 19-22. But, between August 2021 and ███████, FDA has repeatedly considered the information relevant to whether Teva has forfeited its exclusivity. *See, e.g.*, AR134; AR372; AR374. FDA has not articulated any facts that have changed in the interim. Thus, to the extent the Court is inclined to grant any remand, such period should be for no more than ten business days[22] for FDA to review the record and finalize its decision regarding whether Teva has forfeited exclusivity.[23]

---

[22] As seen in *Amgen Inc. v. Azar*, 290 F. Supp. 3d 65, 67-68 (D.D.C. 2018), FDA acted quickly on remand when it issued its final remand decision on February 5, 2018, ten calendar days after this Court's January 26, 2018 decision in *Amgen Inc. v. Hargan*, 285 F. Supp. 3d 351 (D.D.C. 2018) (eleven days including FDA identifying an additional document after its Remand Decision) in which the Court remanded the case to FDA "for the limited purpose of addressing [] the agency's prior decision granting pediatric exclusivity[.]" *Azar*, 290 F. Supp. 3d at 68 (D.D.C. 2018) (internal quotations omitted). Thus, ten business days is sufficient in this case.

[23] In determining a timeline for remand, courts will consider, *inter alia*, whether a party's interests will be prejudiced by the delay associated with remand. *See, e.g.*, *Asfour v. Napolitano*, 732 F. Supp. 2d 512, 513 (E.D. Pa. 2010) (ordering the agency to complete its determination on remand within seven business days to ensure that the opposing party was not prejudiced by further delay).

## CONCLUSION

For the reasons stated above, the Court should grant Norwich's motion by entering an order on the merits in favor of Norwich and ordering that FDA approve Norwich's Amended ANDA immediately.  In addition, the Court should deny FDA's motion for summary judgment and Salix's cross-motion to dismiss, or in the alternative, for summary judgment.

Dated: July 26, 2023                           Respectfully submitted,

/s/ *Chad A. Landmon*

Chad A. Landmon (DC Bar No. 990347)
Matthew J. Becker (admitted *pro hac vice*)
Matthew S. Murphy (admitted *pro hac vice*)
Aaron Z. Savit (admitted *pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
T: (860) 275-8100
F: (860) 275-8101
clandmon@axinn.com
mbecker@axinn.com
mmurphy@axinn.com
asavit@axinn.com

Ross E. Blau (admitted *pro hac vice*)
AXINN, VELTROP & HARKRIDER LLP
114 W. 47th Street
New York, NY 10036
T: (212) 728-2200
rblau@axinn.com

Gabriella McIntyre (DC Bar No. 1672424)
AXINN, VELTROP & HARKRIDER LLP
1901 L Street NW
Washington, DC 20036
(202) 721-5417
gmcintyre@axinn.com

*Attorneys for Plaintiff Norwich*
*Pharmaceuticals, Inc.*