# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORWICH PHARMACEUTICALS, INC., | |
| Plaintiff, | |
| v. | No. 1:23-cv-01611-RDM |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services, *et al.*, | |
| Defendants, | |
| and, | |
| SALIX PHARMACEUTICALS, INC., | |
| Intervenor-Defendant. | |

**Federal Defendants' Reply Memorandum in Support of Their Cross-Motion for Summary Judgment**

OF COUNSEL:

SAMUEL R. BAGENSTOS
General Counsel
U.S. Department of Health and Human Services

MARK RAZA
Chief Counsel
Food and Drug Administration

WENDY VICENTE
Deputy Chief Counsel, Litigation

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director

HILARY K. PERKINS
Assistant Director

GABRIEL I. SCHONFELD
(D.C. Bar No. 155539)

JAMES ALLRED
   Associate Chief Counsel
   Office of the Chief Counsel
   Food and Drug Administration
   10903 New Hampshire Ave.
   White Oak Building 31
   Silver Spring, MD 20993-002

Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044-0386
(202) 353-1531
(202) 514-8742 (fax)
Gabriel.I.Schonfeld@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................................1

ARGUMENT.......................................................................................................................4

I.    The Plain Meaning of the Patent Orders is Dispositive of This Case.......................4

    A.    The Patent Orders' Plain Language Instructs FDA to Delay Final Approval of Norwich's Amended ANDA. ................................................................................4

    B.    This Court Lacks Subject Matter Jurisdiction Because Norwich's Injuries are Not Traceable to FDA, and Its Suit Is an Improper Collateral Attack on the Patent Orders. .....................................................................................................8

    C.    The Federal Defendants are Entitled to Summary Judgment on the Merits Because Following the Patent Orders Was Not Arbitrary, Capricious, or Otherwise Unlawful. ..............................................................................................10

        1.    Federal Agencies Do Not Violate the APA by Applying Court Orders According to Their Terms. ...............................................................10

        2.    FDA's Regulations Did Not Permit—Let Alone Require—the Agency to Disregard the Terms of the Patent Orders. ........................................11

II.    Any Ambiguity in the Intended Scope of the Delaware Patent Orders Should Be Resolved by the Delaware District Court or the Federal Circuit. ..................................16

    A.    Norwich's Right to Seek Clarification From a Court with Jurisdiction Over the Patent Orders is an Adequate Alternative Remedy that Bars APA Review in This Court. ...............................................................................................17

    B.    In the Alternative, This Court Should Decline Jurisdiction in Favor of the Ongoing Patent Litigation..................................................................................21

III.    Remand to FDA Would be the Appropriate Remedy if the Court Grants Summary Judgment for Norwich. ...................................................................................22

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Am. Bioscience, Inc. v. Thompson*,
  269 F.3d 1077 (D.C. Cir. 2001) ................................................................................... 4

*Am. Hosp. Ass'n v. Azar*,
  385 F. Supp. 3d 1 (D.D.C. 2019) ................................................................................ 22

*Apotex Inc. v. FDA*,
  508 F. Supp. 2d 78 (D.D.C. 2007) ........................................................................ 14, 15

*Avadel CNS Pharms., LLC v. Becerra*,
  — F. Supp. 3d — 2022 WL 16650467 (D.D.C. Nov. 3, 2022) .................................. 18, 19, 21

*Barcomb v. Daimler Chrysler AG*,
  2018 WL 11448755 (N.D.N.Y. Apr. 9, 2018) .......................................................... 22, 23

*Cigar Association of America v. FDA*,
  411 F. Supp. 3d 1 (D.D.C. 2019) ................................................................................. 9

*Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*,
  846 F.3d 1235 (D.C. Cir. 2017) ................................................................................. 18

*Coker v. Sullivan*,
  902 F.2d 84 (D.C. Cir. 1990) .................................................................................... 20

*Colt Indus. Operating Corp. v. Index-Werke K.G.*,
  739 F.2d 622 (Fed. Cir. 1984) ................................................................................... 22

*Fisher v. Pension Benefit Guar. Corp.*,
  151 F. Supp. 3d 159 (D.D.C. 2016) ........................................................................... 12

*Frederick Cnty. Fruit Growers Ass'n, Inc. v. McLaughlin*,
  703 F. Supp. 1021 (D.D.C. 1989) .............................................................................. 11

*Georgia v. Brooks-LaSure*,
  2022 WL 3581859 (S.D. Ga. Aug. 19, 2022) ............................................................. 13

*Glymph v. District of Columbia*,
  2018 WL 10715454 (D.D.C. Apr. 17, 2018) ................................................................ 4

*GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*,
  445 U.S. 375 (1980) ................................................................................................ 10

*Heartland Hosp. v. Thompson*,
  328 F. Supp. 2d 8 (D.D.C. 2004) ............................................................................. 5, 6

*Henson v. Santander Consumer USA Inc.*,
  582 U.S. 79 (2017) .................................................................................................. 13

*In re Chi., Rock Island & Pac. R. Co.*,
  865 F.2d 807 (7th Cir. 1988) .................................................................................... 22

*In re Omeprazole Pat. Litig.*,
  536 F.3d 1361 (Fed. Cir. 2008) ........................................................................... 14, 16

*INS v. Orlando Ventura,*
   537 U.S. 12 (2002) ..................................................................................................23

*Jang v. Bos. Sci. Corp.,*
   532 F.3d 1330 (Fed. Cir. 2008) ...............................................................................17

*Morgan Drexen, Inc. v. CFPB,*
   785 F.3d 684 (D.C. Cir. 2015) .................................................................................21

*Mylan Lab'ys, Inc. v. Thompson,*
   389 F.3d 1272 (D.C. Cir. 2004) ................................................................... 14, 15, 16

*Noble Energy, Inc. v. Salazar,*
   671 F.3d 1241 (D.C. Cir. 2012) ...............................................................................12

*O.A. v. Trump,*
   404 F. Supp. 3d 109 (D.D.C. 2019) .........................................................................12

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.,*
   520 F.3d 1358 (Fed. Cir. 2008) .......................................................................... 14, 15

*Patsy's Italian Rest., Inc. v. Banas,*
   658 F.3d 254 (2d Cir. 2011) ......................................................................................7

*Richards v. Delta Air Lines, Inc.,*
   453 F.3d 525 (D.C. Cir. 2006) .................................................................................21

*Sanchez-Espinoza v. Reagan,*
   770 F.2d 202 (D.C. Cir. 1985) .................................................................................21

*Teva Pharms. USA, Inc. v. FDA,*
   441 F.3d 1 (D.C. Cir. 2006) .....................................................................................12

*37 Assocs., Tr. for the 37 Forrester St., SW Tr. v. REO Constr. Consultants, Inc.,*
   409 F. Supp. 2d 10 (D.D.C. 2006) .............................................................................9

*United States v. Spallone,*
   399 F.3d 415 (2d Cir. 2005) ............................................................................. 4, 5, 8

*Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.,*
   887 F.3d 1117 (Fed. Cir. 2018) .......................................................................... 14, 15

*Vapor Technology Association v. FDA,*
   977 F.3d 496 (6th Cir. 2020) .....................................................................................9

*Watson Lab'ys, Inc. v. Sebelius,*
   2012 WL 6968224 (D.D.C. Oct. 22, 2012) ..............................................................23

*Women's Equity Action League v. Cavazos,*
   906 F.2d 742 (D.C. Cir. 1990) .................................................................................20

**Statutes**

5 U.S.C. §

   702 .............................................................................................................................21

   704 .............................................................................................................................18

706 ...................................................................................................................12

21 U.S.C. § 355 ..........................................................................................14, 15

28 U.S.C. § 2106 ...............................................................................................17

35 U.S.C. §

271 ..............................................................................................................15

271(e)(4)(A) .............................................................................11, 14, 15

42 U.S.C. § 1983 ...............................................................................................20

**Regulations and Rules**

21 C.F.R. §

314.94(a)(12)(viii) ...................................................................................12

314.107 .................................................................................................14, 15

314.107(b)(1) .............................................................................................12

Fed. R. Civ. P. 62.1 ......................................................................................17, 22

## INTRODUCTION

Norwich's opposition brief is an extended exercise in misdirection. After losing at trial in the District of Delaware, Norwich amended its rifaximin ANDA to excise the infringing HE indication, and then asked the Delaware Court to decide whether the final judgment in that case (the "Patent Judgment")[1] still applied to Norwich's amended ANDA. The Delaware Court held that it did, and entered a further order (the "Rule 60(b)(5) Order") that left FDA bound not to approve the amended ANDA at least until the HE patents expire in October 2029. FDA has since done no more, and no less, than follow the Patent Orders' plain meaning.

Prior to Norwich's opposition brief, there was no question that it understood exactly what those orders meant. On appeal of the Patent Orders to the Federal Circuit, it argued that the Delaware Court had erred by "broadly order[ing] that Norwich's ANDA may not be approved for *any* indication until [2029]." *See* Motion to Expedite Proceedings, *Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, Dkt. 23 at 9-10, No. 22-2153 (Fed. Cir. June 14, 2023). And in this Court, Norwich acknowledged that the Delaware Court had denied Norwich's motion to modify, in light of its amended ANDA, the court's final judgment setting a 2029 (at the earliest) "effective date" for final FDA approval. *See* Dkt. 1 at 15-16 (Compl. ¶¶ 54-55).

---

[1] Capitalized terms not otherwise defined have the meanings specified in the Federal Defendants' opening brief, Dkt. 44 ("Fed. Br.").

But now, for the first time in *any* court, Norwich asserts that the Patent Orders simply do not "apply to [its] Amended ANDA." Dkt. 46 at 8, 9, 11, 12, 21, 23-24, 26 ("Norwich Opp."). Norwich argues that FDA's decision to delay approval of that application—as well as the Federal Defendants' arguments in this Court—are based on an "incorrect interpretation" of those orders. *See, e.g.*, *id.* at 9, 13-14, 23-26.

Norwich's eleventh-hour change in position, however, only highlights the dispositive question in this case: Does the plain language of the Patent Orders direct FDA to delay approval of Norwich's amended ANDA? Because the answer is an unambiguous "yes," this Court should grant summary judgment for the Federal Defendants for multiple reasons:

*First,* since FDA withheld final approval of the amended ANDA because the Patent Orders bound it to do so, Norwich lacks standing because its alleged injuries are not fairly traceable to the challenged agency action—only to the district court that instructed the agency to act. By the same token, Norwich's challenge to FDA's application of the Patent Orders is in substance an improper collateral attack on the orders themselves, which this Court should decline jurisdiction to hear.

*Second*, even if this Court exercised jurisdiction, the plain language of the Patent Orders would still entitle the Federal Defendants to summary judgment on the merits. Federal agencies do not act arbitrarily, capriciously, or contrary to law when they follow applicable binding court orders, and nothing in the particular FDA regulations at issue suggests any reason to depart from that basic rule.

2

*Third,* if this Court does find ambiguity in the Patent Orders, it should grant summary judgment for the Federal Defendants on the ground that Norwich has an adequate alternative to APA review. To the extent Norwich's injuries stem from genuine confusion over the meaning of the Patent Orders, Norwich concedes that it can resolve that problem by seeking clarification as to their meaning in the Federal Circuit and (if necessary) the District of Delaware.

*Fourth,* even if that alternative remedy is not adequate to displace APA review as a matter of law, this Court should exercise its equitable discretion to decline jurisdiction in light of Norwich's ability to seek clarification of the Patent Orders from the courts with jurisdiction to supervise them. Declaratory and injunctive relief may be refused when the plaintiff has an adequate remedy at law, and deferring to Norwich's clarification remedy would serve the interests of justice and judicial economy by directing enforcement of the Patent Orders to the courts best positioned to do so.

*Lastly,* Norwich incorrectly identifies the remedy that would hypothetically apply if it won at summary judgment.[2] Ordering FDA to approve its ANDA outright is not a proper APA remedy. Moreover, it would be particularly inappropriate in this case because there is an open question whether Norwich's ANDA is blocked from final approval by a first applicant's eligibility for 180-day exclusivity. Rather, if Norwich

---

[2] Norwich has expressly waived any remaining claim to the preliminary injunction it initially sought. *See* Norwich Opp. at 33 ("Other than deciding the merits, this Court does not need to analyze the other preliminary injunction factors because Norwich's [motion] was consolidated with a full consideration of the merits . . . .").

prevails at summary judgment the appropriate remedy will be the standard one in APA

cases—remand to FDA for further consideration consistent with this Court's ruling.

For these reasons, the Court should deny Norwich's motion for a preliminary

injunction and for summary judgment and grant summary judgment to the Federal

Defendants.

ARGUMENT

## I.   The Plain Meaning of the Patent Orders is Dispositive of This Case.

### A.   The Patent Orders' Plain Language Instructs FDA to Delay Final Approval of Norwich's Amended ANDA.

The "plain meaning of the [Patent Orders'] text" leaves no doubt that the

Delaware Court intended to delay approval of the amended ANDA. *See Glymph v.*

*District of Columbia*, 2018 WL 10715454, at *6 (D.D.C. Apr. 17, 2018) (collecting cases)

(quotations and alterations omitted).[3] After determining at trial that the HE patents

were valid and infringed, the Delaware Court entered the Patent Judgment, ordering

that "the effective date of any final approval . . . of Norwich's ANDA No. 214369 is to be

a date not earlier than the date of expiration of the last to expire of the [HE patents]

(currently October 2, 2029), plus any regulatory exclusivity to which [Salix] [is] or

become[s] entitled." AR 42 (Patent Judgment ¶ 5).

---

[3] The Federal Defendants do not argue that FDA is entitled to deference in implementing the plain language of the Patent Orders. *See Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1085 (D.C. Cir. 2001); *see also United States v. Spallone*, 399 F.3d 415, 423 (2d Cir. 2005) ("The interpretation of the text of a court order or judgment [by someone other than the issuing court itself] is considered a conclusion of law subject to *de novo* review.").

The Delaware Court *expressly rejected* Norwich's request to preemptively limit the Patent Judgment's scope to an "ANDA with proposed labeling containing [the HE indication]." AR 43-44 (Judgment Memorandum at 1-2); *see also Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 12 (D.D.C. 2004) (explaining that courts may consider "the opinion[s] accompanying [a] judgment to resolve ambiguity" in the text itself). No amendments to the ANDA were before the Delaware Court at that time, and the mere possibility that Norwich might file them later was therefore "immaterial" to the court's decision to order that final approval be delayed until 2029. AR 44 (Judgment Memorandum at 2).

After Norwich *did* amend its ANDA, it asked the Delaware Court to decide what impact (if any) those amendments would have on the scope of the court's order delaying approval. Norwich did so by moving under Rule 60(b)(5) to modify the Patent Judgment, which it believed would otherwise impose an ongoing "*absolute prohibition on FDA[] approval*" of the amended ANDA before October 2029.[4] *See* AR 274 (Rule 60(b)(5) Brief at 4); *see also, e.g.*, AR 269 (Rule 60(b)(5) Brief at 1) ("[Norwich] moves to . . . limit[] the order under Section 271(e)(4)(A) that is *blocking the approval* of Norwich's ANDA until the expiration of the [HE patents].""), AR 282 (Rule 60(b)(5) Brief at 14) ("Norwich

---

[4] Norwich misses the point in asserting that it is not judicially estopped from abandoning this position. *See* Norwich Opp. at 13 n.5. Whether or not they are subject to judicial estoppel, the arguments Norwich made in support of modifying the Patent Judgment provide important context for understanding the Delaware Court's subsequent order denying modification. *See Spallone*, 399 F.3d at 424 (2d Cir. 2005) (explaining that a court order is "construed with reference to the issues it was meant to decide").

invokes Rule 60(b)(5) to remove the *bottleneck preventing FDA's approval* of Norwich's Amended ANDA"), *id.* at 285 (Rule 60(b)(5) Brief at 17) ("[T]he current Judgment *blocks that approval* until October 2029.") (all emphases added).[5]

Norwich's central argument for modifying the Patent Judgment was that by withdrawing its paragraph IV certifications to the HE patents, Norwich's amended ANDA "substantively change[d] [the] operative facts . . . [that provided] the statutory basis for enjoining the effective date of FDA's approval" until 2029. AR 281 (Rule 60(b)(5) Brief at 13). Norwich asserted in light of these "changed circumstances," it would "no longer [be] equitable to prospectively enjoin [final] approval of [the] Amended ANDA." *Id.*

The Delaware Court's decision adopted Norwich's basic framing of the issue presented by its motion: Was Norwich's "deci[sion] to amend its ANDA" a "significant change in circumstances" that supported modification of the existing "injunction prohibiting FDA approval before 2029"? *See* AR 359 (Rule 60(b)(5) Order at 2).

Answering that question in the negative, the Delaware Court explained itself in terms that clearly communicated both its decision that the Patent Judgment should apply to the amended ANDA, and its understanding of the consequences that would follow. As a legal matter, the Delaware Court stated that infringement of the HE patents

---

[5] Norwich now claims in a footnote that its Rule 60(b)(5) motion was merely "raising the risk that FDA might misapply" the Patent Judgment. Norwich Opp. at 13 n.5. Norwich does not specify where it made that argument to the Delaware Court. That is not a coincidence—its motion said no such thing, and the above quotations from what Norwich *did* say speak for themselves.

had already "been resolved by the [Patent] [J]udgment," from which it declined to exempt Norwich's amended ANDA because Norwich had not shown "that it could not have litigated the carve-out [at trial] or that it was denied a full and fair opportunity to do so." AR 361 (Rule 60(b)(5) Order at 6). And as a practical matter, the Court acknowledged that it was "true" that its decision would leave Norwich "worse off than other generics that settled with [Salix] and apparently can launch in 2028." AR 360 (Rule 60(b)(5) Order at 3).

Norwich all but ignores the text of the Delaware Court's Rule 60(b)(5) Order. It mainly asserts that the Delaware Court "said *nothing*" to suggest that the order delaying approval would apply to the amended ANDA. Norwich Opp. at 13-14. That is facially inaccurate. *See, e.g.*, AR 359-60 (Rule 60(b)(5) Order at 2-3) (denying Norwich's motion to exclude the amended ANDA from "the injunction prohibiting FDA approval before 2029," even though denial left Norwich "worse off than other generics that settled [and] . . . can launch in 2028"). The language Norwich does address is either inapposite, *see* Norwich Opp. at 13-14 (quoting AR 360) (reiterating that the Patent Judgment did not speak to ANDA amendments not yet filed), or plainly contemplates that the Patent Judgment will continue to apply notwithstanding Norwich's amendments to its ANDA, *Id.* at 14 (quoting AR 362) (refusing to narrow scope of "final judgment . . . in a summary proceeding" based on Norwich's post-trial decision to "change the ANDA to what it wishes it had started with").

Like contracts or statutes, court orders "should be construed so as to give full meaning and effect to all of [their] provisions." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d

7

254, 263 (2d Cir. 2011); *see also Spallone*, 399 F.3d at 424 ("Court orders are construed like other written instruments, except that the determining factor is not the intent of the parties, but that of the issuing court."). Norwich's reading of the Patent Orders violates that basic principle because it would effectively nullify the plain text of the Rule 60(b)(5) Order. Adopting Norwich's own framing of the issues, the Delaware Court began from the premise that the Patent Judgment would apply to the amended ANDA unless modified, and then entered an order denying modification. It did so on the grounds that Norwich was using the amended ANDA to relitigate infringement claims that the Patent Judgment had already resolved, and with the explicit acknowledgment that its decision meant that Norwich could not market rifaximin until 2029 (at the earliest). Taken as a whole—rather than ignoring the Rule 60(b)(5) Order as Norwich suggests— the text of the Patent Orders shows that the Delaware Court intended to order FDA to delay final approval of Norwich's amended ANDA.

### B. This Court Lacks Subject Matter Jurisdiction Because Norwich's Injuries are Not Traceable to FDA, and Its Suit Is an Improper Collateral Attack on the Patent Orders.

As the Federal Defendants have explained, this Court lacks—or in the alternative should decline to exercise—jurisdiction over Norwich's challenge to FDA's compliance with the Patent Orders. At the threshold, Norwich lacks standing to sue FDA because it cannot fairly trace its alleged injuries to anything except the Delaware Court's ruling. *See* Fed. Br. at 23-24. And even if Norwich did have standing, its suit would still be subject to dismissal as an impermissible attempt to collaterally attack the Patent Orders outside the proper channels of appeal. *See id.* at 24-26.

At bottom, Norwich's response is merely to reiterate its incorrect claim that the Patent Orders mean something other than what they clearly say. *See* Norwich Opp. at 23 (arguing that FDA "caused Norwich's injury by incorrectly interpreting" the Patent Orders, rather than the Delaware Court causing injury by "issu[ing] the injunction"); *id.* at 23-26 ("In sum, the allegation[] of 'collateral attack,' . . . rel[ies] on the faulty premise that the [Patent Orders] apply to Norwich's Amended ANDA.").

For the reasons explained *supra* at 10-14, Norwich's argument flatly contradicts the Patent Orders' plain language, which directs FDA not to approve the amended ANDA until October 2029 at the earliest. For standing purposes, that language puts this case on all fours with *Vapor Technology Association v. FDA*, 977 F.3d 496, 401-02 (6th Cir. 2020), and *Cigar Association of America v. FDA*, 411 F. Supp. 3d 1, 3 (D.D.C. 2019), which held that third parties lacked standing to sue FDA over agency action that was "entirely a function of a judicial ruling," *Cigar Ass'n*, 41 F. Supp. 3d at 3. It likewise shows that Norwich's APA claim, which seeks immediate approval where the Patent Orders require a delay, should be dismissed as an improper collateral attack on the judgment of the Delaware Court. *See, e.g., 37 Assocs., Tr. for the 37 Forrester St., SW Tr. v. REO Constr. Consultants, Inc.*, 409 F. Supp. 2d 10, 14 (D.D.C. 2006) (explaining that a collateral attack seeks "to avoid or evade" a prior judgment, "or to deny its force and effect").

C. **The Federal Defendants are Entitled to Summary Judgment on the Merits Because Following the Patent Orders Was Not Arbitrary, Capricious, or Otherwise Unlawful.**

1. **Federal Agencies Do Not Violate the APA by Applying Court Orders According to Their Terms.**

The Federal Defendants have explained that the existence of court orders delaying approval of the amended ANDA is enough to dispose of Norwich's APA claim. *See* Fed. Br. at 30-38. Norwich's primary response—that the Patent Orders do not actually apply to the amended ANDA—fails for the reasons just explained. *See supra* at 10-14. Norwich is also wrong, however, to the extent it suggests that FDA is somehow not "bound to follow" the Patent Orders even if they do apply. *See* Norwich Opp. at 30-33 & n.18 (quotations omitted).

At the outset, it is settled law that a federal agency is required to obey an applicable court order even if the order conflicts with some other law that the agency would otherwise be obliged to follow. *See GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375, 386 (1980) (explaining that an agency "subject to an injunctive order . . . [is] expected to obey that decree until it is modified or reversed . . . even if [it has] proper grounds to object"); *see also* Fed. Br. at 30; Dkt. 39 at 12-13 ("Salix Br."). Congress, after all, does not generally enact statutes with the "inten[t] to require an agency to commit contempt of court" in the event it is enjoined to act differently. *See GTE Sylvania*, 445 U.S. at 387. The APA is no exception, and "[a]n agency acting on the express instructions of a federal court simply cannot be deemed to have violated [that

statute]" by "act[ing] in an arbitrary or capricious manner." *Frederick Cnty. Fruit Growers Ass'n, Inc. v. McLaughlin*, 703 F. Supp. 1021, 1026 (D.D.C. 1989).

Norwich fails in its attempt to sidestep *GTE Sylvania* and its progeny. It argues that FDA cannot rely on those decisions here because the Patent Orders do not apply to the amended ANDA. Norwich Opp. at 18. This is incorrect. As explained *supra* at 10-14, the Delaware Court clearly intended to delay final approval even after Norwich's amendments to its ANDA, and Norwich has no additional response. FDA has done no more and no less than the Delaware Court ordered it to do—delay final approval of Norwich's amended ANDA at least until the last HE patent expires, or the order is modified. As a matter of law, "acting on th[ose] express instructions of a federal court" cannot violate the APA. *Frederick Cnty. Fruit Growers*, 703 F. Supp. at 1026.

## 2. FDA's Regulations Did Not Permit—Let Alone Require—the Agency to Disregard the Terms of the Patent Orders.

The fact that FDA followed the Patent Orders is sufficient on its face to resolve Norwich's APA claim, and the Court need not consider Norwich's suggestion that FDA's regulations should have led the agency to ignore the Patent Orders. Even if the Court were to reach that argument, however, the Federal Defendants would still be entitled to summary judgment.

Norwich does not identify any FDA regulation *requiring* the agency to immediately approve an ANDA that 1) contains section viii statements but 2) is nevertheless still subject to a court order delaying approval under Section 271(e)(4)(A). *See* Norwich Opp. at 14-18. Nor could it. As the Federal Defendants have explained, *see*

Fed. Br. at 32-33, the regulation that would ordinarily (absent a contrary court order) govern the "[t]iming of approval based on patent . . . statement[s]" is phrased in permissive rather than mandatory terms—it defines when FDA "*may*" *approve* an ANDA, *see* 21 C.F.R. § 314.107(b)(1) (emphasis added), not when it *must* do so.[6]

Norwich makes much of the fact that FDA's regulations set out specific circumstances under which the agency generally must *delay* approving an ANDA. *See* Norwich Opp. at 14-18. As a basic matter of textual logic, Norwich is wrong to argue that the enumeration of conditions under which delay is required implies that in the absence of those conditions, delay is prohibited. The regulation's text is clear on what happens if those conditions are not present—FDA "may" approve the application. *See* 21 C.F.R. § 314.107(b)(1).

---

[6] In a footnote, Norwich also suggests for the first time that FDA's decision fails arbitrary and capricious review because it did not consider "the regulation regarding amended patent certifications." (presumably 21 C.F.R. § 314.94(a)(12)(viii)). *See* Norwich Opp. at 19 n.12. Courts generally disregard summary arguments raised only in a footnote. *See, e.g.*, *O.A. v. Trump*, 404 F. Supp. 3d 109, 132 n.8 (D.D.C. 2019). Norwich's argument also relies on wholly inapposite authorities. Of the three cases Norwich includes in its footnoted string cite, two involved remands of agency decisions which were so under-explained that APA review was impossible, *see Fisher v. Pension Benefit Guar. Corp.*, 151 F. Supp. 3d 159, 168 (D.D.C. 2016) ("The Appeals Board decision simply does not supply reasons sufficient for the Court to consider, much less to ratify."); *Noble Energy, Inc. v. Salazar*, 671 F.3d 1241, 1245 (D.C. Cir. 2012) ("[T]he APA instructs reviewing courts to 'determine the meaning . . . of the terms of an agency action' when necessary. But with respect to the decision letter, we are unable to perform this duty with any confidence.") (quoting 5 U.S.C. § 706), and the third held a decision was arbitrary and capricious where the agency had "mistakenly thought itself bound" by D.C. Circuit law on a question that court had intentionally left open, *see Teva Pharms. USA, Inc. v. FDA*, 441 F.3d 1, 5 (D.C. Cir. 2006).

Norwich's only additional response is that even though the *text* of the regulation in question is permissive on its face, FDA still violated the APA because its "decision actually took away from the goal of the statute . . . to allow cheaper generic drugs to come to market quickly." Norwich Opp. at 16 n.8. Contrary to Norwich's suggestion, there is no free-floating rule that an agency violates the APA whenever it takes action that somehow "go[es] against the goal" of the relevant statute. *See id.*[7] Just as not every "result consistent with . . . [a] statute's overarching goal must be the law," *see Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 89 (2017), not every action that trades off against such a goal must be unlawful. As with Norwich's other appeals to Hatch-Waxman's policy in favor of generic drugs, *see* Norwich Opp. at 32-33, its argument here cannot be squared with the fact that the Hatch-Waxman Amendments are a compromise among numerous competing policy objectives, *see generally* Fed. Br. at 35. In the context of a statutory scheme designed to balance Congress' desire for generic competition against incentives for brand-name innovation and the efficient resolution of

---

[7] Norwich finds support for this broad proposition in its own misreading of a single district court decision. In *Georgia v. Brooks-LaSure*, 2022 WL 3581859 (S.D. Ga. Aug. 19, 2022), the district court vacated a decision by the Centers for Medicare and Medicaid Services ("CMS") to withdraw a waiver of certain federal requirements as to Georgia's Medicaid program. Norwich describes that case as holding that CMS acted arbitrarily and capriciously because its decision "*actually* took away from the goal of the [Medicaid program]." Norwich Opp. at 16 n.8 (emphasis added). That is incorrect—in relevant part, the *Georgia* district court based its ruling on CMS's failure to "*weigh the possibility*" that its discretionary waiver decision *might* "mean less Medicaid coverage." *Georgia*, 2022 WL 3581859, at *13. Put another way, *Georgia* says at most that the APA requires an agency making discretionary judgments to weigh how its decisions could possibly trade off against statutory goals, not that it must avoid such tradeoffs altogether. *Georgia* and similar decisions are in any case irrelevant here, where FDA was bound to follow the applicable Patent Orders. *See supra* at 16-17.

patent disputes, FDA did not violate the APA by obeying the Patent Orders, which the issuing court fully intended would delay the entry of Norwich's generic drug into the market.

Beyond the plain text of FDA's regulations, the Federal Defendants also presented a wealth of caselaw affirming the agency's straightforward obligation to obey applicable patent judgments, even when they impose different obligations than agency regulations would standing alone. *See* Fed. Br. at 33-34 (citing *Vanda Pharms. Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117 (Fed. Cir. 2018); *In re Omeprazole Pat. Litig.*, 536 F.3d 1361 (Fed. Cir. 2008); *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358 (Fed. Cir. 2008); *Mylan Lab'ys, Inc. v. Thompson*, 389 F.3d 1272 (D.C. Cir. 2004); *Apotex Inc. v. FDA*, 508 F. Supp. 2d 78 (D.D.C. 2007)). Norwich argues that those decisions are inapplicable here because they "pertain to Paragraph IV certifications . . . rather than section viii statements," which are subject to different approval timing provisions under 21 U.S.C. § 355 and 21 C.F.R. § 314.107. *See* Norwich Opp. at 31-32 & nn.18-19. That is a specious distinction for two reasons.

*First*, those cases—like this one—considered the permissible scope and effect of remedial orders entered under 35 U.S.C. § 271(e)(4)(A) that arose in patent lawsuits— like the one underlying this case—which began with an application containing one or more paragraph IV certifications. In this case, the Delaware Court made clear that it was Norwich's own decision to litigate the patent claims under a paragraph IV certification and to alter its ANDA only after the Patent Judgment issued that led that court to conclude that its order applied to the amended ANDA. *See* AR 361 (Rule 60(b)(5) Order

14

at 4). In other words, the Patent Orders which control this case are as much a product of paragraph IV certifications as were the judgments in *Vanda*, *In re Omeprazole*, *Ortho-McNeil*, *Mylan,* and *Apotex*.

 **Second**, while it is true that *the FDCA and its implementing regulations* provide that different patent statements and certifications are subject to different approval timing rules, *see generally* 21 U.S.C. § 355; 21 C.F.R. § 314.107, that does not distinguish cases which—like this one—turn on the fact that those default rules may be overridden by court orders issued under *the patent remedy statute, see generally* 35 U.S.C. § 271(e)(4)(A). As the Federal Circuit has explained, the approval timing provisions codified at 21 U.S.C. § 355 are "directed at the FDA" and "do not limit the authority of the district court to reset the [final approval] date . . . directly under 35 U.S.C. § 271." *Ortho-McNeil*, 520 F.3d at 1366.

 The decisions cited in the Federal Defendants' opening brief confirm both that district courts have independent authority to shape relief under the patent remedy statute, and that FDA follows applicable court orders even when they diverge from the FDCA's default timing rules. *See, e.g.*, *Mylan*, 389 F.3d at 1281-82 (holding that FDA was bound to follow patent order directing it to revoke an ANDA's final approval, even though the order's bases for revocation were different than those specifically set out as permissible under the FDCA); *Vanda*, 887 F.3d at 1139 (affirming order delaying ANDA approval based on finding that generic infringed a patent which, under FDCA's timing rules, would not have blocked approval during pendency of patent litigation); *Apotex*, 508 F. Supp. 2d at 84-85 (recognizing that certain patent orders will present FDA "with

15

two competing dates" for final approval—one determined under the FDCA, and one

imposed under the patent remedy statute—and holding that APA plaintiff was unlikely

to succeed in arguing that "FDA is free to disregard [the] court order" in favor of its

own regulations).

Simply put, an applicable "district court[] . . . injunction change[s] the factual and

legal landscape" within which FDA administers its corner of the larger Hatch-Waxman

scheme. *Mylan*, 389 F.3d at 1284. Courts have universally held that so long as an

applicable injunction remains in force, "FDA may not approve the ANDA until the

effective date [it] specifie[s]." *In re Omeprazole*, 536 F.3d at 1367-68. Norwich's position—

that FDA should instead have applied its own regulations on approval timing as if the

Patent Orders did not exist—is at odds with that settled law. FDA's decision to obey the

Patent Orders was not arbitrary or capricious, and the Federal Defendants are entitled

to summary judgment.

## II. Any Ambiguity in the Intended Scope of the Delaware Patent Orders Should Be Resolved by the Delaware District Court or the Federal Circuit.

The meaning of the Patent Orders is clear, and this Court can and should grant

summary judgment for the Federal Defendants on that basis. If, however, the Patent

Orders were ambiguous (they are not), then this Court still would not be the proper

forum for Norwich to clarify their meaning.

To the extent the Court has any question regarding the meaning of those orders,

there are two reasons it should decline to resolve that ambiguity and instead direct

Norwich to seek clarification from the courts with jurisdiction over the underlying

patent litigation. *First*, the availability of that clarification remedy is adequate to displace APA review as a matter of law, and *second*, even if it were not, it would still be enough to warrant declining—as a matter of well-established equitable discretion—to grant Norwich declaratory or injunctive relief better sought from the courts with jurisdiction over the Patent Orders themselves.

### A. Norwich's Right to Seek Clarification From a Court with Jurisdiction Over the Patent Orders is an Adequate Alternative Remedy that Bars APA Review in This Court.

The relief Norwich seeks in this Court is straightforward—it wants to remove the Patent Orders as an obstacle to FDA "grant[ing] final approval to [the] Amended ANDA." Compl. at 24 (Prayer for Relief ¶ B). Norwich concedes, moreover, that if it is right as to the meaning of the Delaware Court's rulings, it will be able to obtain precisely that relief by seeking to have the Patent Orders clarified along those lines. Norwich Opp. at 26 (acknowledging that Norwich can "ask the Federal Circuit to amend the Delaware Court Orders to make more explicit that FDA can approve Norwich's Amended ANDA"); *see also* 28 U.S.C. § 2106 (authorizing court of appeals to directly "modify . . . any judgment, decree, or order of a court lawfully brought before it for review"); *Jang v. Bos. Sci. Corp.*, 532 F.3d 1330, 1335 (Fed. Cir. 2008) (recognizing that "a remand for clarification [by the district court] is appropriate where a judgment is ambiguous").[8]

---

[8] In addition, even while its Federal Circuit appeal is pending, Norwich could seek clarification directly from the Delaware Court by moving for an indicative ruling on that issue. *See* Fed. R. Civ. P. 62.1.

Norwich's concession is enough to foreclose APA review as a matter of law. As the Federal Defendants have explained, *see* Fed. Br. at 27-29, the APA does not provide a cause of action where a plaintiff has "[an]other adequate remedy in a court." 5 U.S.C. § 704. Congress can demonstrate its intent to withdraw APA review by "provid[ing] . . . an alternative review procedure," *Avadel CNS Pharms., LLC v. Becerra*, — F. Supp. 3d — 2022 WL 16650467, at *6 (D.D.C. Nov. 3, 2022), and it has done so here by enacting a statutory scheme that "plainly contemplate[s]" the establishment of ANDA effective dates through private patent litigation (including any necessary appeal to the Federal Circuit). *See id.* at *7; Fed. Br. at 28.[9] The ordinary processes of civil litigation provide ample opportunity for Norwich to seek any clarification it believes the Patent Orders require, and thereby obtain exactly the relief it seeks here.

Norwich accuses the Federal Defendants of "ignor[ing] . . . warning[s]" that alternative remedies do not "categorically . . . preclude APA relief." Norwich Opp. at 29 (citing *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.* (*CREW*), 846 F.3d 1235, 1245 (D.C. Cir. 2017)). That is not the case. D.C. Circuit law makes clear that an alternative remedy must be "adequate" in order to preclude APA review, *CREW*, 846

---

[9] Norwich complains that unlike *Avadel*, this case does not involve the specific statutory counterclaim for delisting of a patent. Norwich Opp. at 28-29. That distinction makes no difference for present purposes, since *Avadel* itself recognized that "[e]ven if an aggrieved NDA applicant were not to file a counterclaim," the overall structure of the Hatch-Waxman Amendments would still "plainly contemplate[]" that the parties to an ANDA-related patent dispute would find their remedy in the ordinary processes of private patent litigation. *Avadel*, 2022 WL 16650467, at *7. The Federal Defendants are relying on *Avadel* for that analysis of the broader Hatch-Waxman scheme, as well as its explanation of how courts assess whether an alternative remedy is adequate to bar APA review. *See generally* Fed. Br. at 28-29.

F.3d at 1244, which is why the Federal Defendants expressly addressed adequacy in their opening brief, *see* Fed. Br. at 29.

Norwich fares no better in arguing that its newly proposed clarification remedy would be an inadequate substitute for this APA suit. *See* Norwich Opp. at 26-27. To begin with, it contrasts the narrow legal issues it would present in each proceeding. *Compare id.* at 26 ("Norwich's suit here seeks correction of FDA's incorrect interpretation of the Delaware Court Orders and failure to follow its own unambiguous regulations"), *with id.* at 26 ("[Norwich could] ask the Federal Circuit to amend the Delaware Court Orders to make more explicit that FDA can approve Norwich's Amended ANDA."). Moreover, it asserts that the clarification remedy would not "requir[e] the level of depth and analysis" as APA litigation. *Id.* at 27. It concedes, however, that the two proceedings would "ultimately lead" to the same result, *id.* at 26—and that is what matters for adequacy. "[T]he adequate remedy inquiry focuses on the outcome sought by the movant rather than the questions they raise in their pleading," and Norwich admits that "the ultimate import of these two [remedies] is the same." *Avadel*, 2022 WL 16650467, at *8 (holding alternative remedy adequate even when it "would not . . . resolve" certain legal issues regarding FDA's authority).

Lastly, Norwich suggests that seeking clarification of the Patent Orders in the Delaware Court and Federal Circuit cannot substitute for its APA claim because that procedure is not a special review provision "explicitly guaranteed [as] an alternative" to the APA by the underlying substantive statute. Norwich Opp. at 30. There is no requirement, however, that in order to displace the APA an alternative remedy must be

either statute-specific or explicitly named by Congress as a substitute for APA review. Indeed, Norwich itself relies upon two cases which illustrate the point clearly. *See Id.* at 29-30.

In both *Coker v. Sullivan*, 902 F.2d 84 (D.C. Cir. 1990) and *Women's Equity Action League v. Cavazos*, 906 F.2d 742 (D.C. Cir. 1990), plaintiffs sued under the APA to force federal agencies to monitor and enforce grant recipients' compliance with federal law. The D.C. Circuit held in both cases that the plaintiffs lacked an APA claim because they could instead assert a wide range of private common-law and constitutional claims against the grantees directly. *See Coker*, 902 F.2d at 89-90 (observing that in addition to a statutory review proceeding, the plaintiffs could pursue grantees under the Supremacy Clause, under 42 U.S.C. § 1983, or under state law); *Women's Equity*, 906 F.2d at 750-51 (same, for private rights of action under Title VI, Title VII, Title IX, and section 504 of the Rehabilitation Act). It reached that conclusion (self-evidently in the case of *Coker*'s reliance on § 1983 and state tort law) without requiring evidence that Congress had made an explicit "judgment that a remedy other than . . . the APA was adequate." *See Women's Equity*, 906 F.2d at 750-51.

Norwich wants this Court to lift the Patent Orders' delay of approval for its ANDA on the ground that FDA misunderstood them. But it concedes that if its view of the Patent Orders is correct, it could obtain the same ultimate relief by seeking clarification from the courts with jurisdiction over the underlying patent dispute. Those are the courts "Congress plainly contemplated" would be charged with "establish[ing] . . . the effective date of approval" for ANDAs subject to patent litigation.

20

*Avadel*, 2022 WL 16650467, at *7. Where Norwich could obtain "the ultimate relief it seeks before this [C]ourt via the specific avenue Congress [designated] for it to do so," it "has an adequate [legal] remedy . . . and relief is foreclosed under the APA." *Id.* at *8.

### B. In the Alternative, This Court Should Decline Jurisdiction in Favor of the Ongoing Patent Litigation.

Even if this Court determines that Norwich has a cause of action under the APA, it should still exercise its discretion to dismiss this case in favor of the ongoing patent proceedings in which Norwich may seek the same relief. As the Federal Defendants explained in their opening brief, both the declaratory and injunctive relief that Norwich seeks are discretionary remedies. Fed. Br. at 25 (citing *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 696-97 (D.C. Cir. 2015)), Fed. Br. at 26 (citing *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 531 n.6 (D.C. Cir. 2006)); *see also Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207-08 (D.C. Cir. 1985) ("[A]ll the bases for nonmonetary relief—including injunction . . . and declaratory judgment—are discretionary."). The APA, in turn, expressly preserves this Court's discretion "to dismiss any action or deny relief on any . . . appropriate . . . equitable ground." 5 U.S.C. § 702.

The Court should exercise that discretion here. As discussed *supra* at 23, if Norwich's view of the Patent Orders is correct, it can obtain all the relief it seeks by seeking clarification of those orders in the Federal Circuit and/or the District of Delaware. As a general matter, this Court may decline to grant both declaratory and injunctive relief when the party who seeks it has an adequate remedy elsewhere. *See Morgan Drexen*, 785 F.3d at 696; *Richards*, 453 F.3d at 531 n.6.

Doing so is especially warranted here, where there is no doubt that at a minimum, the "[Delaware] district court is in the best position to interpret its own orders," *In re Chi., Rock Island & Pac. R. Co.*, 865 F.2d 807, 810-11 (7th Cir. 1988); *see also Colt Indus. Operating Corp. v. Index-Werke K.G.*, 739 F.2d 622, 623 (Fed. Cir. 1984) ("Index-Werke's quarrel is with an ambiguity it perceives in the . . . judgment of the [D.C. Circuit]. Whether that court should have . . . acted to clarify the ambiguity . . . , is not for this court to determine. It would be inappropriate for this court to review, interpret, or otherwise act with respect to the . . . judgment of our sister circuit.")."Judicial efficiency" also supports dismissal, since the Delaware Court is not only already "familiar with the terms" of its orders, *see Barcomb v. Daimler Chrysler AG*, 2018 WL 11448755, at *5 (N.D.N.Y. Apr. 9, 2018), but is uniquely positioned as well to assist the Federal Circuit in considering Norwich's pending appeal by offering an indicative ruling as to their intended meaning, *see* Fed. R. Civ. P. 62.1. This Court should decline jurisdiction so that Norwich can seek the definitive views of the Delaware Court and Federal Circuit themselves.

## III. Remand to FDA Would be the Appropriate Remedy if the Court Grants Summary Judgment for Norwich.

Norwich offers no reason that this Court should depart from what is "ordinarily the appropriate course" in APA litigation by ordering immediate approval of the rifaximin ANDA rather than a remand to FDA for further proceedings. *See Am. Hosp. Ass'n v. Azar*, 385 F. Supp. 3d 1, 11 (D.D.C. 2019). Just the opposite—Norwich recognizes that even if it were entitled to summary judgment on the *patent* issues

surrounding its ANDA, FDA would still have to address whether final approval is blocked by another generic manufacturer's eligibility for 180-day *exclusivity*. *See* Norwich Opp. at 38.

These outstanding exclusivity issues distinguish this case from *Watson Lab'ys, Inc. v. Sebelius*, 2012 WL 6968224, at *1 (D.D.C. Oct. 22, 2012), which arose out of an exclusivity determination that took place, per FDA's ordinary practice, after all other potential bars to final approval were resolved. *See id.* at *11 (quoting rationale for granting tentative approval). By the same token, those issues bring this case firmly within the circumstances in which "a court . . . should remand a case to an agency." *See INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002). Exclusivity determinations are "a matter that [the FDCA] place[s] primarily in [FDA's] hands," on which the agency has yet to "make an initial determination." *Id.*

Norwich also requests that any remand be limited to ten business days. Given the complexity of 180-day exclusivity determinations, the changed circumstances which may develop between now and the Court's ruling, and the difficulty of projecting staff availability at an unknown future date, the Federal Defendants respectfully propose that the Court determine the specific details of any remand in consultation with the parties at the time it reaches a decision.

CONCLUSION

For the foregoing reasons, the Court should deny Norwich's motion for a

preliminary injunction and summary judgment and grant summary judgment for the

Federal Defendants.

August 16, 2023                                 Respectfully submitted,

                                                /s/ Gabriel I. Schonfeld
                                                GABRIEL I. SCHONFELD
                                                (D.C. Bar. No. 155539)
                                                Trial Attorney
                                                Consumer Protection Branch
                                                Civil Division
                                                U.S. Department of Justice
                                                PO Box 386
                                                Washington, DC 20044-0386
                                                (202) 353-1531
                                                (202) 514-8742 (fax)
                                                Gabriel.I.Schonfeld@usdoj.gov